William P. Donovan, Jr. (155881)
wdonovan@mwe.com
**MCDERMOTT WILL & EMERY LLP**
2049 Century Park East, Suite 3200
Los Angeles, CA 90067-3206
Telephone: +1 310 277 4110
Facsimile: +1 310 277 4730

Attorneys for Defendant Zynga Inc.

(*Additional Signatures Below*)

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO**

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

CHERYLL DOUGHERTY, DELIA CAMARGO, and LAWRENCE GARCIA, individually, as private attorneys general, and on behalf of all others similarly situated,

Plaintiffs,

v.

ZYNGA INC.,

Defendant.

CASE NO. 3:25-cv-04051-LJC

**DEFENDANT ZYNGA INC.'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION, OR ALTERNATIVELY TRANSFER VENUE AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

[Filed concurrently with the Declaration of Andrew Ungberg and Exhibits thereto, the Declaration of Andrew Kratenstein and Exhibits thereto, and Proposed Order]

JUDGE: Hon. Susan Illston
DATE: September 19, 2025
TIME: 10:00 a.m.
COURTROOM: Courtroom 1

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on September 19, 2025 at 10:00 a.m., or as soon thereafter as the matter may be heard before the Honorable Susan Illston of the United States District Court for the Northern District of California, in Courtroom 1, of the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, California, Defendant Zynga Inc. ("Zynga") will and hereby does move the Court for an order compelling arbitration of all causes of action in the Class Action Complaint filed on or about May 9, 2025 (the "Complaint" or "CAC") for relief asserted against Zynga by Plaintiffs based on the valid and binding arbitration clause in the Take-Two Interactive Software, Inc.'s ("Take-Two") Terms of Service governed by the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.*, or alternatively, transferring all causes of action to the Southern District of New York, pursuant to 28 U.S.C. § 1404(a) and the valid forum selection clause in the Terms of Service.

By downloading and using the Toon Blast and Toy Blast apps (the "Games"), Plaintiffs Cheryll Dougherty, Delia Camargo, and Lawrence Garcia (collectively, "Plaintiffs") were on notice of and agreed to the 2024 or 2025 Take-Two Terms of Service. The Take-Two Terms of Service contain a valid and enforceable arbitration clause that requires arbitration of this dispute. Accordingly, Plaintiffs' claims should be compelled to arbitration. Any questions of arbitrability have been delegated to the arbitrator, making the existence of a binding arbitration agreement the only issue for this Court or another court to decide.

The Take-Two Terms of Service also contain a valid forum selection clause that requires all players to bring any disputes in federal or state court in New York County, New York. Plaintiffs' claims should therefore be transferred to the Southern District of New York if the Court does not compel Plaintiffs to arbitration.

Zynga bases its Motion on this Notice, the accompanying Memorandum of Points and Authorities, all pleadings and papers filed in this action, the argument of counsel, and any other matters that may come before the Court.

//

//

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

Dated: July 18, 2025

**MCDERMOTT WILL & EMERY LLP**

By: */s/ William P. Donovan, Jr.*
William P. Donovan, Jr.

2049 Century Park East, Suite 3200
Los Angeles, CA 90067-3206
Telephone: +1 310 277 4110
Fax: +1 310 277 4730
wdonovan@mwe.com

Andrew Kratenstein
Chris Combs
One Vanderbilt Avenue
New York, NY 10017-3852
Telephone: +1 212 547 5400
Fax: +1 212 547 5444
akratenstein@mwe.com
ccombs@mwe.com

Emilie E. O'Toole
444 West Lake Street, Suite 4000
Chicago, IL 60606-0029
Telephone: +1 312 372 2000
Fax: +1 312 984 7700
eotoole@mwe.com

*Attorneys for Defendant Zynga Inc.*

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

# TABLE OF CONTENTS

I. INTRODUCTION ....... 1
II. BACKGROUND ....... 2
A. The Parties ....... 2
B. Plaintiffs' Allegations ....... 2
C. The Games ....... 3
D. The Applicable Terms of Service ....... 4
E. Plaintiffs' Notice and Acceptance of the Take-Two Terms ....... 9
F. The Previous Arbitrations Against Take-Two ....... 9
III. LEGAL STANDARD ....... 11
IV. ARGUMENT ....... 12
A. Plaintiffs Are Bound by the Take-Two Terms ....... 12
1. Plaintiffs Were on Notice of the Take-Two Terms ....... 12
2. Plaintiffs Assented to the Take-Two Terms ....... 14
3. Camargo and Garcia Are Still Bound to the 2024 Take-Two Terms' Arbitration Agreement ....... 15
4. Dougherty's Opt Out of the 2025 Take-Two Terms' Arbitration Agreement Was Invalid ....... 15
B. Plaintiffs' Causes of Action Should Be Compelled to Arbitration ....... 16
1. The Take-Two Terms Contain a Valid Arbitration Agreement ....... 16
2. The Take-Two Terms Contain a Valid Delegation Clause ....... 17
3. Plaintiffs Must Arbitrate Their Claims on an Individual Basis ....... 18
C. Alternatively, This Case Should Be Transferred to the Southern District of New York ....... 20
V. CONCLUSION ....... 21

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ajzenman v. Office of the Commissioner of Baseball*,
CV 20-3643 DSF (JEMx), 2020 WL 6037140 (C.D. Cal. Oct. 6, 2020) ....................................13

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011)....................................11

*Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*,
571 U.S. 49 (2013)....................................20

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022) ....................................12, 14

*Bielski v. Coinbase, Inc.*,
87 F.4th 1003 (9th Cir. 2023) ....................................17

*Cal. Crane Sch., Inc. v. Google LLC*,
722 F. Supp. 3d 1026 (N.D. Cal. 2024) ....................................15

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
207 F.3d 1126 (9th Cir. 2000) ....................................11

*Edmundson v. Klarna, Inc.*,
85 F.4th 695 (2d Cir. 2023) ....................................12, 14

*Epic Sys. Corp. v. Lewis*,
584 U.S. 497 (2018)....................................18

*Eshagh v. Terminix Int'l Co.*,
588 Fed. Appx. 703 (9th Cir. 2014)....................................18

*Feld v. Postmates, Inc.*,
442 F. Supp. 3d 825 (S.D.N.Y. 2020)....................................14

*Fireman's Fund Ins. Co. v. M.V. DSR Atl.*,
131 F.3d 1336 (9th Cir. 1997), *as amended* (Mar. 10, 1998) ....................................20

*Ghazizadeh v. Coursera, Inc.*,
737 F. Supp. 3d 911 (N.D. Cal. 2024) ....................................14

*Green Tree Fin. Corp.-Ala. v. Randolph*,
531 U.S. 79 (2000)....................................11

*Happy Puppy L.A., Inc. v. Bank of Am., N.A.*,
No. 2:23-cv-01354-JLS-PD, 2023 WL 6787778 (C.D. Cal. Sept. 27, 2023) ....................................17

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

*Hastings v. Nifty Gateway, LLC*,
724 F. Supp. 3d 241 (S.D.N.Y. 2024)....................13

*Hatfield v. Halifax PLC*,
564 F.3d 1177 (9th Cir. 2009) ....................20

*Heckman v. Live Nation Entertainment, Inc.*,
120 F.4th 670 (9th Cir. 2024) ....................19, 20

*Holley-Gallegly v. TA Operating, LLC*,
74 F.4th 997 (9th Cir. 2023) ....................17

*Keebaugh v. Warner Bros. Ent., Inc.*,
100 F.4th 1005 (9th Cir. 2024) ....................12, 13, 16

*Kelly-Starkebaum v. Papaya Gaming Ltd.*,
No. 24-cv-2310 (DLC), 2024 WL 5135799 (S.D.N.Y. Dec. 17, 2024) ....................14

*Knutson v. Sirius XM Radio Inc.*,
771 F.3d 559 (9th Cir. 2014) ....................11

*KPMG LLP v. Cocchi*,
565 U.S. 18 (2011)....................11

*Laatz v. Zazzle, Inc.*,
No. 22-cv-04844-BLF, 2024 WL 377970 (N.D. Cal. Jan. 9, 2024)....................14

*Lamps Plus, Inc. v. Varela*,
587 U.S. 176 (2019)....................11

*Lee v. Ticketmaster L.L.C.*,
817 F. App'x 393 (9th Cir. 2020) ....................16

*Marino v. CVS Health*,
698 F. Supp. 3d 689 (S.D.N.Y. 2023)....................15

*Marselian v. Wells Fargo & Co.*,
514 F. Supp. 3d 1166 (N.D. Cal. 2021) ....................16

*Patrick v. Running Warehouse, LLC*,
93 F.4th 468 (9th Cir. 2024) ....................14

*Peter v. DoorDash, Inc.*,
445 F. Supp. 3d 580 (N.D. Cal. 2020) ....................13

*Posephny v. AMN Healthcare Inc.*,
No. 18-cv-06284-KAW, 2019 WL 452036 (N.D. Cal. Feb. 5, 2019) ....................15

*Rangel v. Lowe's Home Centers, LLC.*,
No. 5:21-cv-00422-JWH-SPx, 2021 WL 4839575 (C.D. Cal. June 24, 2021) ....................15

*Sarhadi v. Pear Health Labs, Inc.*, No. 24-cv-07921-TLT, 2025 WL 1350033 (N.D. Cal. Apr. 18, 2025) ................................13, 14

*Stolt-Nielson S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662 (2010)..........................................................................................................18

*Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904 (N.D. Cal. 2011) ..........................................................................14

*Tanner v. Tax Servs. of Am., Inc.*, No. 25-cv-01940-DMR, 2025 WL 1580737 (N.D. Cal. June 4, 2025) ......................................17

**Statutes**

9 U.S.C. § 2..........................................................................................................................11

28 U.S.C. § 1406(a) ...............................................................................................................20

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

This case does not belong in this Court. Plaintiffs are allegedly users of Defendant Zynga Inc.'s ("Zynga") mobile games Toon Blast and/or Toy Blast (the "Games"). Each Plaintiff knowingly agreed to certain versions of the Terms of Service issued by Zynga's parent company, Take-Two Interactive Software, Inc. ("Take-Two"). Take-Two's Terms of Service govern both Games and include a clear, enforceable arbitration agreement and a mandatory New York forum selection clause which is where Take-Two is headquartered.

Plaintiffs allege they made in-Game purchases on one or both Games. To make these purchases, Plaintiffs were required to accept the Terms of Service by clicking "Accept" when prompted by conspicuous, straightforward notices upon launching the Games. These were not passive or obscure disclosures; they were unavoidable gateways to gameplay, supported by hyperlinks to the applicable Take-Two Terms of Service in blue, underlined text, and a bolded warning at the top of the Take-Two Terms of Service highlighting that arbitration was mandatory. Thus, Plaintiffs are contractually bound to resolve their claims against Zynga through individual arbitration. Further, Plaintiffs' counsel's previous attempts to arbitrate similar claims were determined by JAMS to be governed under their mass arbitration procedures. After receiving that ruling from JAMS, Plaintiffs' counsel dismissed the arbitrations and filed this case.

Such forum shopping is impermissible. The Federal Arbitration Act and binding precedent are clear. Plaintiffs' claims all "arise from or relate to" the Games and related in-Game functions, which are all services governed by the Take-Two Terms. Moreover, the Take-Two Terms include a valid delegation clause – assigning questions of arbitrability to the arbitrator, not this Court. Plaintiffs' attempt to sidestep these provisions ignores controlling law and seeks to rewrite the contract they voluntarily accepted.

Even if the Court were to find otherwise – which it should not – the Take-Two Terms require that any litigation be brought in New York state or federal court. Plaintiffs' claims therefore have no rightful place in this District. The forum selection clause is unambiguous and enforceable under controlling Supreme Court authority.

Zynga respectfully requests that this Court enforce the parties' agreement – as federal law and precedent require – and compel Plaintiffs' claims to arbitration. Alternatively, this action should be transferred to the Southern District of New York, where the parties agreed all disputes not subject to arbitration would be heard, for resolution.

## II. BACKGROUND

### A. The Parties

Zynga is a video game developer and publisher, founded in 2007 with its headquarters in San Mateo, California. (CAC ¶¶ 16, 20.) As of May 2022, Zynga is a wholly-owned subsidiary of Take-Two, a video game publisher. (*Id.* ¶ 2.) Zynga is the publisher of the Games. (*Id.*)

Plaintiffs Cheryll Dougherty ("Dougherty") and Delia Camargo ("Camargo") allege they are residents of California. (*Id.* ¶¶ 12-13.) Plaintiff Lawrence Garcia ("Garcia") alleges that he was a resident of California until August 2024. (*Id.* ¶ 14.) The Complaint makes conclusory allegations that "all Plaintiffs" have allegedly downloaded and made in-game purchases in the Games without specifically alleging that Dougherty or Camargo played the Games. (*Id.* ¶¶ 14-15.) Garcia alleges that while he was a resident of California, he made in-app purchases and watched pre-recorded video content in the Toon Blast game. (*Id.*)

### B. Plaintiffs' Allegations

Plaintiffs allege that the Games are marketed as free, but pressure players to make in-Game purchases of Coins, Boosters, and Bundles in order to advance through the Games' levels. (CAC ¶ 3.) The alleged pressure includes advertised discounts on in-app purchases and purportedly "fake" countdown timers for the sales (*Id.* ¶¶ 5-6). Plaintiffs also allege that the Games are addictive and that these in-game purchases perpetuate the Games' alleged addictive nature. (*Id.* ¶ 7.)

On behalf of themselves and a purported class of individual players of the Games, Plaintiffs allege six counts against Zynga for: (1) violations of the Unfair Competition Law ("UCL"); (2) violations of the False Advertising Law ("FAL"); (3) violations of the Consumer Legal Remedies Act ("CLRA"); (4) fraud; (5) unjust enrichment; and (6) violations of the federal Video Privacy Protection Act ("VPPA") (brought by Plaintiff Garcia only). (*Id.* ¶¶ 168-233.) Plaintiffs seek

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

compensatory and actual damages, statutory damages, punitive damages, civil penalties, injunctive, declaratory, and equitable relief, costs, attorneys' fees, and interest. (*Id.* at 45.)

### C. The Games

The Games were created and released by Peak Games ("Peak") in 2015 and 2017, respectively. (Declaration of Andrew J. Ungberg, dated July 18, 2025 ("Ungberg Decl.") ¶ 5.) In July 2020, Zynga acquired Peak and Zynga was subsequently acquired by Take-Two in May 2022. (*Id.*)

Both Games are puzzle games played primarily on mobile devices. (*Id.* ¶ 6.) Players progress through each level by "blasting" adjacent matching tiles off the board over a set number of turns. (*Id.*) Each level has a designated goal requiring players to clear the puzzle board over a set number of moves. (*Id.* ¶ 7.) Players may run out of lives in the Games if they fail multiple levels in a short time frame. (*Id.*)

To aid their progress, both Games have an in-app shop (the "Shop") where players purchase Coins. (*Id.* ¶ 8.) The Coins can be used to purchase additional lives, more moves to complete a level, or special items ("Boosters"), such as cartoon bombs or rockets that players can use to blast through entire rows and columns or other obstacles. (*Id.*) In addition to Coins, players can also purchase packs that include various combinations of Coins, Boosters, and other bonuses, such as unlimited lives for a set period ("Bundles") that may be offered at a discounted price. (*Id.*)

Since at least 2018, both Games have required all players to accept the operative Terms of Service at the time they are loaded and before they can be played or in-app purchases can be made. (*Id.* ¶ 13.) After downloading the Games from the player's chosen app store, a notice appears the first time a player opens the Games, informing the player that by clicking "Accept" they are agreeing to the applicable Terms of Service. (*Id.* ¶ 14.) The notices feature hyperlinks to the applicable Terms of Service that appear in blue, underlined font that stands out from the plain background. (*Id.* ¶ 15.)

These notices have appeared in substantially the same form since they were added to the Games in 2018 and have included hyperlinks to the operative Terms of Service. (*Id.* ¶ 15.) When the Terms of Service are updated, a pop-up notice appears when a player opens the Games. (*Id.* ¶¶ 14-16.) The notice informs players that the Terms of Service have been updated, and the player must



MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

click "Accept" before proceeding to play the Games. (*Id.* ¶ 16.) No player can play a Game unless they select the "Accept" button. (*Id.* ¶ 15-16.)

**D. The Applicable Terms of Service**

After Peak was acquired by Zynga in July 2020, the Games continued using the Peak Terms of Service that went into effect in 2018 (the "Peak Terms"). (Ungberg Decl. ¶ 18.) The Peak Terms are governed by Turkish law and select Turkish courts as the applicable forum. (*Id.* ¶ 19.) The Peak Terms also included a class action waiver and a severability clause. (*Id.* ¶¶ 19-20.) Camargo and Garcia both accepted the Peak Terms. (*Id.* ¶¶ 57, 60.)

The Peak Terms remained in effect for both Games until on or around February 28, 2024, when the 2024 Take-Two Terms of Service (the "2024 Take-Two Terms") were implemented across Take-Two companies' games, including Toy Blast and Toon Blast. (*Id.* ¶¶ 22, 25.) To notify players of the upcoming change from the Peak Terms to the 2024 Take-Two Terms, a new pop-up notice appeared when a player opened either Game beginning on or around January 25, 2024. (*Id.* ¶ 24.) The notice informed players that they would have to accept the new terms in order to continue playing the Game after February 28, 2024. (*Id.* ¶¶ 24-25.) On or around February 28, 2024, that new pop-up notice began appearing for all players the first time they played the game after that date:

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles







(*Id.* ¶ 26.) The 2024 Take-Two Terms were linked in the pop-up notices at the blue, underlined text. (*Id.* ¶¶ 24, 26.)

On or around February 28, 2025, Take-Two implemented new Terms of Service (the "2025 Take-Two Terms") across all its products, including the Games. (*Id.* ¶ 35.) The 2025 Take-Two Terms were introduced in the Games on or around March 28, 2025. (*Id.*) On or around March 28, 2025, a new pop-up notice appeared to provide notice of the 2025 Take-Two Terms and required players to select "ACCEPT" before continuing into Toon Blast or Toy Blast. (*Id.* ¶ 36.) On or around March 28, 2025, that new pop-up notice began appearing for all players the first time they played the game after that date:

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles







(*Id.*)

The 2024 and 2025 Take-Two Terms contain several provisions relevant to this Motion. First, both versions of the Take-Two Terms state that they apply to Take-Two "games, apps, products, websites, and other services (the 'Services') as well as Virtual Items[1] . . . and your Account[2]":

> Take-Two Interactive Software, Inc. is a global company headquartered at 110 W. 44th Street, New York, NY 10036, United States of America whose group includes all Take-Two entities and labels (collectively "**Take-Two**," "**we**," "**us**," and "**our**"). These Terms of Service ("**Agreement**") cover the terms and conditions under which we offer you access to use our games, apps, products, websites, and

[1] A "Virtual Item" is "any virtual currency, goods, items, boosts, or effects such as, but not limited to, coins, points, gems, tokens, weapons, vehicles, cards, skins, power-ups, apparel, equipment, trophies, rewards, badges, or any other in-game virtual asset made available, purchased from a Digital Storefront, earned, or otherwise acquired through the Services." (Ungberg Decl. Ex. B ¶ 3, Ex. C ¶ 4.)

[2] "Some elements of the Services may require that you create an account, whereas for other Services, an account may be automatically created for you when you access the Services for the first time (each an "Account")." (Ungberg Decl. Ex. B ¶ 1.3, Ex. C ¶ 1.2.)

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

> other services (the "**Services**") as well as Virtual Items (as defined in Section 4 below) and your Account (as explained in Section 1.2 below). This Agreement is a legal contract between you and Take-Two. By accessing our Services, you are agreeing to be bound by the terms of this Agreement.

(*Id.* Ex. B at 1, Ex. C at 1.) The hyperlink that appears in blue, underlined font above takes users to a list of all entities included in "Take-Two" as defined in the Take-Two Terms. (*Id.*) That list includes Zynga. (*Id.*)

The 2024 and 2025 Take-Two Terms each contain an arbitration provision. The arbitration provision in both versions is substantially similar and require individual arbitration of any disputes, which include "any dispute, claim, or controversy arising from or related to the Services." (*Id.* Ex. B ¶ 15.5(1), Ex. C ¶ 17.5(1).) The arbitration provision in the 2024 Take-Two Terms states:

> **(1) Binding Individual Arbitration.** You and Take-Two agree that, if not resolved through the informal negotiation process described below, any Disputes between us shall be exclusively resolved by individual, binding arbitration under this Arbitration Agreement. Subject to the exclusions in Section 15.5(10), a "**Dispute**" means any dispute, claim, or controversy arising from or related to the Services, including those related to the formation, breach, termination, enforcement, scope, validity, or applicability of the Agreement or the Arbitration Agreement, or your rights under those agreements. All Disputes are subject to the Arbitration Agreement regardless of whether they arose before or after you accepted the Agreement.

(*Id.* Ex. B ¶ 15.5(1).) The 2025 Take-Two Terms contain a substantially similar arbitration provision, which states:

> (1) **Agreement to Binding Individual Arbitration.** Subject to the claims excluded in Section 17.5(9), a "**Dispute**" means any dispute, claim, or controversy arising from or related to the Services, including related to the formation, breach, termination, enforcement, scope, validity, or applicability of the Agreement or the Arbitration Agreement, or your rights under those agreements. If you and Take-Two cannot resolve your Dispute through the informal negotiation process in Section 17.5(4), we agree that any Disputes between us shall be exclusively resolved by individual binding arbitration under this Arbitration Agreement. All Disputes are subject to the terms in this Arbitration Agreement, the U.S. Federal Arbitration Act, and federal arbitration law. This Arbitration Agreement applies to all Disputes between the parties whether the Dispute arose before or after the parties accepted this Agreement.

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

(*Id.* Ex. C ¶ 17.5(1).) In addition, at the beginning of both versions of the Take-Two Terms, there is a notice that warns users that the Take-Two Terms contain a mandatory arbitration provision. (*Id.* Ex. B at 1, Ex. C at 1.) It also notifies users of their ability to opt out of the arbitration agreement. (*Id.*)

Both Take-Two Terms also include a class action waiver, prohibiting users from litigating their claims on a class basis and requiring individual arbitration. (*Id.* Ex. B ¶ 15.5(2), Ex. C ¶ 17.5(2).) Both Terms require the parties to arbitrate individually before JAMS under the JAMS' Streamlined Arbitration Rules. (*Id.* Ex. B ¶¶ 15.5(1)-15.5(2), Ex. C ¶¶ 17.5(1)-17.5(2).) For any mass arbitration, the 2025 Terms apply the JAMS Mass Arbitration Procedures while the 2024 Terms apply the New Era Rules in effect at the time the mass arbitration is filed. (*Id.* ¶ 38.) But for the difference in mass arbitration rules, the 2024 and 2025 arbitration provisions are materially the same. (*Id.*)

The 2024 and 2025 Take-Two Terms also contain a nearly identical New York choice of law and forum selection clause. It requires any disputes to be litigated in New York state or federal court in New York County under New York law. (*Id.* Ex. B ¶ 15.1, Ex. C ¶ 17.1.)

Finally, both the 2024 and 2025 Take-Two Terms contain nearly identical opt-out provisions, allowing a player to opt out of the Terms within 30 days of accepting them if proper notice is given. (*Id.* ¶¶ 41, 43.) In addition, the 2025 Take-Two Terms includes language that clarifies the scope of a player's opt out and provides that any player who opts out of the 2025 Arbitration Agreement must still arbitrate under the 2024 Terms of Services if the player accepted them:

> For clarity, if you accepted a previous version of the Arbitration Agreement and did not Opt Out, your Opt-Out Notice will be limited to the materially updated terms of this version. In this case, You and Take-Two, will still arbitrate any Dispute under the terms of the Arbitration Agreement as of the date you first agreed to it or the effective date of the last version of the Arbitration Agreement.

(*Id.* ¶ 43.) For Plaintiffs Camargo and Garcia, this provision means that, despite opting out of the 2025 Take-Two Terms, they are still bound by the 2024 Take-Two Terms to which they previously agreed. (*Id.* ¶¶ 43, 57, 60.)

//

//

//

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

**E. Plaintiffs' Notice and Acceptance of the Take-Two Terms**

When a player downloads either of the Games and accepts the operative Terms of Service, he or she is assigned a unique user identification string of numbers and/or letters in the Game (the "User ID"). (Ungberg Decl. ¶ 45.) The User ID is the primary way for Take-Two to track a player's actions in the Games, including acceptance of the applicable Take-Two Terms and in-app purchases. (*Id.* ¶ 46.) By downloading and using the Toon Blast and/or Toy Blast apps, each Plaintiff was notified of and accepted the 2024 and 2025 Take-Two Terms. Specifically:

Dougherty downloaded Toon Blast on June 20, 2024 and accepted the 2024 Take-Two Terms at the same time. (*Id.* ¶ 54.) On April 21, 2025, Dougherty also accepted the 2025 Take-Two Terms through her use of Toon Blast. (*Id.*)

Camargo downloaded Toy Blast on July 18, 2016. (*Id.* ¶ 57.) She then accepted the Peak Terms on at least June 10, 2019. (*Id.*) Camargo accepted the 2024 Take-Two Terms on April 23, 2024, and the 2025 Take-Two Terms on April 18, 2025. (*Id.*)

Garcia downloaded Toon Blast on September 14, 2018, and accepted the Peak terms on that same day. (*Id.* ¶ 60.) Garcia accepted the 2024 Take-Two Terms on November 21, 2024 and accepted the 2025 Take-Two Terms on April 17, 2025. (*Id.*)

Plaintiffs recently sent notices of opt-out from the arbitration clause of the 2025 Take-Two Terms. (*Id.* ¶ 47.) Camargo's and Garcia's opt-out notices were dated April 25, 2025. (*Id.* ¶¶ 49-50.) These opt-out notices arrived as part of a set of 624 opt-out notices sent by Plaintiffs' counsel. (*Id.* ¶ 47.) Dougherty's opt-out notice was dated June 17, 2025. (*Id.* ¶ 48.) No Plaintiff ever opted out of the arbitration clause of the 2024 Take-Two Terms. (*Id.* ¶¶ 47-51.)

**F. The Previous Arbitrations Against Take-Two**

On July 30, 2024, Take-Two received a letter from Janove PLLC and Hartley Law PPLC (the "Demand Letter"). (Declaration of Andrew Kratenstein ("Kratenstein Decl."), July 18, 2025, ¶ 3.) Purportedly sent on behalf of 2,668 current or former players of the Games, the Demand Letter alleged that the Games falsely advertised "sales" or "discounts" for its in-app purchases and were instead "false incentives to lure customers into making more purchases and spending more money." (*Id.* ¶ 4.) On August 27, 2024, on behalf of Take-Two and the arbitration Claimants, their respective

counsel executed a Tolling Agreement (the "Tolling Agreement"). (*Id.* ¶ 6.) Throughout the rest of 2024, Take-Two and Claimants engaged in further information exchange related to Claimants' claims. (*Id.* ¶ 7.) On December 17, 2024, the Parties engaged in confidential in-person mediation through JAMS ADR ("JAMS") but were unable to resolve their dispute. (*Id.* ¶ 8.) After the mediation, the parties extended the Tolling Agreement, which ultimately expired without resolution. (*Id.* ¶¶ 9-10.)

On March 24, 2025, Claimants' counsel filed 746 individual Demands for Arbitration (the "Demands") under the JAMS Streamlined Rules and Procedures (the "JAMS Streamlined Rules"). (*Id.* ¶ 11.) The Demands, which were nearly identical to the previous demands, sought to arbitrate each Claimant's claims under the 2019 Take-Two End User License Agreement (the "2019 EULA"), which called for individual arbitrations under the JAMS Streamlined Rules. (*Id.* ¶ 13.) Each Claimant alleged that, under the 2019 EULA, Take-Two had agreed to pay all arbitration costs above that which Claimant would pay to participate in litigation in court, and that Take-Two was required to pay all JAMS fees and costs in excess of $1. (*Id.*) The filing fees under the JAMS Streamlined Rules would have resulted in Take-Two paying nearly $1.5 million in individual arbitration fees alone, exclusive of additional arbitration fees and costs. (*Id.*)

In response, Take-Two argued (among other things) that Claimants had not brought their Demands in the proper arbitral forum and that the 2019 EULA was never the Games' operative Terms of Service. (*Id.* ¶ 14.) Rather, depending on when each Claimant last played the Games, the Peak Terms, the 2024 Take-Two Terms, or the 2025 Take-Two Terms applied. (*Id.*) As discussed above, the 2024 and 2025 Take-Two Terms both designate the JAMS Streamlined Arbitration Rules for *individual* arbitrations, but the 2025 Take-Two Terms define *mass* arbitrations as 25 or more disputes that share common issues and legal representatives and require Claimants to proceed under JAMS' Mass Arbitration Procedures and Guidelines (the "JAMS MAP") while the 2024 Terms require that mass arbitrations proceed under the New Era Rules. (*Id.* ¶¶ 15-16.)

On May 6, 2025, JAMS sent the Parties a Notice, which stated that JAMS would designate a Process Administrator to proceed under the JAMS MAP, upon receipt of the JAMS MAP filing fee. (*Id.* ¶ 18.) The notice further stated that "[t]he parties may raise preliminary and procedural matters,



McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

including whether the JAMS MAP apply and which Demands if any should be included as part of a Mass Arbitration under the JAMS MAP, with the Process Administrator." (*Id.* ¶ 19.) No longer able to use the threat of having to pay exorbitant arbitration fees to pressure Take-Two and Zynga into a settlement, Claimants' counsel withdrew its 746 pending claims with JAMS and filed the Complaint in this action the same day. (*Id.* ¶ 20.)

## III. LEGAL STANDARD

The Terms of Service are subject to the Federal Arbitration Act (the "FAA"), as the Terms are written contracts "evidencing a transaction involving commerce" and both versions incorporate the FAA. 9 U.S.C. § 2; (Ungberg Decl. Ex. B ¶ 15.5(4), Ex. C ¶ 17.5(1).) The FAA was enacted by Congress to overcome "widespread judicial hostility to arbitration agreements," and to ensure that courts enforce valid agreements to arbitrate. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339, 344 (2011) ("The overarching purpose of the FAA . . . is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings."); *KPMG LLP v. Cocchi*, 565 U.S. 18, 21 (2011). Any arbitration agreement within the scope of the FAA "shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2.

The party seeking to compel arbitration bears the burden of proving the existence of a valid agreement to arbitrate by a preponderance of the evidence. *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014). A court's role in resolving a motion to compel arbitration is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). Once an agreement to arbitrate has been established, "the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000). Given the strong policy favoring arbitration, "ambiguities about the scope of an arbitration agreement must be resolved in favor of arbitration." *Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 189 (2019). The Supreme Court also holds that class action waivers in arbitration agreements are valid and enforceable, and that a plaintiff cannot avoid arbitration based on the presence of a class action waiver. *Concepcion*, 563 U.S. at 351.

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

## IV. ARGUMENT

### A. Plaintiffs Are Bound by the Take-Two Terms

A user is bound to terms of an online contract "if (1) a reasonably prudent' person would be on *inquiry* notice of the terms and (2) the user unambiguously manifests assent through . . . conduct that a reasonable person would understand to constitute assent." *Edmundson v. Klarna, Inc.*, 85 F.4th 695, 703 (2d Cir. 2023) (internal citations omitted); *see also Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022) ("Thus, if a website offers contractual terms to those who use the site, and a user engages in conduct that manifests her acceptance of those terms, an enforceable agreement can be formed."). By downloading or accessing either Game via the apps on their mobile phones, Plaintiffs were on notice of and assented to the Terms of Service.

#### 1. <u>Plaintiffs Were on Notice of the Take-Two Terms</u>

For a reasonably prudent person to be on notice of an app's terms of use, the terms must be reasonably conspicuous. *Berman*, 30 F.4th at 856; *Edmundson*, 85 F.4th at 704 ("A reasonably prudent internet or smartphone user is on inquiry notice of contractual terms where the terms are presented in a clear and conspicuous way."). The court also considers the full context of the transaction at issue in determining whether notice is sufficient. *Keebaugh v. Warner Bros. Ent., Inc.*, 100 F.4th 1005, 1016-1017 (9th Cir. 2024). All three Plaintiffs were on notice of the applicable Take-Two Terms at the times they each played the Games and accepted the terms.

Notices of the 2024 and 2025 Take-Two Terms were reasonably conspicuous to Plaintiffs. Notice is reasonably conspicuous where it is displayed in a reasonable font size and format and the hyperlink to the full terms is readily apparent. *Berman*, 30 F.4th at 856. Here, the notices of the 2024 and 2025 Take-Two Terms appeared on a white background in front of the more colorful game screen. (Ungberg Decl. ¶¶ 26, 36.) The font is in black, contrasting with the white background, with hyperlinks in blue, underlined font. (*Id.*) The notice language and hyperlinks are also in close proximity to the "Accept" button. (*Id.*)

Courts have found similar notices to be sufficiently conspicuous to put a website or app user on notice. *See Keebaugh*, 100 F.4th at 1020-21 (concluding notice that informed players of app-based game that selecting "Play" would bind them to terms of use was sufficiently conspicuous);

*Sarhadi v. Pear Health Labs, Inc.*, No. 24-cv-07921-TLT, 2025 WL 1350033, at *6-7 (N.D. Cal. Apr. 18, 2025) (finding notice was conspicuous where text appeared on white background and hyperlinks were blue, underlined text); *Hastings v. Nifty Gateway, LLC*, 724 F. Supp. 3d 241, 249 (S.D.N.Y. 2024) (notice was conspicuous where "'Terms and Conditions' is directly above the 'sign up' button, in blue, underlined, and links to [defendant's] terms of use"); *Peter v. DoorDash, Inc.*, 445 F. Supp. 3d 580, 586-87 (N.D. Cal. 2020) (finding sufficient notice where the text next to sign-up button contrasted with background, was plainly readable, and linked to the user agreement in blue text); *Ajzenman v. Office of the Commissioner of Baseball*, CV 20-3643 DSF (JEMx), 2020 WL 6037140, at *5-6 (C.D. Cal. Oct. 6, 2020) (concluding hyperlinks in blue in close proximity to applicable button provided sufficient notice).

Beyond visual considerations, the context of Plaintiffs' transactions also supports a finding that notice was sufficiently conspicuous. The Ninth Circuit's decision in *Keebaugh* is instructive. There, the court overturned the district court's finding that plaintiffs were not on notice of the terms of use for an app-based game. 100 F.4th at 1020. The district court had concluded based on context of the transaction alone that the plaintiffs were not on notice. *Id.* at 1018-19. The Ninth Circuit disagreed, concluding that where a user has to download an app to play a game and is "made aware via the download screen on the various app marketplaces that [the game] contains in-app purchases, and the users would understand that their use of an app that allows for in-app purchases would be governed by some terms of use." *Id.* at 1020. The court added that "smartphone users need not establish an account with each individual app for the context to reflect an ongoing relationship." *Id.* Context, as well as the visual placement of the notice, confirmed the plaintiffs were on notice of the terms and were therefore bound to them. *Id.*

Similarly, here, Plaintiffs were not required to sign-up for accounts to play the Games, but they still were on notice of the applicable Terms of Service for the Games. The context of the transactions at issue demonstrate a continuing relationship with Zynga that would be governed by an agreement, much like the transactions in *Keebaugh*. Plaintiffs downloaded the app to play the Games and repeatedly played them. (Ungberg Decl. ¶¶ 54, 57, 60.) Plaintiffs themselves allege they made multiple in-app purchases. (CAC ¶¶ 14-15.) Thus, Plaintiffs were on notice of the Take-Two Terms.

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

2. Plaintiffs Assented to the Take-Two Terms

An unambiguous manifestation of assent is required to conclude that app users, like Plaintiffs, assented to the Take-Two Terms. *Edmundson*, 85 F.4th at 703; *Berman*, 30 F.4th at 856. Plaintiffs unambiguously assented to the 2024 Take-Two Terms by selecting the "Accept" button upon opening the Games after the Terms were updated. (Ungberg Decl. ¶¶ 14-16.) All three Plaintiffs likewise assented to the 2025 Take-Two Terms. (*Id.* ¶¶ 54, 57, 60.) Because of the notice that selecting "Accept" would constitute acceptance of the Take-Two Terms, this manifestation was unambiguous. (*Id.* ¶¶ 35-36.)

Courts find unambiguous assent where a user, like Plaintiffs, was on notice that their actions if they proceeded would result in an enforceable agreement. *See, e.g.*, *Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 477 (9th Cir. 2024) ("Arcilla manifested assent to the Terms by clicking the 'Place Order' button to complete his purchase"); *Sarhadi*, 2025 WL 1350033, at *7-8 (finding assent where plaintiff had to click button on app below notice that said "by joining" he agreed to the terms); *Kelly-Starkebaum v. Papaya Gaming Ltd.*, No. 24-cv-2310 (DLC), 2024 WL 5135799, at *7 (S.D.N.Y. Dec. 17, 2024) (a reasonable consumer is "clearly warned" of assent where notice says "By continuing" he is assenting to the terms); *Ghazizadeh v. Coursera, Inc.*, 737 F. Supp. 3d 911, 930 (N.D. Cal. 2024) (finding assent to terms of use where users clicked "Sign Up" to continue with account); *Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 912 (N.D. Cal. 2011) (finding plaintiff had opportunity to review terms of service in a hyperlink immediately under the "I accept" button, which she clicked, therefore she had notice and is subject to the arbitration agreement); *Laatz v. Zazzle, Inc.*, No. 22-cv-04844-BLF, 2024 WL 377970, at *7 (N.D. Cal. Jan. 9, 2024) (clicking "Create Account" in the process of registering to use a platform bound Defendants to the Terms of Service); *Feld v. Postmates, Inc.*, 442 F. Supp. 3d 825, 830-32 (S.D.N.Y. 2020) (Plaintiff manifested assent to Terms of Service by clicking "Sign Up" where the platform indicated by clicking sign up users are agreeing to such terms). Plaintiffs' affirmative conduct of pressing the "Accept" button when presented with a valid notice of the Take-Two Terms or updates to the Take-Two Terms constitutes a valid acceptance.

3. <u>Camargo and Garcia Are Still Bound to the 2024 Take-Two Terms' Arbitration Agreement</u>

Both Camargo and Garcia opted out of the arbitration agreement in the 2025 Take-Two Terms by sending opt out notices on April 25, 2025. (Ungberg Decl. ¶¶ 58, 61.) Based on the circumstances of the opt-out notices and the language in the 2025 Take-Two Terms, both Camargo and Garcia are still bound to the arbitration agreement in the 2024 Take-Two Terms. The opt-out provision in the 2025 Take-Two Terms requires a player to submit their opt-out notice within 30 days of accepting the terms. (*Id.* ¶¶ 41, 43.) Both Camargo's and Garcia's opt-out notice appear to have been submitted timely within 30 days of each of their acceptances of the 2025 Terms on April 18, 2025, and April 17, 2025, respectively. (*Id.* ¶¶ 58, 61.) Under the plain language of the 2025 Take-Two Terms' opt-out provision, the arbitration agreement in the 2024 Take-Two Terms apply to Camargo's and Garcia's dispute here, given their valid assent to these terms. (*Id.* ¶¶ 57, 60.)

4. <u>Dougherty's Opt Out of the 2025 Take-Two Terms' Arbitration Agreement Was Invalid</u>

Plaintiff Dougherty sent an opt-out notice to Zynga, dated June 17, 2025 – more than 30 days after she validly accepted the 2025 Take-Two Terms on April 21, 2025. (Ungberg Decl. ¶ 55.) An opt-out notice is invalid if it is untimely under the agreement. *See Cal. Crane Sch., Inc. v. Google LLC*, 722 F. Supp. 3d 1026, 1035 (N.D. Cal. 2024) (finding plaintiffs were bound to an arbitration agreement where they failed to opt-out within the prescribed 30-day period set forth in the agreement); *Posephny v. AMN Healthcare Inc.*, No. 18-cv-06284-KAW, 2019 WL 452036, at *7 (N.D. Cal. Feb. 5, 2019) (concluding plaintiffs were bound to an arbitration agreement where they voluntarily failed to submit their opt-out notice until after the opt-out period had expired, even if the opt-out email address was potentially incorrect); *Rangel v. Lowe's Home Centers, LLC.*, No. 5:21-cv-00422-JWH-SPx, 2021 WL 4839575, at *2 (C.D. Cal. June 24, 2021) (concluding if an employee did not timely opt-out, then the employee continues to be bound to the arbitration terms); *Marino v. CVS Health*, 698 F. Supp. 3d, 689, 695 (S.D.N.Y. 2023) (finding plaintiff was bound to arbitration agreement where she signed the agreement and subsequently failed to opt-out within the required 30-day period). Dougherty did not timely opt out of the arbitration agreement in the 2025 Take-Two

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

Terms and is therefore bound by tit. Even if Dougherty's opt-out notice was valid – which it was not – Dougherty (like Camargo and Garcia) would be bound by the arbitration agreement in the 2024 Take-Two Terms.

**B. Plaintiffs' Causes of Action Should Be Compelled to Arbitration**

Plaintiffs agreed to the arbitration agreements in the 2024 Take-Two Terms (which apply to Camargo and Garcia) and the 2025 Take-Two Terms (which apply to Dougherty). *Supra* at Sec. IV.A. Pursuant to those arbitration agreements, Plaintiffs are therefore required to arbitrate their claims against Zynga. The Court need only conclude that a valid arbitration agreement exists here because the Take-Two Terms contain a valid delegation clause, requiring the arbitrator to decide any issues of scope or arbitrability. Even so, Plaintiffs' disputes are well within the broad scope of the arbitration agreements and should be arbitrated.

1. <u>The Take-Two Terms Contain a Valid Arbitration Agreement</u>

Both the 2024 and 2025 Take-Two Terms, to which Plaintiffs assented, include a valid arbitration agreement that requires Plaintiffs to arbitrate their claims against Zynga. Courts regularly compel internet user plaintiffs to arbitration where the website or app terms they agreed to include a valid arbitration provision. *See, e.g.*, *Lee v. Ticketmaster L.L.C.*, 817 F. App'x 393 (9th Cir. 2020), *Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005 (9th Cir. 2024), *Marselian v. Wells Fargo & Co.*, 514 F. Supp. 3d 1166 (N.D. Cal. 2021). Here, the Take-Two Terms apply to Zynga as a wholly-owned subsidiary of Take-Two, which is plainly stated in both versions of the Take-Two Terms. (Ungberg Decl. ¶¶ 21-22, 25, 35.) The arbitration provisions in the 2024 and 2025 Take-Two Terms are substantially similar. (*Id.*) In addition, a notice regarding the inclusion of an arbitration provision in the Terms appeared prominently at the beginning of both versions of the Take-Two Terms. (*Id.* Ex. B at 1, Ex. C at 1.) The arbitration provision in both the 2024 and 2025 Take-Two Terms require Plaintiffs to arbitrate individually before JAMS under the JAMS Streamlined Arbitration Rules. (*Id.* Ex. B ¶¶ 15.5(1)-15.5(2), Ex. C ¶¶ 17.5(1)-17.5(2).) Because Plaintiffs validly assented to either the 2024 or 2025 Take-Two Terms, they are bound by the arbitration clauses therein and should be compelled to individual arbitrations before JAMS.

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

2. <u>The Take-Two Terms Contain a Valid Delegation Clause</u>

Both the 2024 and 2025 Take-Two Terms contain a valid delegation clause. The 2024 Take-Two Terms specifically provide the arbitrator with:

> [E]xclusive authority to resolve any Disputes, including those related to the interpretation, applicability, enforceability, or formation of this Arbitration Agreement, and any claim that all or part of the Arbitration Agreement is void or voidable. The arbitrator shall also have authority to determine all threshold arbitrability issues, including related to whether the Agreement or the Arbitration Agreement are unconscionable or illusory; whether the Arbitration Agreement has been disaffirmed under applicable law; and any defense to arbitration including waiver, delay, laches, or estoppel.

(Ungberg Decl. Ex. B ¶ 15.5(1).) "Delegation provisions further limit federal court review by assigning these gateway questions to an arbitrator." *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1009 (9th Cir. 2023). Such delegation clauses are regularly found to be valid and enforceable. *Id.* at 1013-15 (finding delegation provision in User Agreement was not unconscionable and reversing denial of motion to compel arbitration on that basis); *Holley-Gallegly v. TA Operating, LLC*, 74 F.4th 997 (9th Cir. 2023) (vacating denial of motion to compel arbitration based on unconscionability of delegation clause); *Tanner v. Tax Servs. of Am., Inc.*, No. 25-cv-01940-DMR, 2025 WL 1580737, at *4-6 (N.D. Cal. June 4, 2025) (finding delegation clause valid because it was "clear and unmistakable" and was not unconscionable). Because the Take-Two Terms contain a delegation clause, the Court must defer questions of arbitrability to the arbitrator. *See Happy Puppy L.A., Inc. v. Bank of Am., N.A.*, No. 2:23-cv-01354-JLS-PD, 2023 WL 6787778 (C.D. Cal. Sept. 27, 2023).

It is also clear from the face of the Complaint that all of Plaintiffs' causes of action against Zynga are encompassed within the scope of the arbitration agreement. The Take-Two Terms define a "Dispute" that must be arbitrated as "any dispute, claim, or controversy arising from or related to the Services, including those related to the formation, breach, termination, enforcement, scope, validity, or applicability of the Agreement or the Arbitration Agreement, or your rights under those agreements." (Ungberg Decl. Ex. B ¶ 15.5(1), Ex. C ¶ 17.5(1).) This broad language encompasses Plaintiffs' claims of violations of California's consumer protection laws, as well as their common law and federal statutory claims. All these claims arise from Plaintiffs' use of the Games and the purported in-app purchases and videos they saw. Thus, these claims must be arbitrated.

3. <u>Plaintiffs Must Arbitrate Their Claims on an Individual Basis</u>

The arbitration agreements in the 2024 and 2025 Take-Two Terms include a class action waiver that prohibits Plaintiffs from arbitrating their claims on a class-wide basis. The Supreme Court has made clear that "a party may not be compelled . . . to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so." *Stolt-Nielson S.A. v. AnimalFeeds Int'l Corp.,* 559 U.S. 662, 684 (2010); *see also Epic Sys. Corp. v. Lewis,* 584 U.S. 497, 509 (2018) (enforcing class action waiver because "courts may not allow a contract defense to reshape traditional individualized arbitration by mandating class wide arbitration procedures without the parties' consent"); *Eshagh v. Terminix Int'l Co.,* 588 Fed. Appx. 703, 704 (9th Cir. 2014). Because Plaintiffs agreed to and are bound by either the 2024 or 2025 Take-Two Terms and did not opt out of at least one of the arbitration agreements contained therein, the class action waiver applies and prohibits them from litigating their claims as a class action in any forum. Thus, each Plaintiff is required to arbitrate their claims on an individual basis before JAMS, pursuant to both the 2024 and 2025 Take-Two Terms. (Ungberg Decl. ¶¶ 30, 37.)

To the extent a mass arbitration[3] were to unfold after Plaintiffs are compelled to arbitrate, Plaintiffs would be required under either the 2024 or 2025 Take-Two Terms to abide by the agreed-upon mass arbitration procedures.[4] When Plaintiffs' counsel previously tried to arbitrate their claims before JAMS, they filed hundreds of claims. (Kratenstein Decl. ¶¶ 11-12.) Given the massive number of claims, JAMS concluded that its Mass Arbitration Procedures and Guidelines should

---

[3] Under the 2024 Take-Two Terms, a "mass arbitration" is defined as "5 or more Disputes relating to the same or similar subject matter, which share common issues of law or fact, or in which the counsel or other organization representing the parties in such Disputes are the same, cooperating, or working in coordination." (Ungberg Decl. Ex. B ¶ 15.5(9).) The 2025 Take-Two Terms defines "mass arbitration" as 25 or more Disputes relating to the same or similar subject matter that share common issues of law or fact and in which the non-Take-Two parties or their legal representative are the same or acting in coordination." (*Id.* Ex. C ¶ 17.5(6).)

[4] For Camargo and Garcia, who are bound by the 2024 Take-Two Terms, a mass arbitration is required to be filed with New Era and conducted under their Mass Arbitration Procedures in effect at the time of filing. (Ungberg Decl. ¶¶ 57, 58, 60, 61.) For Dougherty, given that her opt out of the 2025 Take-Two Terms was invalid, she would be required to participate in a mass arbitration before JAMS pursuant to its Mass Arbitration Procedures and Guidelines in effect at the time of filing. (*Id.* ¶ 54.)



MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

apply. (*Id.* ¶ 18.) But the Plaintiffs' counsel declined to abide by JAMS' conclusion and abandoned arbitration and filed this lawsuit. (*Id.* ¶ 20.)

Anticipating this Motion, Plaintiffs preemptively allege in their Complaint that the New Era Mass Arbitration Procedure is "unconscionable" under the Ninth Circuit's ruling in *Heckman v. Live Nation Entertainment, Inc.*, 120 F.4th 670 (9th Cir. 2024). (CAC ¶ 146.) Plaintiffs misinterpret both the Ninth Circuit decision in *Heckman* and the parties' arbitration agreement. In *Heckman*, the Ninth Circuit concluded that Ticketmaster's arbitration agreement, which required both individual and mass arbitration administered by New Era, and the delegation contained in it were unconscionable. Specifically, Ticketmaster's arbitration agreement itself contained numerous terms that made them procedurally unconscionable, such as subjecting mere visitors to the Ticketmaster website to its changed terms of service. *Heckman*, 120 F.4th at 682. Ticketmaster's terms also stated that it may make changes to them at any time without notice, and that the new terms would become effective as soon as they are posted online. *Id.* The terms were also found to be affirmatively misleading in that they contradicted New Era's rules in effect at the time. *Id.* at 683. The court did find that elements of New Era's rules in effect at the time plaintiffs filed their mass arbitration contributed to a finding of substantive unconscionability, such as the application of bellwether precedent to all individuals in a mass arbitration, the lack of discovery, limited right of appeal, and arbitrator selection, *Heckman*, 120 F.4th at 683-87, but those are not the same rules that would be applied in any hypothetical mass arbitration proceeding here.

Plaintiffs make no allegations that the Take-Two Terms share any of the same procedural problems with Ticketmaster's terms at issue in *Heckman*. Moreover, since the *Heckman* decision, New Era has significantly amended its mass arbitration procedures to remove any unconscionable rules. *See* New Era ADR Procedures (Mar. 19, 2025). Changes include (1) clarifying that parties always have the right to discovery; (2) clarifying a party's ability to opt-out of mass arbitration procedures; (3) requiring written decisions and no additional charges for detailed "reasoned" opinions in mass arbitration; (4) removing binding effect of bellwether decisions and making them accessible to all mass arbitration claimants; and (5) updating the fee schedule, including so that a business must make up the difference between a consumer's share of the filing fee and the cost of



MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

filing a similar claim in court. *Id.* These changes are important because they mean that the 2024 Take-Two Terms do not invoke the same New Era Mass Arbitration Procedure that was analyzed in *Heckman*. Rather, any mass arbitration subject to the 2024 Take-Two Terms must be "administered by New Era and governed by the New Era Rules in effect *when the Mass Arbitration Disputes are filed* . . . .", *i.e.*, the most recent, updated version of those rules. (Ungberg Decl. Ex. B ¶ 15.5(9).). This hypothetical mass arbitration has not yet been filed, nor do we know if or when it will be filed, making it impossible to determine the precise version of the New Era Mass Arbitration Procedures that will apply. But what is certain is that any mass arbitration will not be governed by the New Era Mass Arbitration Procedures analyzed in *Heckman*. Accordingly, regarding New Era's rules, the *Heckman*, decision is effectively limited to the specific facts of that case, which are inapposite here.

Ultimately, this Court need not decide how a hypothetical mass arbitration would proceed – that is for the arbitrator to decide if and when this issue arises. *Supra* at Sec. IV.B. Rather, this Court must only determine whether an arbitration agreement exists, which Zynga has plainly established as to all three Plaintiffs. Pursuant to the Plaintiffs' valid agreements with Zynga, all three should be compelled to arbitrate their disputes on an individual basis before JAMS.

### C. Alternatively, This Case Should Be Transferred to the Southern District of New York

Plaintiffs' causes of action belong in arbitration. Alternatively, this case should be transferred to the Southern District of New York under the valid forum selection clause in the Take-Two Terms.

Under 28 U.S.C. § 1406(a), this Court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." On a motion to transfer venue pursuant to a forum selection clause, "plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 63 (2013). A forum selection clause should control, unless unusual circumstances exist. *Id.* at 64; *see also Fireman's Fund Ins. Co. v. M.V. DSR Atl.*, 131 F.3d 1336, 1338 (9th Cir. 1997), *as amended* (Mar. 10, 1998) ("A forum selection clause is prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances.") (internal citations omitted). Further, by agreeing to the

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

forum selection clause, the parties "waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses." *Atl. Marine Const. Co.*, 571 U.S. at 64. Rather, forum selection clauses may only be challenged based on matters of public interest. *Id.*

The forum selection clause in the Take-Two Terms is valid and enforceable here. All three Plaintiffs agreed to the Take-Two Terms. *Supra* at Sec. IV.A. The forum selection clause is clear that all disputes must be brought in state or federal court in New York County. (Ungberg Decl. Ex. B ¶ 15.1, Ex. C ¶ 17.1.); *see Hatfield v. Halifax PLC*, 564 F.3d 1177, 1182 (9th Cir. 2009) ("If the parties state their intention in an express choice-of-law clause, California courts ordinarily will enforce the parties' stated intention . . . ."). No public interest concerns exist concerning transfer. If the Court does not compel Plaintiffs' claims to arbitration, for these reasons, all causes of action should be transferred to the Southern District of New York.

**V. CONCLUSION**

For the foregoing reasons, Plaintiffs should be compelled to arbitrate their claims individually before JAMS. Alternatively, if the Court disagrees, this case should be transferred to the Southern District of New York.

//

//

//

//

//

//

//

//

//

//

//

//

//

Dated: July 18, 2025

**MCDERMOTT WILL & EMERY LLP**

By: */s/ William P. Donovan, Jr.*

William P. Donovan, Jr.

2049 Century Park East, Suite 3200
Los Angeles, CA 90067-3206
Telephone: +1 310 277 4110
Fax: +1 310 277 4730
wdonovan@mwe.com

Andrew Kratenstein
Chris Combs
One Vanderbilt Avenue
New York, NY 10017-3852
Telephone: +1 212 547 5400
Fax: +1 212 547 5444
akratenstein@mwe.com
ccombs@mwe.com

Emilie E. O'Toole
444 West Lake Street, Suite 4000
Chicago, IL 60606-0029
Telephone: +1 312 372 2000
Fax: +1 312 984 7700
eotoole@mwe.com

*Attorneys for Defendant Zynga Inc.*