William P. Donovan, Jr. (155881)
wdonovan@mwe.com
**MCDERMOTT WILL & EMERY LLP**
2049 Century Park East, Suite 3200
Los Angeles, CA 90067-3206
Telephone: +1 310 277 4110
Facsimile: +1 310 277 4730

Attorneys for Defendant Zynga Inc.

(*Additional Signatures Below*)

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO**

CHERYLL DOUGHERTY, DELIA CAMARGO, and LAWRENCE GARCIA, individually, as private attorneys general, and on behalf of all others similarly situated,

Plaintiffs,

v.

ZYNGA, INC.

Defendant.

Case No. 3:25-cv-04051-LJC

**DEFENDANT ZYNGA, INC.'S NOTICE OF MOTION AND MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

[Filed concurrently with Zynga's Notice of Motion and Motion to Compel Arbitration and Memorandum of Points and Authorities in Support Thereof and [Proposed] Order]

Judge: Hon. Susan Illston
Date: September 19, 2025
Time: 10:00 a.m.
Courtroom: 1

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on September 19, 2025 or as soon thereafter as the matter may be heard, before the Honorable Susan Illston of the United States District Court for the Northern District of California, in Courtroom 1, of the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, California, Defendant Zynga, Inc. ("Zynga") will and hereby does move this Court for an order dismissing Plaintiffs' causes of action (the "Motion to Dismiss") asserted against Zynga in the Class Action Complaint filed on or about May 9, 2025 (the "CAC") for relief asserted against Zynga by Plaintiffs without leave to amend. This Motion is filed pursuant to Federal Rules of Civil Procedure 9(b), 12(b)(1), and 12(b)(6) as alternative relief if this Honorable Court does not grant Zynga's Motion to Compel Arbitration or Alternatively to Transfer Venue filed contemporaneously herewith, which seeks to compel Plaintiffs to arbitrate their disputes with Zynga or, alternatively, transfer this case to the United States District Court for the Southern District of New York.

Should the Court deny Zynga's other motion, its Motion to Dismiss should be granted for multiple reasons, as set forth in Zynga's memorandum filed herewith. *First*, Plaintiffs have not established constitutional standing nor stated a viable claim because they fail to allege any details about their supposed in-game purchases, reliance on Zynga's conduct, or alleged injury. *Second*, Plaintiffs' claim under the Consumer Legal Remedies Act fails for the independent reason that this statute does not cover the virtual currency at issue. *Third*, Plaintiffs lack standing to seek injunctive relief. *Fourth*, Plaintiffs' unjust enrichment claim is duplicative of Plaintiffs' other defective claims. *Fifth*, Plaintiffs' claim that Defendants' products are addictive has no statutory basis and is barred by the First Amendment. *Sixth*, under the Terms of Service to which Plaintiffs agreed, New York law applies to Plaintiffs' claims and those claims fail under New York law too. *Seventh*, Plaintiff Lawrence Garcia's claim under the federal Video Privacy Protection Act fails because the statute does not apply and the claim is inadequately pled.

Zynga bases its Motion to Dismiss on this Notice, the accompanying Memorandum of Points and Authorities, all pleadings and papers filed in this action, the argument of counsel, and any other matters that may come before the Court.

Dated: July 18, 2025

Respectfully submitted,

*/s/ William P. Donovan, Jr.*

William P. Donovan, Jr. (SBN 155881)
MCDERMOTT WILL & EMERY LLP
2049 Century Park East, Suite 3200
Los Angeles, CA 90067-3206
Tel: (310) 277-4111
Fax: (310) 277-4730
wdonovan@mwe.com

Andrew B. Kratenstein (*pro hac vice*)
Chris Combs (*pro hac vice*)
MCDERMOTT WILL & EMERY LLP
1 Vanderbilt Avenue
New York, NY 10017
Telephone: (212) 547-5400
Facsimilie: (212) 547-5444
akratenstein@mwe.com
ccombs@mwe.com

Emilie E. O'Toole (*pro hac vice*)
MCDERMOTT WILL & EMERY LLP
444 West Lake Street
Suite 4000
Chicago, IL 60606
Telephone: (312) 372-2000
Facsimile: (312) 984-7700
eotoole@mwe.com

*Counsel for Defendant Zynga, Inc.*

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

# TABLE OF CONTENTS


I. INTRODUCTION ........................................ 1

II. BACKGROUND ........................................ 2

III. LEGAL STANDARD ........................................ 3

IV. ARGUMENT ........................................ 4

A. Plaintiffs Lack Standing and Have Not Pled a Cognizable Claim ........................................ 4

B. Virtual Currency Is Not a "Good" Or "Service" Under the CLRA ........................................ 7

C. Plaintiffs Cannot Bring a Claim for Injunctive Relief ........................................ 8

D. Plaintiffs' Unjust Enrichment Claim Fails ........................................ 9

E. Plaintiffs' Addiction Allegations Fail for Additional Reasons ........................................ 10

1. Plaintiffs' Have Failed to Plead Adequately that the Games are Addictive ........................................ 10

2. The UCL, CLRA, and FAL Do Not Apply ........................................ 11

3. Plaintiffs' Addictiveness Allegations are Barred by the First Amendment ........................................ 12

F. New York Law Applies ........................................ 13

1. Plaintiffs Accepted the Terms of Service ........................................ 13

2. Plaintiffs' False Discount Claims Fail Under New York Law ........................................ 14

G. Plaintiff Garcia's VPPA Claim Fails ........................................ 16

1. Garcia Fails to Plead that his Personally Identifiable Information was Impermissibly Disclosed ........................................ 17

a. No Personally Identifiable Information was Disclosed by Zynga ........................................ 17

b. Any Disclosure Was Permitted under the VPPA ........................................ 18

2. Garcia is Not a "Consumer" ........................................ 19

3. Zynga is Not a "Video Tape Service Provider" ........................................ 20

4. Garcia Lacks Standing to Assert a VPPA Claim ........................................ 21

V. CONCLUSION ........................................ 22

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*1-800-Got Junk? LLC v. Super. Ct.*,
189 Cal.App.4th 500, 505 (Cal. Ct. App. 2010) ....................14

*Afriyie v. NBCUniversal Media, LLC*,
No. 23-CV-09433 (S.D.N.Y. Mar. 31, 2025) ....................21

*Am. Amusement Machine Ass'n v. Kendrick*,
244 F.3d 572 (7th Cir. 2001) ....................12

*Anderson v. City of Hermosa Beach*,
621 F.3d 1051 (9th Cir. 2010) ....................12

*Angelilli v. Activision Blizzard, Inc.*,
No. 23-cv-16566, 2025 WL 1184247 (N.D. Ill. Apr. 23, 2025) ....................13

*In re Apple and AT&T iPad Unlimited Data Plan Litig.*,
802 F. Supp. 2d 1070 (N.D. Cal. 2011) ....................4, 9

*In re Apple Inc. Device Performance Litig.*,
386 F. Supp. 3d 1155 (N.D. Cal. 2019) ....................5

*In re Arris Cable Mod. Consumer Litig.*,
No. 17-cv-01834-LHK, 2018 WL 288085 (N.D. Cal. Jan. 4, 2018) ....................4

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................3, 4, 10

*Balzer v. Wal-Mart Stores, Inc.*,
No. CV 14-9779-JFW, 2015 WL 13828418 (C.D. Cal. Feb. 25, 2015) ....................9

*Belcastro v. Burberry Ltd.*,
No. 16-cv-1080 (VEC), 2017 WL 5991782 (S.D.N.Y. Dec. 1, 2017) ....................14

*Belcastro v. Burberry Ltd.*,
No. 16-cv-1080 (VEC), 2017 WL 744596 (S.D.N.Y. Feb. 13, 2017) ....................15

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ....................4, 18

*Binder v. Premium Brands Opco LLC*,
23 Civ. 3939 (NRB), 2024 WL 2978506 (S.D.N.Y. June 11, 2024) ....................15

*Birdsong v. Apple, Inc.*,
590 F.3d 955 (9th Cir. 2009) ....................11

*Brodsky v. Apple, Inc.*,
445 F. Supp.3d 110 (N.D. Cal. 2020) .....21

*Brown v. Entm't. Merchs. Ass'n.*,
564 U.S. 786 (2011) .....12

*Cantu v. Tapestry, Inc.*,
697 F. Supp. 3d 989 (S.D. Cal. 2023) .....20

*Caroll v. Chick-Fil-A, Inc.*,
23-3314, 2024 WL 1091193 (N.D. Cal. Feb. 13, 2024) .....19

*Carroll v. Gen. Mills Inc.*,
No. cv-23-1746-DSR, 2023 WL 4361093 (C.D. Cal. June 26, 2023) .....20

*Cetacean Cmty. v. Bush*,
386 F.3d 1169 (9th Cir. 2004) .....3, 10

*Coffee v. Google, LLC*,
No. 20-cv-03901-BLF, 2022 WL 94986 (N.D. Cal. Jan. 10, 2022) .....11

*Cooper v. Pickett*,
137 F.3d 616 (9th Cir. 1997) .....4

*DaCorta v. AM Retail Grp., Inc.*,
No. 16-cv-01748 (NSR), 2018 WL 557909 (S.D.N.Y. Jan. 23, 2018) .....15

*Davidson v. Kimberly-Clark Corp.*,
889 F.3d 956, 961 (9th Cir. 2018) .....8

*De Rocha Express, Inc. v. Combined Res., Inc.*,
No. 24-2037, 2024 WL 4504536 (N.D. Cal. Oct. 15, 2024) .....17

*Doe v. Epic Games, Inc.*,
435 F. Supp. 3d 1024 (N.D. Cal. 2020) .....7

*Drew v. Equifax Info. Servs.*,
No. C 07-00726 SI, 2007 WL 2028745 (N.D. Cal. July 11, 2007) (Illston, J.) .....17

*Ebin v. Kangadis Food Inc.*,
No. 13 Civ. 2311 (JSR), 2013 WL 6504547 (S.D.N.Y. Dec. 11, 2013) .....15

*Eichenberger v. ESPN*,
876 F.3d 979 (9th Cir. 2017) .....17

*Ellis v. Cartoon Network*,
803 F.3d 1251 (11th Cir. 2015) .....19

*Fairbanks v. Super. Ct.*,
46 Cal. 4th 56 (Cal. 2009).......................................................................................7

*I.B. ex rel. Fife v. Facebook, Inc.*,
905 F. Supp. 2d 989 (N.D. Cal. 2012) ........................................................................8

*Fraley v. Facebook, Inc.*,
830 F. Supp. 2d 785 (N.D. Cal. 2011) ........................................................................3

*Gallagher v. Cigna Healthcare of Me., Inc.*,
538 F. Supp. 2d 286 (D. Me. 2008) ..........................................................................18

*Haley v. Macy's Inc.*,
263 F. Supp. 3d 819 (N.D. Cal. 2017) ........................................................................6

*Hernandez v. Chewy, Inc.*,
No. 2:23-cv-05620 HDV, 2023 WL 9319236 (C.D. Cal. Dec. 13, 2023)..............................19

*Hernandez v. Jostens, Inc.*,
No. 23-cv-05227-HDV-RAO, 2024 WL 1135165 (C.D. Cal. Feb. 7, 2024) ...................16, 19

*Hodges v. Comcast Cable Commc'ns, Inc.*,
21 F.4th 535 (9th Cir. 2021) ......................................................................................9

*Hughes v. National Football League*,
No. 22-10743, 2024 WL 4063740 (S.D.N.Y. Sept. 5, 2024) .......................................20

*Hurley v. Irish-American Gay, Lesbian, and Bisexual Grp. of Boston*,
515 U.S. 557 (1995)...................................................................................................12

*In re iPhone App. Litig.*,
6 F.Supp.3d 1004 (N.D. Cal. 2013) ............................................................................4

*Irvine v. Kate Spade & Co.*,
No. 16-cv-7300 (JMF), 2017 WL 4326538 (S.D.N.Y. Sept. 28, 2017) ...............................15

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) ....................................................................................4

*Kulp v. Munchkin, Inc.*,
678 F. Supp. 3d 1158 (C.D. Cal. 2023) ......................................................................9

*Loomis v. Slendertone Distrib. Inc.*,
420 F. Supp. 3d 1046 (S.D. Cal. 2019).......................................................................8

*Mai v. Supercell Oy*,
648 F. Supp. 1130 (N.D. Cal. 2023) ...........................................................................8

*Mai v. Supercell Oy*,
No. 23-15144, 2024 WL 2077500 (9th Cir. May 9, 2024)....................................7, 8, 10, 11

*Malik v. Malik*,
No. 2:23-cv-1344 TLN CKD, 2024 WL 2259154 (E.D. Cal. May 17, 2024).........................18

*Missaghi v. Coca-Cola Co.*,
No. CV 12-07472 SJO (Ex), 2013 WL 12114765 (C.D. Cal. Jan. 2, 2013)...........................14

*Nedlloyd Lines B.V. v. Sup. Ct.*,
3 Cal.4th 459 (Cal. 1992)....................................................................................13, 14

*In re Nickelodeon Consumer Privacy Lit.*,
827 F.3d 262 (3d Cir. 2015)..........................................................................................17

*Rodriguez v. Delta T LLC*,
No. 2:23-3717-HDV-AGR, 2023 WL 9419152 (C.D. Cal. Dec. 12, 2023)............................20

*Rodriguez v. Sony Computer Entm't Am., LLC*,
801 F.3d 1045 (9th Cir. 2015) ......................................................................................18

*Rothman v. Equinox Holdings, Inc.*,
No. 2:20-cv-09760-CAS-MRWx, 2021 WL 124682, at *6 (C.D. Cal. Jan. 13, 2021) .............5

*Sinatro v. Barilla Am., Inc.*,
635 F. Supp. 3d 858 (N.D. Cal. 2022) ..............................................................................9

*Smith v. Keurig Green Mountain, Inc.*,
393 F. Supp. 3d 837 (N.D. Cal. 2019)..............................................................................4

*Snyder v. Phelps*,
562 U.S. 443 (2011).....................................................................................................12

*Solomon v Flipps Media, Inc.*,
136 F.4th 41 (2d Cir. 2025) ..........................................................................................17

*Sterk v. Redbox Automated Retail*,
770 F.3d 618 (7th Cir. 2014) ........................................................................................18

*Taylor v. Google LLC*,
No. 20-cv-07956-VKD, 2021 WL 4503459 (N.D. Cal. Oct. 1, 2021) ....................................3

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007).....................................................................................................16

*Tryan v. Ulthera, Inc.*,
No. 17-cv-02036-MCE-CMK, 2018 WL 3955980 (E.D. Cal. Aug. 17, 2018).........................8

*In re Vizio, Inc.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017) ....................................................................20

*Warth v. Seldin*,
422 U.S. 490 (1975)....................................................................................................21

*Wash. Mut. Bank, F.A. v. Sup. Ct.*,
24 Cal.4th 906 (Cal. 2001)..........................................................................................14

*In re Zoom Video Communs. Privacy Litig.*,
525 F. Supp. 3d 1017 (N.D. Cal. 2021) ......................................................................6

**Statutes**

18 U.S.C. § 2701(a)(4).......................................................................................................20

18 U.S.C. § 2710.............................................................................................................. *passim*

Cal. Bus. & Prof. Code § 1750 *et seq.* ........................................................................................1

Cal. Bus. & Prof. Code § 17200 *et seq.* ...................................................................................1, 11

Cal. Bus. & Prof. Code § 17500 *et seq.* ...................................................................................1, 11

Cal. Civ. Code § 1750 *et seq*.......................................................................................................11

Cal. Civ. Code § 1770(a) ..............................................................................................................7

N.Y. Gen. Bus. Law § 349..........................................................................................................15

**Other Authorities**

Fed. R. Civ. P. 8 ..........................................................................................................................18

Fed. R. Civ. P. 8(a)(2)....................................................................................................................3

Fed. R. Civ. P. 9(b) ....................................................................................................................4, 6

Fed. R. Civ. P. 12(b)(1)..................................................................................................................3

Fed. R. Civ. P. 12(b)(6)..................................................................................................................3

## I. INTRODUCTION

As discussed in the accompanying Notice of Motion and Motion to Compel Arbitration or Alternatively to Transfer Venue and Memorandum of Points and Authorities in Support Thereof [ECF No. 25] (the "Motion to Compel"), Plaintiffs should be compelled to arbitrate their disputes with Zynga, Inc. ("Zynga") or, alternatively, this case should be transferred to the United States District Court for the Southern District of New York. Should the Court deny those motions, then this Court should dismiss the Complaint as it fails to state a claim for multiple reasons.

*First*, Plaintiffs lack standing and fail to state a claim under the Unfair Competition Law (Cal. Bus. & Prof. Code § 17200 *et seq.*) (the "UCL"), the False Advertising Law (Cal. Bus. & Prof. Code § 17500 *et seq.*) (the "FAL"), the Consumer Legal Remedies Act (Cal. Bus. & Prof. Code § 1750 *et seq.*) (the "CLRA"), and for fraud because the Complaint contains no specific allegations regarding Plaintiffs' in-game activity or purchases. Indeed, the Complaint makes no substantive allegations regarding Plaintiffs Cheryll Dougherty ("Dougherty") and Delia Camargo ("Camargo"). The scant allegations about Plaintiff Lawrence Garcia ("Garcia") provide nowhere near the level of detail required to establish standing or state a plausible claim let alone to meet the heightened pleading standard of Federal Rule of Civil Procedure ("FRCP") 9(b).

*Second*, Plaintiffs' claim under the CLRA fails for the independent reason that the statute by its terms does not apply to the virtual currency at issue here.

*Third*, Plaintiffs cannot seek injunctive relief because Plaintiffs have not alleged that they plan to play the Games in the future, or for that matter, still play *Toon Blast* and *Toy Blast* (the "Games"). They also do not seek relief on behalf of the public at large, but only for Game players.

*Fourth*, California law does not even apply here. New York law applies under the Terms of Service to which Plaintiffs agreed, and Plaintiffs claims fail under New York law.

*Fifth*, Plaintiffs' unjust enrichment claim is duplicative of its other defective claims and cannot stand on its own.

*Sixth*, Plaintiffs' allegations that the games are addictive have no statutory basis. They are also barred by the First Amendment as video games are protected speech.

*Seventh*, the Video Privacy Protection Act (18 U.S.C. § 2710) (the "VPPA") does not apply because Zynga is not a "video tape service provider," Garcia is not a "consumer", and the Complaint fails to allege that any personally identifiable information was impermissibly disclosed. Garcia also lacks standing to sue under the VPPA because he has not established that his claim is timely or that he has played both Games.

Thus, if Plaintiffs are not compelled to arbitrate or this case is not transferred to the Southern District of New York, the Complaint should be dismissed with prejudice.

## II. BACKGROUND

Zynga is a wholly-owned subsidiary of Take-Two Interactive Software, Inc. ("Take-Two"). (CAC ¶ 2.) Take-Two owns the Games. (*Id.*) Primarily played on mobile devices, the Games are functionally identical tile-matching puzzle games, in which players advance through each level by selecting groups of matching tiles in a certain number of turns to clear the board. (*Id.* ¶¶ 30-33.)

To aid with more challenging levels, players can purchase "Coins," which they can then spend on additional lives, extra moves, or special items known as "Boosters" such as cartoon bombs and rockets players can use to blast through obstacles. (*Id.* ¶¶ 34-37.) In addition to Coins, players can also purchase "Bundles" that include various combinations of Coins, Boosters, and other bonus items, such as unlimited lives for a set period of time. (*Id.* ¶ 38.) Players are regularly presented with time-limited offers of discounts or special sales. (*Id.* ¶ 40.)

Plaintiffs allege that the Games use "false and deceptive advertising tricks to artificially inflate the perceived worth of the bundle of items players purchase." (*Id.* ¶ 39.) Specifically, Plaintiffs allege that the time-limited discounts are offered perpetually, or that – because there are no competitors selling similar products for the Games – the discounted prices are not actually discounted or on sale from any original price. (*Id.* ¶¶ 40-55.) Plaintiffs allege that these practices violate the UCL, the FAL, the CLRA, and constitute common-law fraud and unjust enrichment. (*Id.* ¶¶ 168-222.) Plaintiffs seek compensatory and actual damages; statutory damages, punitive damages, civil

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

penalties, injunctive, declaratory, and equitable relief, costs, attorneys' fees, and interest. (*Id.* at 45.) Garcia also brings a separate claim under the VPPA.

Plaintiffs Dougherty and Camargo are California residents and Plaintiff Garcia was a California resident until 2024. (*Id.* ¶¶ 12-14.). The Complaint alleges that Plaintiffs have downloaded and made in-Game purchases. (*Id.* ¶¶ 14-15.) But the Complaint contains no further allegations about Plaintiffs' supposed Game playing and in-Game purchases. The Complaint's "Factual Allegations" section does not even mention Dougherty or Camargo. (*Id.* ¶¶ 30-121.) It mentions Garcia twice, and only to allege that he watched pre-recorded video content in Toon Blast. (*Id.* ¶¶ 101, 126.) Garcia (and only Garcia) alleges that Zynga is a "video tape service provider" that caused his personal viewing information to be disclosed to third parties in violation of the VPPA. (*Id.* ¶ 223-33.)

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

## III. LEGAL STANDARD

Plaintiffs must allege and establish standing under Article III of the United States Constitution and show they suffered injury-in-fact and loss of money or property because of Zynga's alleged conduct. *See Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004) ("To establish standing, Plaintiffs "must show that (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."). Pursuant to FRCP 12(b)(1), a defendant may challenge standing either on the face of the pleadings or by presenting extrinsic evidence. *Taylor v. Google LLC*, No. 20-cv-07956-VKD, 2021 WL 4503459, at *2 (N.D. Cal. Oct. 1, 2021); *Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785, 793 (N.D. Cal. 2011) ("In resolving a factual dispute as to the existence of subject matter jurisdiction, a court may review extrinsic evidence beyond the complaint without converting a motion to dismiss into one for summary judgment.").

Plaintiffs must also provide a "short and plain statement of the claim showing that [she] is entitled to relief[.]" FRCP 8(a)(2). A complaint that fails to do so should be dismissed under FRCP 12(b)(6). When ruling on a motion to dismiss, "a judge must accept as true all of the factual allegations contained in the complaint." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). But the Court is not bound to accept legal conclusions couched as facts, or naked assertions "devoid of factual enhancement." *Id.* A complaint that offers "labels and conclusions" or "formulaic recitation of the elements of a cause of action will not do." *Id.* Instead, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." *Id.* The complaint allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Finally, claims that "sound in fraud" – including under the UCL, CLRA, and FAL – must satisfy the heightened pleading standard of particularity in FRCP 9(b). *See In re Apple and AT&T iPad Unlimited Data Plan Litig.*, 802 F. Supp. 2d 1070, 1075 (N.D. Cal. 2011). To satisfy FRCP 9(b)'s particularity requirement, "a fraud claim must state the 'who, what, when, where, and how' of the alleged conduct" and why the conduct complained of was "false or misleading." *Smith v. Keurig Green Mountain, Inc.*, 393 F. Supp. 3d 837, 843 (N.D. Cal. 2019) (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)).

## IV. ARGUMENT

### A. Plaintiffs Lack Standing and Have Not Pled a Cognizable Claim

Plaintiffs must establish both constitutional standing and statutory standing to state a claim under the UCL, CLRA, and FAL. *In re iPhone App. Litig.*, 6 F.Supp.3d 1004, 1012-13 (N.D. Cal. 2013). Further, "[w]hen UCL, CLRA, and FAL claims are premised on misleading advertising or labeling, Rule 9(b) requires the plaintiff to allege the particularly circumstances surrounding the representations at issue." *In re Arris Cable Mod. Consumer Litig.*, No. 17-cv-01834-LHK, 2018 WL 288085, at *8 (N.D. Cal. Jan. 4, 2018) (citing *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009)). Thus, the plaintiff must identify the specific alleged misrepresentation made to the plaintiff and how that plaintiff reasonably relied on it to their detriment. *Kearns*, 567 F.3d at 1126 ("Kearns [] failed to specific which sales material he relied upon in making his decision to buy"). Plaintiffs come nowhere close to meeting these standards.

Despite the Complaint being 46 pages long with 233 numbered paragraphs, there is not a single substantive allegation about Dougherty or Camargo. The Complaint's sole allegation about Dougherty states, "Plaintiff Dougherty did not play Toy Blast at any time, when, according to Take-

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

Two's latest yet ever-changing position on what arbitration clause governs, playing the game purported to subject users to an arbitration clause." (CAC ¶ 164.) Likewise, the Complaint contains no substantive allegations about Camargo, including which of the Games she played, noting only that she was not one of class counsel's previous group of arbitration claimants. (*Id.* ¶ 165.) Such bare allegations fall far short of establishing standing or stating a claim. *See, e.g.*, *In re Apple Inc. Device Performance Litig.*, 386 F. Supp. 3d 1155, 1171-73 (N.D. Cal. 2019) (dismissing plaintiffs' claim regarding a defective battery because, even though they had alleged (1) the device used, (2) the date of purchase, (3) and the software versions use, they had not pled that the individual plaintiffs personally experienced a defective battery).

The Complaint's allegations about Garcia are barely more detailed. The Complaint contains only vague allegations that he "made in-app purchases in the Toon Blast game as a California resident" and "watched pre-recorded video content in the Toon Blast game." (*Id.* ¶ 14.) Like Dougherty and Camargo, the Complaint provides no specifics regarding Garcia's in-Game purchases, including what purchases he made, when he made them, and what in-Game misrepresentations he relied on in making the purchases. Further, the Complaint does *not* allege Garcia is still playing the Games or even still lives in California.

In *Rothman v. Equinox Holdings, Inc.*, the court dismissed UCL, CLRA, and FAL claims because the plaintiff failed to plead actual reliance on Equinox's refund policy. *See* No. 2:20-cv-09760-CAS-MRWx, 2021 WL 124682, at *6 (C.D. Cal. Jan. 13, 2021). The complaint's only allegation of reliance baldly stated that "Consumers, including plaintiff and members of the Class, necessarily and reasonably relied on Defendant's statements . . . ." *Id.* at *5. The court noted, "[i]t is not enough to 'receive' a misrepresentation in a document; a plaintiff must see, read, or hear the alleged misrepresentation and rely on it." *Id.* Because plaintiff's allegations did not specify "when – if at all – plaintiff viewed the alleged misrepresentation nor what actions he took as a result," reliance was insufficiently pled. *Id.*

Similarly, here, the Complaint generally alleges that the Games use false and deceptive sales tactics (CAC ¶¶ 39-55) but contains conclusory allegations of reliance on these sales tactics and resulting injury. (*Id.* ¶ 187) ("Plaintiffs and the Classes relied on these misleading and deceptive

representations regarding the limited-time bonuses they could expect to receive in the packs"); (*Id.* ¶ 215) ("Plaintiffs reasonably relied upon the claims made in the advertisements in deciding to purchase the aforementioned packs"). Absent are specific allegations about Plaintiffs' specific in-Game activity or purchases, including what purchases each Plaintiff made, when they made them, why the purchases were based on false information, or how they were damaged by those purchases. *See In re Zoom Video Communs. Privacy Litig.*, 525 F. Supp. 3d 1017, 1046 (N.D. Cal. 2021) (dismissing fraud-based UCL and CLRA claims under Rule 9(b)).

Relatedly, although the Complaint makes general allegations about the kinds of allegedly false and deceptive sales tactics present in the Games (CAC ¶¶ 39-55), it does not allege that *all* available in-Game purchases use false and deceptive sales tactics, only that the price of some "bundles" or "packs" are "artificially inflate[d]." (*Id.* ¶ 39.) That too is grounds for dismissal.

In *Haley v. Macy's Inc.*, 263 F. Supp. 3d 819 (N.D. Cal. 2017), the court dismissed a class action complaint alleging violations of the UCL, CLRA, and FAL arising from an alleged pricing scheme to mislabel department store merchandise with false or inflated original and regular prices, which did not reflect the prices defendants routinely if ever sold their products. As the court observed, "The complaint does not provide more detail about these specific purchases, but neither does it categorically allege that *all* of Defendants' products are misleadingly priced. In fact, Plaintiffs concede some prices are not false or deceptive. But without more, Defendants cannot identify the transactions involving purportedly misleading prices in order to defend against plaintiffs' allegations." *Haley*, 263 F. Supp. 3d at 823.

The same logic applies here. Plaintiffs were required to identify what allegedly fictious sales or discounts each individual Plaintiff allegedly relied on in making their purchases, the actions they took as a result, and the injury they suffered. Indeed, once the conclusory allegations are disregarded, it is just as plausible that the Plaintiffs could have only purchased bundles with no special offers. Because Plaintiffs do not plead the necessary factual allegations with specificity, they lack statutory standing and fail to state a claim.

Finally, even if Plaintiffs *had* appropriately identified the allegedly fictitious sales or discounts each individual Plaintiff relied on in making their purchases, Plaintiffs would still not have

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

standing because they have not shown an economic injury-in-fact. *See Mai v. Supercell Oy*, No. 23-15144, 2024 WL 2077500, at *1 (9th Cir. May 9, 2024). In *Mai*, Plaintiffs purchased in-game "loot boxes," which contained "mystery items," which purchasers knew could be a variety of different items. *Id.* Because each "loot box" contained exactly what they expected it to, the Court found that they had not shown a sufficient economic injury-in-fact and could satisfy neither constitutional or statutory standing under the UCL and CLRA. *See id.*

The Complaint provides a variety of examples of Bundles that players can purchase in the Games. (CAC ¶¶ 44-45, 48, 51, 53). Even if the Complaint alleged which Bundles each Plaintiff purchased – which it does not – the Complaint makes no allegations that the Bundles did not contain the coins and special items that players believed they were purchasing, for the price at which they believed they were making the purchase. Such allegations are insufficient to show an injury-in-fact. *See Mai*, 2024 WL 2077500, at *1 ("They concede that for each loot box they purchased, they received exactly what they had expected: at least one mystery virtual item. Thus, they have not shown a sufficient economic injury-in-fact.").

**B. Virtual Currency Is Not a "Good" Or "Service" Under the CLRA**

Plaintiffs' claim under the CLRA fails for the independent reason that intangible items fall outside the CLRA's scope. The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a). The CLRA was not intended to apply to entertainment or recreation transactions, and it does not apply to things that are not goods or services under the CLRA. *See Fairbanks v. Super. Ct.*, 46 Cal. 4th 56, 60 (Cal. 2009). The CLRA defines goods as tangible chattels and defines services as "work, labor, and services for other than a commercial or business use, including services furnished in connection with the sale or repair of goods." *Id.* § 1761(a)-(b).

Plaintiffs' CLRA claim is based on Zynga's representations regarding the sale of virtual "Bundles." (CAC ¶¶ 39-55.) Bundles are virtual items unrelated to any tangible chattel or service. California courts have routinely found that plaintiffs fail to state claims under the CLRA because virtual in-game currency is not a good or service as defined in the statute. *See, e.g.*, *Doe v. Epic*

*Games, Inc.*, 435 F. Supp. 3d 1024, 1045-46 (N.D. Cal. 2020) ("[T]he virtual currency at issue is not a good or service" and virtual "supplies" and "ammunition" in a video game are "digital" rather than "tangible"); *Mai v. Supercell Oy*, 648 F. Supp. 1130, 1136 (N.D. Cal. 2023) (dismissing CLRA claim brought based on Defendants' alleged "sale of virtual currency, loot boxes, and services in providing the games and selling the loot boxes" because "virtual currency is not a good or service for purposes of the CLRA); *vacated and remanded*, No. 23-15144, 2024 WL 2077500, at *2 (9th Cir. May 9, 2024) (finding plaintiffs also did not have Article III standing); *I.B. ex rel. Fife v. Facebook, Inc.*, 905 F. Supp. 2d 989, 1007-08 (N.D. Cal. 2012) (holding that digital currency is not a good or a service under the CLRA). Thus, the CLRA claim fails for this additional reason.

### C. Plaintiffs Cannot Bring a Claim for Injunctive Relief

The Complaint also purports to seek injunctive relief under the UCL, CLRA, and FAL. (CAC ¶¶ 191-92, 198, 210.) Plaintiffs lack standing to do so.

In *Davidson v. Kimberly-Clark Corp.*, the Ninth Circuit recognized "that misled consumers may properly allege a threat of imminent or actual harm sufficient to confer standing to seek injunctive relief." 889 F.3d 956, 961 (9th Cir. 2018). The court found that the plaintiff had "properly alleged that she faces a threat of imminent or actual harm by not being able to rely on Kimberly-Clark's labels in the future." *Id.* at 969.

Unlike *Davidson*, where the court's decision hinged on the plaintiff's inability to rely on the defendant's labels in the future, Plaintiffs have not alleged that they plan to play and make purchases in the Games in the future. They allege only that "*may* still play the Games and be deceived and pressured into making in-app purchases." (*Id.* ¶ 192) (emphasis added). But the vague notion that a Plaintiff "may" "play the Games" and "mak[e] in-app purchases" does not allege a threat of imminent or actual harm. *See, e.g.*, *Loomis v. Slendertone Distrib. Inc.*, 420 F. Supp. 3d 1046, 1077 (S.D. Cal. 2019) (finding plaintiff lacked standing to seek injunctive relief under the UCL where she alleged only that she "would consider" buying another device from defendant without specifying the particular product); *Tryan v. Ulthera, Inc.*, No. 17-cv-02036-MCE-CMK, 2018 WL 3955980, at *9-10 (E.D. Cal. Aug. 17, 2018) (holding plaintiff did not have standing to seek injunctive relief where plaintiffs did not allege they would use defendant's product in the future).



McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

Further, the injunctive relief Plaintiffs seek would not benefit the general public, just a subset of individuals who play the Games. Plaintiffs' allegations concern allegedly "false and deceptive advertising tricks" *in the Games*. (CAC ¶¶ 34, 39.) Plaintiffs make no allegations – because they cannot – that Zynga's alleged actions are directed at the public at large. Accordingly, the relief they seek would not benefit the general public, but rather a discrete subset of people that play the Games. Any claim for injunctive relief thus fails because "the injunctive relief being sought is for the benefit of a discrete class of persons . . .." *Hodges v. Comcast Cable Commc'ns, Inc.*, 21 F.4th 535, 543 (9th Cir. 2021) (rejecting claim for injunctive relief in class action challenging a cable provider's data collection practices).

Finally, even if the Games' in-store prices were misleading or deceptive – they are not – Plaintiffs are by now obviously aware of the practices they allege to be misleading or deceptive and can no longer pursue injunctive relief as a result. *See, e.g.*, *Kulp v. Munchkin, Inc.*, 678 F. Supp. 3d 1158, 1166 (C.D. Cal. 2023) (holding that plaintiffs lacked standing to pursue injunctive relief because they did not plead they were in the market for a future purchase, and if they were they were now ware of the undisclosed safety risks associated with the product in question); *Sinatro v. Barilla Am., Inc.*, 635 F. Supp. 3d 858, 879 (N.D. Cal. 2022) (finding that, because plaintiffs were now aware of the locations where the products were manufactured, plaintiffs could not allege they would be misled by the representation in the future).

For all these reasons, Plaintiffs cannot seek injunctive relief.

**D. Plaintiffs' Unjust Enrichment Claim Fails**

Plaintiffs' unjust enrichment claim is duplicative of Plaintiffs' other defective claims. *See Balzer v. Wal-Mart Stores, Inc.*, No. CV 14-9779-JFW (PJWx), 2015 WL 13828418, at *4 (C.D. Cal. Feb. 25, 2015) ("[C]ourts generally dismiss quasi-contract claims that are merely duplicative of UCL, FAL, and CLRA claims, which already provide for restitution as a remedy.") (collecting cases); *In re Apple & AT&T iPad Unlimited Data Plan Litig.*, 802 F. Supp. 2d. at 1077 ("[P]laintiffs cannot assert unjust enrichment claims which that are merely duplicative of statutory or tort claims."). Plaintiffs allege only that Defendants mispresented the value of the bundled items, that Plaintiffs spent significant amounts of money on falsely discounted packs as well as other items

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

they were pressured or manipulated into, and that it would be unfair for Zynga to keep that money. (CAC ¶¶ 221-22.) Such allegations are the same as those contained in Plaintiffs' other causes of actions. Plaintiffs' unjust enrichment claim cannot stand on its own and should be dismissed.

**E. Plaintiffs' Addiction Allegations Fail for Additional Reasons**

In addition to alleging purportedly false discounts, the Complaint alleges that Zynga "deliberately fosters addictive behaviors and lures consumers into dangerous spending habits," and that the supposedly unknown frequency or occurrence of sales and discounts further fosters such addiction. (CAC ¶¶ 72-73.) Specifically, the Complaint alleges that the Games violate the "unfair" prong of the UCL (*Id.* ¶ 183) and the unlawful prong of the CLRA (*Id.* ¶ 210) by intentionally designing the Games to foster addiction.

These allegations fail for at least three additional reasons. *First*, the claims are not pled with specificity. *Second*, even if they were, the UCL, CLRA, and FAL do not recognize causes of action for "addictive" content. *Third*, the Games are protected under the First Amendment.

1. <u>Plaintiffs' Have Failed to Plead Adequately that the Games are Addictive</u>

As discussed above, to establish Article III standing, a plaintiff "must show that (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Cetacean*, 386 F.3d at 1174. The Complaint must also include specific factual content that allows the court to reasonably infer that the defendant is liable, and the facts must be sufficient to show that the claims are plausible and not merely conceivable. *Iqbal*, 556 U.S. at 678.

As discussed above, the Ninth Circuit recently found that plaintiffs who alleged that in-game "loot boxes" "rel[ied] on cognitive biases associated with gambling and thus increase[d] the risk that players . . . may develop gambling or gaming addictions" lacked standing, because they had nut alleged that they themselves had suffered any such injury." *Mai*, 2024 WL 2077500, at *2 ("At most, they allege that other players may face an increased risk of developing a gambling or gaming addiction. A potential risk to others is not sufficient to state a concrete and particularized injury

sufficient for Article III standing") (citing *Birdsong v. Apple, Inc.*, 590 F.3d 955, 961-62 (9th Cir. 2009) ("The risk of injury the plaintiffs allege is not concrete and particularized *as to themselves*").)

Here, the Complaint's allegations that the Games are addictive are generic and conclusory assertions about how the Games are supposedly addictive is devoid of any factual assertion that *Plaintiffs* themselves found the Games addictive. (CAC ¶¶ 7, 15, 69-75, 183, 192, 198, 207, 210.) For example, the Complaint alleges that, due to the supposedly addictive nature of the Games, players paid higher prices and made purchases more frequently than they otherwise would have. (*Id.* ¶¶ 15, 75.) But the Complaint provides no information about how often Plaintiffs played the Games or how much money they spent doing so, much less how the time and money spent was increased by the Games' supposedly addictive properties. The addiction allegations fail for that reason alone.

2. The UCL, CLRA, and FAL Do Not Apply

Further, none of the statutes under with the Plaintiffs bring claims – the UCL, CLRA, and FAL – says anything about or specifically allow for claims based on addictive content. *See* Cal. Bus. & Prof. Code § 17200 *et seq*; Cal. Bus. & Prof. Code § 17500 *et seq*; and Cal. Civ. Code § 1750 *et seq*.

California courts have rejected claims where Plaintiffs have tried to assert addictiveness claims under the UCL and CLRA to conduct that has not been deemed unlawful. While the Ninth Circuit in *Mai* relied on the additional reason that Plaintiffs had not properly alleged Article III standing, the district court also granted defendant's motion to dismiss for lack of statutory standing under the UCL and CLRA, holding that the in-game features fell outside the bounds of unlawful gambling under California law, and even accepting plaintiffs' allegations as true, the public interest lay in seeking legislative remedies. *Mai*, 648 F. Supp. 3d at 1137-39 ("the California legislature has enacted statutes outlining the bounds of unlawful gambling, and [Defendant's] conduct does not constitute unlawful gambling under the [California Penal Code] . . . it is not this Court's role to apply purely subjective notions of fairness under the UCL") (citing *Coffee v. Google, LLC*, No. 20-cv-03901-BLF, 2022 WL 94986, at *14 (N.D. Cal. Jan. 10, 2022)).

The same is true here. None of the statutes under which Plaintiffs sue regulates the purported "addictive" content of video games or any other media, such as books, films, or music. And even if there were such a statute, as explained below, it would be unconstitutional under the First Amendment.

3. <u>Plaintiffs' Addictiveness Allegations are Barred by the First Amendment</u>

The First Amendment prohibits imposing civil liability on the creation and dissemination of constitutionally protected speech. *See Snyder v. Phelps*, 562 U.S. 443 (2011). The First Amendment's protection extends to modern forms of expression, including video games, despite often lacking a singular, clearly defined message. *See Brown v. Entm't. Merchs. Ass'n.*, 564 U.S. 786, 790 (2011).

In *Brown v. Entertainment Merchants Association*, the Supreme Court struck down a California law restricting the sale of violent video games to minors, affirming that video games – like books, films, and music – communicate ideas and social messages through characters, dialogue, and plot, even when those messages are complex, interactive, or ambiguous. 564 U.S. at 794. Video games are no less worthy of First Amendment protection because they successfully engage players through interactive features and devices. *See id.* at 798 ("All literature is interactive. The better it is, the more interactive.") (quoting *Am. Amusement Machine Ass'n v. Kendrick*, 244 F.3d 572, 577 (7th Cir. 2001).)

Plaintiffs also cannot reasonably contend that their addictiveness claim is based on Take-Two's conduct, not its content or expression. *See Anderson v. City of Hermosa Beach*, 621 F.3d 1051, 1062 (9th Cir. 2010) ("the process of expression through a medium has never been thought so distinct from the expression itself" that one but not the other is protected by the First Amendment). Nor can Plaintiffs sidestep the First Amendment by arguing that the Games do not advance any particular idea, as the First Amendment has long protected acts of expression not obviously linkable to any particular concept. *See Hurley v. Irish-American Gay, Lesbian, and Bisexual Grp. of Boston*, 515 U.S. 557, 569 (1995).

Any contention that Zynga could alter the "addictive game design" (CAC ¶ 71) without changing its in-game content also fails. Players who make purchases within the Games do so

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

precisely because they find the Games engaging and make purchases that more easily allow them to continue playing and advance through the Games' levels and episodic structure. Removing the engaging elements that some players supposedly find "addictive" would fundamentally alter the in-game experience that is protected by the First Amendment. "This is about as persuasive as saying the First Amendment would not be implicated by a mandate that authors not end chapters on cliffhangers because moving a chapter heading does not affect a book's content." *Angelilli v. Activision Blizzard, Inc.*, No. 23-cv-16566, 2025 WL 1184247, at *6 (N.D. Ill. Apr. 23, 2025) (rejecting argument that the First Amendment is not implicated by the video game Roblox because allegedly addictive features could be modified without changing the content of the game itself).

For all these reasons, Plaintiffs' addictiveness claim fails.

**F. New York Law Applies**

Even if Plaintiffs could bring a viable claim under California law – which they cannot for the reasons stated above – California law does not even apply. Rather, New York law applies under the Terms of Service to which each Plaintiff agreed, that choice of law should be enforced. Just as Plaintiffs' claims fail under California law, they also fail under New York law.

1. <u>Plaintiffs Accepted the Terms of Service</u>

California has a strong public policy favoring enforcement of choice of law provisions. *Nedlloyd Lines B.V. v. Sup. Ct.*, 3 Cal.4th 459, 468-70 (Cal. 1992) (hereinafter, "*Nedlloyd*"). In determining the scope of a choice-of-law provision, California law implies broad coverage of all claims related to a contract. *Id.* at 470 (holding a choice of law provision "encompasses all causes of action arising from or related to that agreement").

As discussed in the Motion to Compel, Plaintiffs accepted the 2025 Take-Two Terms of Service (the "2025 Take-Two Terms"), which states that this "Agreement is entered into in the State of New York and shall be governed by, and construed under, the laws of the State of New York, without regard to conflict of law rules." (Ungberg Decl. Ex. B § 17.1.) Although Plaintiffs each purported to opt out of the 2025 Take-Two Terms, the 2024 Take-Two Terms of Service (the "2024 Take-Two Terms") – which all three Plaintiffs also accepted and can no longer validly opt out of – contain the same choice-of-law clause. (*Id.* Ex. C § 15.1).

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

Both the 2024 Take-Two Terms and the 2025 Take-Two Terms also apply broadly to "the terms and conditions by which we offer you access to use our games, apps, products, websites, and other services (the 'Services') as well as Virtual Items [] and your Account . . .." Plaintiffs' claims thus fall well within the scope of the Terms of Service and California's broad view of what falls within a choice-of-law provision.

2. Plaintiffs' False Discount Claims Fail Under New York Law

In analyzing the enforceability of choice-of-law provisions, "the court must first determine: (1) whether the chosen state has a substantial relationship to the parties or their transaction, or (2) whether there is any other reasonable basis for the parties' choice of law." *Wash. Mut. Bank, F.A. v. Sup. Ct.*, 24 Cal.4th 906, 916-17 (Cal. 2001) (citing *Nedlloyd*, 3 Cal.4th at 468-70) (*en banc*) (internal citations omitted.)

California courts have found its interest in having disputes governed by a uniform body of law and a geographic relevance of the forum state to be enough of a "reasonable basis" for a choice-of-law provision. *See 1-800-Got Junk? LLC v. Super. Ct.*, 189 Cal.App.4th 500, 505 (Cal. Ct. App. 2010) (finding a reasonable basis for the designation of the laws of Washington state given the state's proximity to Got Junk's headquarters in Vancouver, Canada); *cf. Missaghi v. Coca-Cola Co.*, No. CV 12-07472 SJO (Ex), 2013 WL 12114765, at *3 (C.D. Cal. Jan. 2, 2013) (finding no reasonable basis when neither the agreement nor the parties' briefs indicated why the laws of Michigan were chosen to apply to the agreement at issue). Here, Zynga and Take-Two have a reasonable basis to choose the laws of the state where Take-Two is headquartered to apply.[1]

Plaintiffs' alleged false discount claims fail under New York law. "New York law does not recognize an injury based on the subjective value assigned to a missing bargain because it impermissibly combines the deception (the appearance of a bargain) with injury (there was no actual

[1] If this test is met, the choice of law provision will be denied only if "the other side can establish *both* that the chosen law is contrary to a fundamental policy of California *and* that California has a materially greater interest in the determination of the particular issue." *Wash. Mut. Bank, F.A.*, 24 Cal.4th at 917. Plaintiffs make no attempt to establish how New York law is contrary to California policy or why California has a greater interest in determining the issue. In any event, the Complaint should be dismissed no matter whether California or New York law applies.

bargain)." *Belcastro v. Burberry Ltd.*, No. 16-cv-1080 (VEC), 2017 WL 5991782, at *3-4 (S.D.N.Y. Dec. 1, 2017). "To plead actual injury . . . a plaintiff must allege that, on account of a materially misleading practice, she purchased a product and did not receive the full value of her purchase." *Binder v. Premium Brands Opco LLC*, 23 Civ. 3939 (NRB), 2024 WL 2978506, at *6 (S.D.N.Y. June 11, 2024). Courts applying New York law "have repeatedly rejected the very theory of injury alleged [where] a plaintiff believed she was getting a bargain based on a fictitious 'original price' and seeks compensation for her subjective disappointment upon discovery that there was never any bargain at all." *Id.*; *see also DaCorta v. AM Retail Grp., Inc.*, No. 16-cv-01748 (NSR), 2018 WL 557909, at *8 (S.D.N.Y. Jan. 23, 2018) ("It is clear that Plaintiff believes she was deceived into purchasing the product and spending what she did, but that fails to demonstrate an actual injury required under the law."); *Irvine v. Kate Spade & Co.*, No. 16-cv-7300 (JMF), 2017 WL 4326538, at *4 (S.D.N.Y. Sept. 28, 2017) (holding that a claim that "but for the mistaken belief that they were getting a bargain, Plaintiffs would not have made their purchases at all" is foreclosed by New York law); *Belcastro v. Burberry Ltd.*, No. 16-cv-1080 (VEC), 2017 WL 744596, at *3 (S.D.N.Y. Feb. 13, 2017) (rejecting plaintiff's theory of injury based on his belief that "he was getting a terrific bargain on his purchases . . . [when] [i]n reality, he was not getting a bargain at all.").

Even if, as Plaintiffs contend, the Bundles "never end," Plaintiffs would still not be injured because they cannot show that they overpaid for the product. *Binder*, 2024 WL 2978506, at *6 ("One way to demonstrate [actual injury] is to allege a 'price premium' injury: that the misrepresentation caused plaintiff to overpay for a product."). Plaintiffs do not claim, for example, that the Bundles players purchase in the Games do not actually contain the items they paid for, or that the bundles are of an inferior quality than what was advertised. *See, e.g.*, *Ebin v. Kangadis Food Inc.*, No. 13 Civ. 2311 (JSR), 2013 WL 6504547, at *4-5 (S.D.N.Y. Dec. 11, 2013) (holding plaintiffs allege a cognizable injury under New York General Business Law § 349 where plaintiffs claimed they had paid a premium for a product "100% Pure Olive Oil" that instead contained "olive pomace oil"). Thus, Plaintiffs do not assert a cognizable legal theory under New York law, and their false discount claims should be dismissed for this additional reason.

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

### G. Plaintiff Garcia's VPPA Claim Fails

Finally, Garcia – on behalf of himself and a putative class of every Zynga app user – asserts a claim for the violation of the VPPA. To plead such a claim, a plaintiff must "plausibly allege that (1) the defendant is a 'video tape service provider,' (2) the defendant disclosed 'personally identifiable information concerning any consumer' to 'any person,' (3) the disclosure was made knowingly and (4) the disclosure was not authorized by Section 2710(b)(2)." *Hernandez v. Jostens, Inc.*, No. 23-cv-05227-HDV-RAO, 2024 WL 1135165, at *1 (C.D. Cal. Feb. 7, 2024). Garcia lacks standing to pursue his VPPA claim and the statute does not apply in any event.

To understand why Garcia's VPPA claim fails, one must understand how third-party advertisements work in Toon Blast, the Game played by Garcia. (CAC ¶ 101.) As the Complaint alleges, Toon Blast is a free-to-play game. (*Id.* ¶ 77.) App users can install and play the Game without *ever* watching an advertisement. But players can choose to watch ads. (*Id.* ¶ 105) ("players are in complete control over the ad experience – they can choose if and when they see an ad").

If a player chooses to watch an ad, those ads are served by *third parties*, not Zynga. (*Id.* ¶ 94) (advertising services allow "marketers and advertisers" to reach players); (¶ 103) (ads are provided by "advertising partners"); (¶ 108) ("Zynga's advertising partners . . . deliver 'personalized advertising.'") Zynga does not select the in-app advertisements; third parties do. Ads are served through Zynga apps by third parties upon request of the player. Zynga's role is to facilitate the deployment of that player-requested, third-party-selected advertising. *See* https://zyngaads.com/ad-solutions.[2] Thus, the Complaint does not allege – nor could it – that Zynga selects which advertisements to show players or when to show them.

[2] The Court may consider materials in the public domain and those that are incorporated in the Complaint. *See* CAC ¶ 100; *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-23 (2007).

1. Garcia Fails to Plead that his Personally Identifiable Information was Impermissibly Disclosed

A VPPA claim requires that the defendant disclosed "information which identifies a person as having requested or obtained *specific* video materials or services." 18 U.S.C. § 2710(a)(3) (emphasis added). Garcia does not specify what information associated with him or his video watching history was allegedly disclosed by Zynga and to whom. The best he can muster are the conclusory allegations of a disclosure of unspecified information. (CAC ¶¶ 90, 160.) Garcia's failure to adequately allege the elements of his claim is grounds for dismissal. *See De Rocha Express, Inc. v. Combined Res., Inc.*, No. 24-2037, 2024 WL 4504536, at *2 (N.D. Cal. Oct. 15, 2024) (dismissing claim for failure to plead necessary elements); *Drew v. Equifax Info. Servs.*, No. C 07-00726 SI, 2007 WL 2028745, at *5 (N.D. Cal. July 11, 2007) (Illston, J.) (same).

a. No Personally Identifiable Information was Disclosed by Zynga

In the Ninth Circuit, "personally identifiable information" under the VPPA is "information that would 'readily permit an ordinary person to identify a specific individual's watching behavior.'" *Eichenberger v. ESPN*, 876 F.3d 979, 985 (9th Cir. 2017) (holding that static identifiers are not personally identifiable information under VPPA) (citing *In re Nickelodeon Consumer Privacy Lit.*, 827 F.3d 262 (3d Cir. 2015)); *see also Solomon v Flipps Media, Inc.*, 136 F.4th 41, 55-57 (2d Cir. 2025) (holding that the "unique string of code" used to collect information about an individual's website interactions via the Facebook Pixel did not constitute PII because an ordinary person could not use it to identify the viewer's interactions). But Garcia does not and cannot allege that the Game shares the user information such as his name, postal address, phone number, email, or any other information that "readily permits an ordinary person to identify a specific individual's watching behavior" because the Game does not ask for or collect that information. Thus, it is not plausible for this information to be shared.

Garcia attempts to distract the Court from this pleading failure by dedicating multiple paragraphs to a recitation of the Take Two Privacy Policy. (CAC ¶¶ 111-17.) Missing from those paragraphs is *any* nexus between the generic privacy policy disclosures and Toon Blast itself. As the Privacy Policy explains, it applies to many products, with the purpose of attempting to capture all

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

use cases, but without each part of the privacy notice applying to each use case. *See* www.take2games.com/privacy ("The Services are also subject to any other terms and policies included in our Services.").

Garcia points to the disclosures in the Privacy Policy without tying them to what happens in Toon Blast. For example, Garcia appears to suggest – but does not explicitly allege – that all "identifiers" listed in paragraph 112 of the Complaint may be shared with advertisers, including the user's name, postal address, phone number, and email. But again, the Game does not ask for or collect this information, and there are no allegations that it does.

Although Plaintiffs are entitled to some benefit at the pleading stage, they still must sufficiently allege a plausible claim, which Garcia does not. *See Gallagher v. Cigna Healthcare of Me., Inc.*, 538 F. Supp. 2d 286, 290 (D. Me. 2008) ("Despite the liberal pleading standard of Rule 8, to survive a motion to dismiss, a complaint must allege 'a plausible entitlement to relief.'") (quoting *Twombly*, 550 U.S. at 559); *Malik v. Malik*, No. 2:23-cv-1344 TLN CKD, 2024 WL 2259154, at *3 (E.D. Cal. May 17, 2024) (same). Thus, the VPPA claim should be dismissed for this reason alone.

b. Any Disclosure Was Permitted under the VPPA

As explained above, third parties, not Zynga, deliver the ads *at the request of a player*. Zynga does not control what specific ad is served or whether the player watches it. Zynga may not even know what ad was served to any player.[3] As a result, at best, Zynga's provision of information to advertisers is to facilitate the fulfillment of a request by the player for an ad; a use case expressly *permitted* by the VPPA.

Although Garcia fails to allege any specific disclosure that would implicate the VPPA, assuming *arguendo* that there was one, it is not a violation of the VPPA when that disclosure is made "incident to the ordinary course of the business of a video tape service provider." 18 U.S.C. § 2710(b)(2)(E). Under the VPPA, "ordinary course of business" is expressly defined to include "order fulfillment" and "request processing." 18 U.S.C. § 2710(a)(2); *see also* S. Rep. 100-599

[3] For this same reason, Plaintiff's VPPA claim fails because he cannot allege that Zynga knowingly disclosed his personally identifiable information.

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

at 4342-12 (1988) ("this subsection also allows disclosure to permit video tape service providers to use mailing houses, warehouses, computer services, and similar companies for marketing to their customers. These practices are called 'order fulfillment' and 'request processing.'"). Thus, the disclosure of information for "order fulfillment" and "request processing" cannot form the basis for a VPPA claim. *Rodriguez v. Sony Computer Entm't Am., LLC*, 801 F.3d 1045, 1054 (9th Cir. 2015); *Sterk v. Redbox Automated Retail*, 770 F.3d 618, 625 (7th Cir. 2014).

Indeed, the only reason that Zynga would have to communicate with third party ad partners about the delivery or watching of ads in Toon Blast is because a player *requested* an ad. And because any disclosure of personally identifiable information by Zynga (if any) in connection with the serving of ads in Toon Blast was to process the player's request for an ad or to fulfil their order for an ad, it is a permitted disclosure under the VPPA. For these additional reasons, Garcia's VPPA claim fails.

2. Garcia is Not a "Consumer"

Garcia also is not a "consumer" under the VPPA. To be a "consumer" under the VPPA, an individual must be a "renter, purchaser, or subscriber of goods or services from a video tape service provider." 18 U.S.C. § 2710(a)(1). Players do not have to pay to play Toon Blast or to watch ads. Therefore, Game players are not renters or purchasers.

To be a consumer, Garcia would have to be a "subscriber" of Toon Blast. "To plausibly allege [a plaintiff] is a subscriber under the VPPA, a plaintiff must allege an association with the defendant that is 'sufficiently substantial and ongoing.'" *See Jostens, Inc.*, 2024 WL 1135165, at *3. Garcia fails this test because "downloading an app for free and using it to view content at no cost is not enough to make a user of the app a 'subscriber' under the VPPA, as there is no ongoing commitment or relationship between the user and the entity which owns and operates the app." *Ellis v. Cartoon Network*, 803 F.3d 1251, 1257 (11th Cir. 2015). *See also Caroll v. Chick-Fil-A, Inc.*, 23-3314, 2024 WL 1091193, at *2 (N.D. Cal. Feb. 13, 2024) (VPPA claim dismissed where plaintiff did not allege an exchange of information in order to watch video content). Because Garcia could delete the Game at any point without consequence, "there is no ongoing commitment or relationship between" Zynga and Garcia, and so he is not a "subscriber" under the VPPA. *Ellis*, 803 F.3d at 1257;

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

*Hernandez v. Chewy, Inc.*, No. 2:23-cv-05620 HDV, 2023 WL 9319236, at *4 (C.D. Cal. Dec. 13, 2023) (plaintiff was not a "subscriber" under the VPPA because they downloaded a free app).

It also is not clear that Garcia is a *current* user of the Game; all of his allegations are in the past-tense, *see, e.g.,* CAC ¶ 101. Where Garcia is not a current user of the Game, there is an additional reason for the Court to conclude that Garcia does not have a "substantial and ongoing" relationship necessary to justify his being a "subscriber" for purposes of the VPPA. *Jostens, Inc.*, 2024 WL 1135165, at *3. Garcia's VPPA claim therefore fails for this reason too.

3. <u>Zynga is Not a "Video Tape Service Provider"</u>

Not only is Garcia not a "consumer" under the VPPA, but Zynga is not a "video tape service provider" under the VPPA. A "video tape service provider" is "any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale or delivery of *prerecorded* video cassette tapes or similar audio visual materials." 18 U.S.C. § 2701(a)(4) (emphasis added). To meet this definition, the "delivering [of] video content must be central to the defendants' business." *Rodriguez v. Delta T LLC*, No. 2:23-3717-HDV-AGR, 2023 WL 9419152, at *4 (C.D. Cal. Dec. 12, 2023). Put differently, the defendant must be "substantially involved in the conveyance of video content" and the product must be "significantly tailored to serve that purpose." *In re Vizio, Inc.*, 238 F. Supp. 3d 1204, 1221 (C.D. Cal. 2017). VPPA claims are routinely dismissed where the allegations are limited to the display of ads or limited video content. *See, e.g.*, *Carroll v. Gen. Mills Inc.*, No. cv-23-1746-DSR, 2023 WL 4361093 (C.D. Cal. June 26, 2023); *Cantu v. Tapestry, Inc.*, 697 F. Supp. 3d 989 (S.D. Cal. 2023).

Toon Blast is a mobile game, it is *not* prerecorded content. *See Hughes v. National Football League*, No. 22-10743, 2024 WL 4063740 (S.D.N.Y. Sept. 5, 2024) (dismissing VPPA claim where content was not prerecorded). The primary purpose of the Game is to provide entertainment to its players, and the delivery of advertisements is not central to that purpose. Indeed, Garcia admits that Toon Blast does not require players to watch any videos. (CAC ¶ 105.) Players can download the Game for free, play the Game for free, and never once interact with any prerecorded video.

The Complaint attempts to obscure these critical facts by alleging that advertising is a source of revenue for Zynga. (CAC ¶ 91.) But advertising revenue is a red herring, immaterial to Garcia's

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

VPPA claim. The fact that a user can play the Game – for free – and never once interact with an advertisement demonstrates that the delivery of prerecorded videos is not central to the Game. The incidental delivery of advertising, at the request of the user, does not transform Zynga into a "video tape service provider." As a result, Garcia's VPPA claim fails for yet another reason.

4. Garcia Lacks Standing to Assert a VPPA Claim

Finally, even if the VPPA could apply here – it cannot – Garcia lacks standing to bring such a claim. The VPPA has a two-year statute of limitations. 18 U.S.C. §2710(c)(3). Garcia does not plead *when* he allegedly watched an ad on Toon Blast.[4] (CAC ¶ 101.) Garcia also does not make any argument that the limitation period should be tolled. As a result, he has failed to allege facts demonstrating the timeliness of his VPPA claim, which is grounds for dismissal. *See Brodsky v. Apple, Inc.*, 445 F. Supp.3d 110, 135 (N.D. Cal. 2020) (dismissing claim for failure to plead misconduct within limitations period) (citing cases).

Even if Garcia had pled a timely claim, he cannot represent a putative class of Zynga players other than those who played the same Game as Garcia. *See Afriyie v. NBCUniversal Media, LLC*, No. 23-CV-09433, at *9 (S.D.N.Y. Mar. 31, 2025) (a plaintiff cannot represent a putative class of users of an app that the plaintiff did not themselves use). As the court in *Afriyie* explained, "a plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interest of third parties." *Id.* at *10 (quoting *Warth v. Seldin,* 422 U.S. 490, 499 (1975)). Because the *Afriyie* plaintiff did not use certain apps published by the defendant, he could not represent a putative class of those app users. *Id.* at *15-18. Here, Garcia alleges that he played Toon Blast. (CAC ¶ 101.) Thus, he only has standing (if at all) to represent a class of Toon Blast players; not players of other Zynga games including Toy Blast.

---

[4] To the extent that Garcia played the Game since March 2025, his VPPA claim would also fail because he would have been required to provide consent for the sharing of any VPPA-covered information through the Game. (CAC ¶ 118.)



MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

## V. CONCLUSION

For the foregoing reasons, if Plaintiffs are not compelled to arbitrate or this case is not transferred to the United States District Court for the Sothern District of New York, then the Court should dismiss the Complaint with prejudice.

Dated: July 18, 2025

Respectfully submitted,

*/s/ William P. Donovan, Jr.*

William P. Donovan, Jr. (SBN 155881)
McDermott Will & Emery LLP
2049 Century Park East, Suite 3200
Los Angeles, CA 90067-3206
Tel: (310) 277-4111
Fax: (310) 277-4730
wdonovan@mwe.com

Andrew B. Kratenstein (*pro hac vice*)
Chris Combs (*pro hac vice*)
McDermott Will & Emery LLP
1 Vanderbilt Avenue
New York, NY 10017
Telephone: (212) 547-5400
Fax: (212) 547-5444
akratenstein@mwe.com
ccombs@mwe.com

Emilie E. O'Toole (*pro hac vice*)
McDermott Will & Emery LLP
444 West Lake Street
Suite 4000
Chicago, IL 60606
Telephone: (312) 372-2000
Fax: (312) 984-7700
eotoole@mwe.com

*Counsel for Defendant Zynga, Inc.*