William P. Donovan, Jr. (155881)
wdonovan@mwe.com
**MCDERMOTT WILL & SCHULTE LLP**
2049 Century Park East, Suite 3200
Los Angeles, CA 90067-3206
Telephone: +1 310 277 4110
Facsimile: +1 310 277 4730

Attorneys for Defendant Zynga Inc.

(*Additional Signatures Below*)

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO**

| | |
|---|---|
| CHERYLL DOUGHERTY, DELIA CAMARGO, and LAWRENCE GARCIA, individually, as private attorneys general, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ZYNGA INC.,<br><br>Defendant. | CASE NO. 3:25-cv-04051-SI<br><br>**DEFENDANT ZYNGA INC.'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION, OR ALTERNATIVELY TRANSFER VENUE AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[Filed concurrently with the Declaration of Andrew J. Ungberg and Exhibits thereto, the Declaration of Andrew B. Kratenstein and Exhibits thereto, and Proposed Order]<br><br>JUDGE: Hon. Susan Illston<br>DATE: December 19, 2025<br>TIME: 10:00 a.m.<br>COURTROOM: Courtroom 1 |

MCDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on December 19, 2025 at 10:00 a.m., or as soon thereafter as the matter may be heard before the Honorable Susan Illston of the United States District Court for the Northern District of California, in Courtroom 1, of the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, California, Defendant Zynga Inc. ("Zynga") will and hereby does move the Court for an order compelling arbitration of all causes of action in the First Amended Class Action Complaint filed on August 19, 2025 (the "Complaint" or "FAC") for relief asserted against Zynga by Plaintiffs based on the valid and binding arbitration clause in the Take-Two Interactive Software, Inc. ("Take-Two") Terms of Service and governed by the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.*, or alternatively, transferring all causes of action to the Southern District of New York, pursuant to 28 U.S.C. §§ 1404(a), 1406(a) and the valid forum selection clause in the Terms of Service.

By downloading and using the Toon Blast and Toy Blast apps (the "Games"), Plaintiffs Cheryll Dougherty, Delia Camargo, and Lawrence Garcia (collectively, "Plaintiffs") were on notice of and agreed to the 2024 or 2025 Take-Two Terms of Service. The Take-Two Terms of Service contain a valid and enforceable arbitration clause that requires arbitration of this dispute. Accordingly, Plaintiffs' claims should be compelled to arbitration. Any questions of arbitrability have been delegated to the arbitrator, making the existence of a binding arbitration agreement the only issue for this Court or another court to decide.

The Take-Two Terms of Service also contain a valid forum selection clause that requires all players to bring any disputes in federal or state court in New York County, New York. Plaintiffs' claims should therefore be transferred to the Southern District of New York if the Court does not compel Plaintiffs to arbitration.

Zynga bases its Motion on this Notice, the accompanying Memorandum of Points and Authorities, all pleadings and papers filed in this action, the argument of counsel, and any other matters that may come before the Court.

//

//

Dated: September 26, 2025

**MCDERMOTT WILL & EMERY LLP**

By: */s/ William P. Donovan, Jr.*
William P. Donovan, Jr.

2049 Century Park East, Suite 3200
Los Angeles, CA 90067-3206
Telephone: +1 310 277 4110
Fax: +1 310 277 4730
wdonovan@mwe.com

Andrew Kratenstein
Chris Combs
One Vanderbilt Avenue
New York, NY 10017-3852
Telephone: +1 212 547 5400
Fax: +1 212 547 5444
akratenstein@mwe.com
ccombs@mwe.com

Emilie E. O’Toole
444 West Lake Street, Suite 4000
Chicago, IL 60606-0029
Telephone: +1 312 372 2000
Fax: +1 312 984 7700
eotoole@mwe.com

*Attorneys for Defendant Zynga Inc.*

MCDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

# TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. BACKGROUND ..... 2

A. The Parties ..... 2

B. Plaintiffs' Allegations ..... 2

C. The Games ..... 3

D. The Applicable Terms of Service ..... 4

E. Plaintiffs' Notice and Acceptance of the Take-Two Terms ..... 8

F. The Previous Arbitrations Against Take-Two ..... 9

III. THE FEDERAL ARBITRATION ACT'S STRONG POLICY FAVORING ARBITRATION APPLIES ..... 11

IV. ARGUMENT ..... 12

A. Plaintiffs Are Bound by the Take-Two Terms ..... 12

1. Plaintiffs Were on Notice of the Take-Two Terms ..... 12

2. Plaintiffs Assented to the Take-Two Terms ..... 14

3. Camargo and Garcia Are Still Bound to the 2024 Take-Two Terms' Arbitration Agreement ..... 15

4. Dougherty's Opt Out of the 2025 Take-Two Terms' Arbitration Agreement Was Invalid ..... 16

B. Plaintiffs Should Be Compelled to Arbitrate ..... 16

1. The Take-Two Terms Contain a Valid Arbitration Agreement ..... 17

2. The Take-Two Terms Contain a Valid Delegation Clause ..... 17

3. Plaintiffs Must Arbitrate Their Claims on an Individual Basis ..... 18

C. Alternatively, This Case Should Be Transferred to the Southern District of New York ..... 21

V. CONCLUSION ..... 22

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ajzenman v. Office of the Comm'r of Baseball*,
CV 20-3643 DSF (JEMx), 2020 WL 6037140 (C.D. Cal. Oct. 6, 2020) ....13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....14

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011)....11

*Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*,
571 U.S. 49 (2013)....21

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022) ....11, 12, 13

*Bielski v. Coinbase, Inc.*,
87 F.4th 1003 (9th Cir. 2023) ....17

*Cal. Crane Sch., Inc. v. Google LLC*,
722 F. Supp. 3d 1026 (N.D. Cal. 2024) ....15

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
207 F.3d 1126 (9th Cir. 2000) ....11

*Edmundson v. Klarna, Inc.*,
85 F.4th 695 (2d Cir. 2023) ....11, 12, 13

*Epic Sys. Corp. v. Lewis*,
584 U.S. 497 (2018)....18

*Eshagh v. Terminix Int'l Co.*,
588 Fed. Appx. 703 (9th Cir. 2014)....18

*Feld v. Postmates, Inc.*,
442 F. Supp. 3d 825 (S.D.N.Y. 2020)....14

*Fireman's Fund Ins. Co. v. M.V. DSR Atl.*,
131 F.3d 1336 (9th Cir. 1997), *as amended* (Mar. 10, 1998) ....21

*Ghazizadeh v. Coursera, Inc.*,
737 F. Supp. 3d 911 (N.D. Cal. 2024)....14

*Green Tree Fin. Corp.-Ala. v. Randolph*,
531 U.S. 79 (2000)....11

*Happy Puppy L.A., Inc. v. Bank of Am., N.A.*,
No. 2:23-cv-01354-JLS-PD, 2023 WL 6787778 (C.D. Cal. Sept. 27, 2023) .......................... 17

*Hastings v. Nifty Gateway, LLC*,
724 F. Supp. 3d 241 (S.D.N.Y. 2024) .......................... 12

*Hatfield v. Halifax PLC*,
564 F.3d 1177 (9th Cir. 2009) .......................... 21

*Heckman v. Live Nation Entertainment, Inc.*,
120 F.4th 670 (9th Cir. 2024) .......................... 19, 20

*Holley-Gallegly v. TA Operating, LLC*,
74 F.4th 997 (9th Cir. 2023) .......................... 17

*Keebaugh v. Warner Bros. Ent., Inc.*,
100 F.4th 1005 (9th Cir. 2024) .......................... 12, 13, 16

*Kelly-Starkebaum v. Papaya Gaming Ltd.*,
No. 24-cv-2310 (DLC), 2024 WL 5135799 (S.D.N.Y. Dec. 17, 2024) .......................... 14

*Knutson v. Sirius XM Radio Inc.*,
771 F.3d 559 (9th Cir. 2014) .......................... 11

*KPMG LLP v. Cocchi*,
565 U.S. 18 (2011) .......................... 11

*Laatz v. Zazzle, Inc.*,
No. 22-cv-04844-BLF, 2024 WL 377970 (N.D. Cal. Jan. 9, 2024) .......................... 14

*Lamps Plus, Inc. v. Varela*,
587 U.S. 176 (2019) .......................... 11

*Lee v. Ticketmaster L.L.C.*,
817 F. App'x 393 (9th Cir. 2020) .......................... 16

*Marino v. CVS Health*,
698 F. Supp. 3d 689 (S.D.N.Y. 2023) .......................... 16

*Marselian v. Wells Fargo & Co.*,
514 F. Supp. 3d 1166 (N.D. Cal. 2021) .......................... 16

*Patrick v. Running Warehouse, LLC*,
93 F.4th 468 (9th Cir. 2024) .......................... 14

*Peter v. DoorDash, Inc.*,
445 F. Supp. 3d 580 (N.D. Cal. 2020) .......................... 13

*Posephny v. AMN Healthcare Inc.*,
No. 18-cv-06284-KAW, 2019 WL 452036 (N.D. Cal. Feb. 5, 2019) .......................... 15

*Rangel v. Lowe's Home Centers, LLC.*, No. 5:21-cv-00422-JWH-SPx, 2021 WL 4839575 (C.D. Cal. June 24, 2021) ....................... 16

*Sanfilippo v. Match Grp. LLC*, No. 20-55819, 2021 WL 4440337 (9th Cir. Sept. 28, 2021) ....................... 18

*Sarhadi v. Pear Health Labs, Inc.*, No. 24-cv-07921-TLT, 2025 WL 1350033 (N.D. Cal. Apr. 18, 2025) ....................... 12, 14

*Stolt-Nielson S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662 (2010) ....................... 18

*Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904 (N.D. Cal. 2011) ....................... 14

*Tanner v. Tax Servs. of Am., Inc.*, No. 25-cv-01940-DMR, 2025 WL 1580737 (N.D. Cal. June 4, 2025) ....................... 17

**Statutes**

9 U.S.C. § 2 ....................... 10, 11

28 U.S.C. § 1404(a) ....................... 21

28 U.S.C. § 1406(a) ....................... 21

MCDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This case does not belong in this Court. Plaintiffs are allegedly users of the mobile games Toon Blast and/or Toy Blast (the "Games") published by Defendant Zynga Inc. ("Zynga"). Each Plaintiff knowingly agreed to Terms of Service issued by Zynga's parent company, Take-Two Interactive Software, Inc. ("Take-Two"). Take-Two's Terms of Service govern the Games and include a clear, enforceable arbitration agreement and a mandatory New York forum selection clause, which is where Take-Two is headquartered.

Plaintiffs allege they made in-Game purchases on one or both Games. To make these purchases, Plaintiffs were required to accept the Terms of Service by clicking "Accept" when prompted by conspicuous, straightforward notices upon launching the Games. These disclosures were not passive or obscure; they were unavoidable gateways to gameplay, supported by hyperlinks to the applicable Take-Two Terms of Service in blue, underlined text, and a bolded warning at the top of the Take-Two Terms of Service highlighting that arbitration was mandatory. Thus, Plaintiffs are contractually bound to resolve their claims against Zynga through individual arbitration. Further, Plaintiffs' counsel's previous attempts to arbitrate similar claims were initially determined by JAMS to be governed under their mass arbitration procedures. After receiving that ruling from JAMS, Plaintiffs' counsel dismissed the arbitrations and filed this case.

Such forum-shopping is impermissible under the Federal Arbitration Act and binding precedent. Plaintiffs' claims all "arise from or relate to" the Games and related in-Game functions, which are all services governed by the Take-Two Terms. Moreover, the Take-Two Terms include a valid delegation clause – assigning questions of arbitrability to the arbitrator, not this Court. Plaintiffs' attempt to sidestep these provisions ignores controlling law and seeks to rewrite the contract they voluntarily accepted.

Even if the Court were to find otherwise – which it should not – the Take-Two Terms require that any litigation be brought in New York state or federal court. Plaintiffs' claims therefore have no rightful place in this District. The forum selection clause is unambiguous and enforceable under controlling Supreme Court authority.

Zynga respectfully requests that this Court enforce the parties' agreement – as federal law and precedent require – and compel Plaintiffs' claims to arbitration. Alternatively, this action should be transferred to the Southern District of New York, where the parties agreed all disputes not subject to arbitration would be heard, for resolution.

## II. BACKGROUND

### A. The Parties

Zynga is a video game developer and publisher, founded in 2007 with its headquarters in San Mateo, California. (FAC ¶¶ 17, 21.) As of May 2022, Zynga is a wholly-owned subsidiary of Take-Two, a video game publisher. (*Id.* ¶ 2.) Zynga is the publisher of the Games. (*Id.*)

Plaintiffs Cheryll Dougherty ("Dougherty") and Delia Camargo ("Camargo") allege they are residents of California. (*Id.* ¶¶ 12-13.) Plaintiff Dougherty alleges she currently plays Toon Blast and previously played Toy Blast. (*Id.* ¶ 12.) She further alleges that she "recalls watching video advertisements in Toon Blast within the past two years." (*Id.*) Plaintiff Camargo alleges she plays Toon Blast "about three times a month" and has played the Game for about eight years. (*Id.* ¶ 13.) Plaintiff Lawrence Garcia ("Garcia") alleges that he was a resident of California until August 2024. (*Id.* ¶ 14.) Garcia alleges that, while he was a resident of California, he made in-app purchases and watched pre-recorded video content in Toon Blast. (*Id.* ¶¶ 14-15.)

### B. Plaintiffs' Allegations

Plaintiffs allege that the Games are marketed as free, but pressure players to make in-Game purchases of Coins, Boosters, and Bundles to advance through the Games' levels. (FAC ¶ 3.) The alleged pressure includes advertised discounts on in-app purchases and purportedly "fake" countdown timers for the sales (*Id.* ¶¶ 5-6). Plaintiffs also allege that the Games are addictive and that these in-Game purchases perpetuate the Games' alleged addictive nature. (*Id.* ¶ 7.)

On behalf of themselves and a purported class of individual players of the Games, Plaintiffs allege six counts against Zynga for: (1) violations of the Unfair Competition Law ("UCL"); (2) violations of the False Advertising Law ("FAL"); (3) violations of the Consumer Legal Remedies Act ("CLRA"); (4) fraud; (5) unjust enrichment; and (6) violations of the federal Video Privacy Protection Act ("VPPA") (brought by Plaintiffs Dougherty and Garcia only). (*Id.* ¶¶ 179-245.)

Plaintiffs seek compensatory and actual damages, statutory damages, punitive damages, civil penalties, injunctive, declaratory, and equitable relief, costs, attorneys' fees, and interest. (*Id.* at 50-51.)

**C. The Games**

The Games were created and released by Peak Games ("Peak") in 2015 and 2017, respectively. (Declaration of Andrew J. Ungberg, dated September 26, 2025 ("Ungberg Decl.") ¶ 5.) In July 2020, Zynga acquired Peak. (*Id.*) Zynga was later acquired by Take-Two in May 2022. (*Id.*)

Both Games are puzzle games played primarily on mobile devices. (*Id.* ¶ 6.) Players progress through each level by "blasting" adjacent matching tiles off the board over a set number of turns. (*Id.*) Each level has a designated goal requiring players to clear the puzzle over a set number of moves. (*Id.* ¶ 7.) Players may run out of lives if they fail multiple levels in a given time frame. (*Id.*)

To aid their progress, both Games have an in-app shop (the "Shop") where players purchase Coins. (*Id.* ¶ 8.) The Coins can purchase additional lives, more moves to complete a level, or special items ("Boosters"), such as cartoon bombs or rockets that players can use to blast through entire rows and columns or other obstacles. (*Id.*) Players can also purchase packs that include various combinations of Coins, Boosters, and other bonuses, such as unlimited lives for a set period ("Bundles") that may be offered at a discounted price. (*Id.*)

Since at least 2018, both Games have required all players to accept the operative Terms of Service at the time they are loaded and before they can be played or in-app purchases can be made. (*Id.* ¶ 15.) After downloading the Games from the player's chosen app store, a notice appears the first time a player opens the Games, informing the player that by clicking "Accept" they are agreeing to the applicable Terms of Service. (*Id.* ¶ 16.) The notices feature hyperlinks to the applicable Terms of Service that appear in blue, underlined font that stands out from the plain background. (*Id.*)

These notices have appeared in substantially the same form since they were added to the Games in 2018 and have included hyperlinks to the operative Terms of Service. (*Id.* ¶ 17.) When the Terms of Service are updated, a pop-up notice appears when a player opens the Games. (*Id.* ¶ 19.) The notice informs players that the Terms of Service have been updated, and the player must click

"Accept" before proceeding to play the Games. (*Id.* ¶¶ 15-19.) No player can play a Game unless they select the "Accept" button. (*Id.*)

**D. The Applicable Terms of Service**

After Peak was acquired by Zynga in July 2020, the Games continued using the Peak Terms of Service that went into effect in 2018 (the "Peak Terms"). (Ungberg Decl. ¶ 21.) The Peak Terms are governed by Turkish law and select Turkish courts as the applicable forum. (*Id.* ¶ 22.) The Peak Terms also included a class action waiver and a severability clause. (*Id.* ¶¶ 22-23.) Camargo and Garcia both accepted the Peak Terms. (*Id.* ¶¶ 62, 66.)

The Peak Terms remained in effect for both Games until February 28, 2024, when the 2024 Take-Two Terms of Service (the "2024 Take-Two Terms") were implemented across Take-Two companies' games, including the Games. (*Id.* ¶ 25.) To notify players of the upcoming change from the Peak Terms to the 2024 Take-Two Terms, a new pop-up notice appeared when a player opened either Game beginning on or around January 25, 2024. (*Id.* ¶ 28.) The notice informed players that they would have to accept the new terms to continue playing the Game after February 28, 2024. (*Id.*) On or after February 28, 2024, that new pop-up notice began appearing for all players the first time they played the game after that date:









MCDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

(*Id.* ¶ 29.) The 2024 Take-Two Terms were linked in the pop-up notices at the blue, underlined text. (*Id.*)

On February 28, 2025, Take-Two implemented new Terms of Service (the "2025 Take-Two Terms") across its full line of products, including the Games. (*Id.* ¶ 38.) The 2025 Take-Two Terms were introduced in the Games on March 28, 2025. (*Id.* ¶ 39.) That day, a new pop-up notice appeared to provide notice of the 2025 Take-Two Terms and required players to select "ACCEPT" before continuing into Toon Blast or Toy Blast. (*Id.* ¶ 40.)







(*Id.*)



McDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

The 2024 and 2025 Take-Two Terms contain several relevant provisions. First, both versions of the Take-Two Terms state that they apply to Take-Two "games, apps, products, websites, and other services (the 'Services') as well as Virtual Items[1] . . . and your Account[2]":

> Take-Two Interactive Software, Inc. is a global company headquartered at 110 W. 44th Street, New York, NY 10036, United States of America whose group includes all Take-Two entities and labels (collectively "**Take-Two**," "**we**," "**us**," and "**our**"). These Terms of Service ("**Agreement**") cover the terms and conditions under which we offer you access to use our games, apps, products, websites, and other services (the "**Services**") as well as Virtual Items (as defined in Section 4 below) and your Account (as explained in Section 1.2 below). This Agreement is a legal contract between you and Take-Two. By accessing our Services, you are agreeing to be bound by the terms of this Agreement.

(*Id.* Ex. B at 1, Ex. C at 1.) The hyperlink that appears in blue, underlined font above takes users to a list of all entities included in "Take-Two" as defined in the Take-Two Terms. (*Id.*) That list includes Zynga. (*Id.*)

The 2024 and 2025 Take-Two Terms each contain an arbitration provision. The arbitration provision in both versions is substantially similar and requires individual arbitration of "any dispute, claim, or controversy arising from or related to the Services." (*Id.* Ex. B § 15.5(1), Ex. C§ 17.5(1).) The arbitration provision in the 2024 Take-Two Terms states:

> **(1) Binding Individual Arbitration.** You and Take-Two agree that, if not resolved through the informal negotiation process described below, any Disputes between us shall be exclusively resolved by individual, binding arbitration under this Arbitration Agreement. Subject to the exclusions in Section 15.5(10), a "**Dispute**" means any dispute, claim, or controversy arising from or related to the Services, including those related to the formation, breach, termination, enforcement, scope, validity, or applicability of the Agreement or the Arbitration Agreement, or your rights under those agreements. All Disputes are subject to the Arbitration

---

[1] A "Virtual Item" is "any virtual currency, goods, items, boosts, or effects such as, but not limited to, coins, points, gems, tokens, weapons, vehicles, cards, skins, power-ups, apparel, equipment, trophies, rewards, badges, or any other in-game virtual asset made available, purchased from a Digital Storefront, earned, or otherwise acquired through the Services." (Ungberg Decl. Ex. B § 3, Ex. C § 4.)

[2] "Some elements of the Services may require that you create an account, whereas for other Services, an account may be automatically created for you when you access the Services for the first time (each an 'Account')." (Ungberg Decl. Ex. B § 1.3, Ex. C § 1.2.)

McDermott Will & Schulte LLP
Attorneys At Law
Los Angeles

MCDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

> Agreement regardless of whether they arose before or after you accepted the Agreement.

(*Id.* Ex. B § 15.5(1).) The 2025 Take-Two Terms contain a substantially similar arbitration provision, which states:

> (1) **Agreement to Binding Individual Arbitration.** Subject to the claims excluded in Section 17.5(9), a "**Dispute**" means any dispute, claim, or controversy arising from or related to the Services, including related to the formation, breach, termination, enforcement, scope, validity, or applicability of the Agreement or the Arbitration Agreement, or your rights under those agreements. If you and Take-Two cannot resolve your Dispute through the informal negotiation process in Section 17.5(4), we agree that any Disputes between us shall be exclusively resolved by individual binding arbitration under this Arbitration Agreement. All Disputes are subject to the terms in this Arbitration Agreement, the U.S. Federal Arbitration Act, and federal arbitration law. This Arbitration Agreement applies to all Disputes between the parties whether the Dispute arose before or after the parties accepted this Agreement.

(*Id.* Ex. C § 17.5(1).) In addition, at the beginning of both versions of the Take-Two Terms, a notice warns users that the Take-Two Terms contain a mandatory arbitration provision. (*Id.* Ex. B at 1, Ex. C at 1.) It also notifies users of their ability to opt out of the arbitration agreement. (*Id.*)

Both the 2024 and 2025 Take-Two Terms contain a valid delegation clause. The 2024 Take-Two Terms specifically grant the arbitrator:

> [E]xclusive authority to resolve any Disputes, including those related to the interpretation, applicability, enforceability, or formation of this Arbitration Agreement, and any claim that all or part of the Arbitration Agreement is void or voidable. The arbitrator shall also have authority to determine all threshold arbitrability issues, including related to whether the Agreement or the Arbitration Agreement are unconscionable or illusory; whether the Arbitration Agreement has been disaffirmed under applicable law; and any defense to arbitration including waiver, delay, laches, or estoppel.

(Ungberg Decl. Ex. B § 15.5(1).)

Both Take-Two Terms also include a class action waiver, prohibiting users from litigating their claims on a class basis and requiring individual arbitration. (*Id.* Ex. B § 15.5(2), Ex. C § 17.5(2).) Both Terms require the parties to arbitrate individually before JAMS ADR ("<u>JAMS</u>") under the JAMS' Streamlined Arbitration Rules and Procedures (the "<u>JAMS Streamlined Rules</u>"). (*Id.* Ex. B §§ 15.5(1)-15.5(2), Ex. C §§ 17.5(1)-17.5(2).) For any mass arbitration, the 2025 Terms apply the JAMS Mass Arbitration Procedures (the "<u>JAMS MAP</u>") while the 2024 Terms apply the

New Era Rules in effect at the time the mass arbitration is filed. (*Id.* ¶ 42.) The 2025 Take-Two Terms also clarify what user content and conduct is acceptable in Take-Two's products and updates to Take-Two's policies concerning moderating content created by users using Take-Two's products or services that may contain harmful or illegal content, and users' appeal process. (*Id.* ¶ 43.)

The 2024 and 2025 Take-Two Terms also contain a nearly identical New York choice of law and forum selection clause. It requires any disputes to be litigated in New York state or federal court in New York County under New York law. (*Id.* Ex. B § 15.1, Ex. C § 17.1.)

Finally, both the 2024 and 2025 Take-Two Terms contain nearly identical opt-out provisions, allowing a player to opt out of the Terms within 30 days of accepting them if proper notice is given. (*Id.* ¶¶ 44-47.) In addition, the 2025 Take-Two Terms includes language that clarifies the scope of a player's opt out and provides that any player who opts out of the 2025 Arbitration Agreement must still arbitrate under the 2024 Terms of Services if the player accepted them:

> For clarity, if you accepted a previous version of the Arbitration Agreement and did not Opt Out, your Opt-Out Notice will be limited to the materially updated terms of this version. In this case, You and Take-Two, will still arbitrate any Dispute under the terms of the Arbitration Agreement as of the date you first agreed to it or the effective date of the last version of the Arbitration Agreement.

(*Id.* ¶ 47.) Thus, any Plaintiff who validly opted out of the 2025 Take-Two Terms would still be bound by the 2024 Take-Two Terms to which they previously agreed. (*Id.*)

**E. Plaintiffs' Notice and Acceptance of the Take-Two Terms**

When a player downloads either of the Games and accepts the operative Terms of Service, he or she is assigned a unique user identification string of numbers and/or letters in the Game (the "User ID"). (Ungberg Decl. ¶ 49.) The User ID is the primary way for Take-Two to track a player's actions in the Games, including acceptance of the applicable Take-Two Terms. (*Id.* ¶ 50.) By downloading and using the Toon Blast and/or Toy Blast apps, each Plaintiff was notified of and accepted the 2024 and 2025 Take-Two Terms. Specifically:

Dougherty downloaded Toon Blast on June 20, 2024, and accepted the 2024 Take-Two Terms at the same time. (*Id.* ¶ 58.) On April 21, 2025, Dougherty also accepted the 2025 Take-Two Terms using Toon Blast. (*Id.*)

MCDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

Camargo downloaded Toy Blast on July 18, 2016. (*Id.* ¶ 62.) She then accepted the Peak Terms on at least June 10, 2019. (*Id.*) Camargo accepted the 2024 Take-Two Terms on April 23, 2024, and the 2025 Take-Two Terms on April 18, 2025. (*Id.*)

Garcia downloaded Toon Blast on September 14, 2018, and accepted the Peak terms that same day. (*Id.* ¶ 66.) Garcia accepted the 2024 Take-Two Terms on November 21, 2024, and accepted the 2025 Take-Two Terms on April 17, 2025. (*Id.*)

Plaintiffs' counsel sent Take-Two 624 notices opting out of the arbitration clause of the 2025 Take-Two Terms. (*Id.* ¶ 53.) Camargo and Garcia each sent opt-out notices dated April 25, 2025. (*Id.* ¶¶ 60, 64.) Garcia sent a previous opt-out notice dated April 15, 2025. (*Id.* ¶ 66.) Dougherty's opt-out notice was dated June 17, 2025. (*Id.* ¶ 56.) No Plaintiff opted out of the arbitration clause of the 2024 Take-Two Terms. (*Id.* ¶¶ 56-67.)

McDermott Will & Schulte LLP
Attorneys At Law
Los Angeles

**F. The Previous Arbitrations Against Take-Two**

On July 30, 2024, Take-Two received a letter from Janove PLLC and Hartley Law PPLC (the "Demand Letter"). (Declaration of Andrew B. Kratenstein ("Kratenstein Decl."), September 26, 2025, ¶ 3.) Purportedly sent on behalf of 2,668 current or former players of the Games, the Demand Letter alleged that the Games falsely advertised "sales" or "discounts" for its in-app purchases and were instead "false incentives to lure customers into making more purchases and spending more money." (*Id.* ¶ 4.) On August 27, 2024, on behalf of Take-Two and the arbitration Claimants, their respective counsel executed a Tolling Agreement (the "Tolling Agreement"). (*Id.* ¶ 6.) Throughout the rest of 2024, Take-Two and Claimants engaged in further information exchange related to Claimants' claims. (*Id.* ¶ 7.) On December 17, 2024, the Parties engaged in confidential in-person mediation through JAMS but were unable to resolve their dispute. (*Id.* ¶ 8.) After the mediation, the parties continued their confidential settlement discussions and extended the Tolling Agreement, which ultimately expired without resolution. (*Id.* ¶¶ 9-10.)

On March 24, 2025, Claimants' counsel filed 746 individual Demands for Arbitration (the "Demands") under the JAMS Streamlined Rules.[3] (*Id.* ¶ 11.) The Demands sought to arbitrate each Claimant's claims under the 2019 Take-Two End User License Agreement (the "2019 EULA"), which called for individual arbitrations under the JAMS Streamlined Rules. (*Id.* ¶ 13.) Each Claimant alleged that, under the 2019 EULA, Take-Two had agreed to pay all arbitration costs above that which Claimant would pay to participate in litigation in court, and that Take-Two was required to pay all JAMS fees and costs in excess of $1. (*Id.*) The filing fees under the JAMS Streamlined Rules would have resulted in Take-Two paying approximately $1.5 million in individual arbitration fees alone, exclusive of other arbitration fees and costs. (*Id.*)

In response, Take-Two explained (among other things) that Claimants had not brought their Demands in the proper arbitral forum and that the 2019 EULA was never the Games' operative Terms of Service. (*Id.* ¶ 14.) After Take-Two acquired Zynga, the Games continued to require players to accept the Peak Terms from June 2018 until February 2024. (*Id.* Ungberg Decl. ¶ 25.) Depending on when each Claimant last played the Games, the Peak Terms, the 2024 Take-Two Terms, or the 2025 Take-Two Terms applied. ( Kratenstein Decl. ¶ 14) As discussed above, the 2024 and 2025 Take-Two Terms both designate the JAMS Streamlined Rules for *individual* arbitrations, but the 2025 Take-Two Terms define *mass* arbitrations as 25 or more disputes that share common issues and legal representatives and require Claimants to proceed under the JAMS MAP while the 2024 Terms require that mass arbitrations proceed under the New Era Rules. (*Id.* ¶¶ 15-16.)

On May 6, 2025, JAMS sent the Parties a Notice, which stated that JAMS would designate a Process Administrator to proceed under the JAMS MAP, upon receipt of the JAMS MAP filing fee. (*Id.* ¶ 18.) The notice added that "[t]he parties may raise preliminary and procedural matters, including whether the JAMS MAP apply and which Demands if any should be included as part of a Mass Arbitration under the JAMS MAP, with the Process Administrator." (*Id.* ¶ 19.) No longer able

---

[3] Plaintiff Garcia was one of the 746 individual claimants who previously filed an arbitration demand against Take-Two. (FAC ¶ 145.) Neither Dougherty nor Camargo filed an arbitration demand against Take-Two. And no named Plaintiff filed an arbitration demand against Zynga.



MCDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

to use the threat of having to pay exorbitant arbitration fees to pressure Take-Two and Zynga into a settlement, Claimants' counsel withdrew its 746 pending claims with JAMS and filed the Complaint here the same day. (*Id.* ¶ 20.)

## III. THE FEDERAL ARBITRATION ACT'S STRONG POLICY FAVORING ARBITRATION APPLIES

The Terms of Service are subject to the Federal Arbitration Act, 9 U.S.C. § 2 (the "FAA"), as the Terms are written contracts "evidencing a transaction involving commerce" and both versions incorporate the FAA. (Ungberg Decl. Ex. B § 15.5(4), Ex. C § 17.5(1).) The FAA was enacted by Congress to overcome "widespread judicial hostility to arbitration agreements," and to ensure that courts enforce valid agreements to arbitrate. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339, 344 (2011) ("The overarching purpose of the FAA . . . is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings."); *KPMG LLP v. Cocchi*, 565 U.S. 18, 21 (2011). Any arbitration agreement within the scope of the FAA "shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2.

The party seeking to compel arbitration bears the burden of proving the existence of a valid agreement to arbitrate by a preponderance of the evidence. *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014). A court's role in resolving a motion to compel arbitration is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). Once an agreement to arbitrate has been established, "the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000). Given the strong policy favoring arbitration, "ambiguities about the scope of an arbitration agreement must be resolved in favor of arbitration." *Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 189 (2019). The Supreme Court also holds that class action waivers in arbitration agreements are valid and enforceable, and that a plaintiff cannot avoid arbitration based on the presence of a class action waiver. *Concepcion*, 563 U.S. at 351.

McDermott Will & Schulte LLP
Attorneys At Law
Los Angeles

McDermott Will & Schulte LLP
Attorneys At Law
Los Angeles

## IV. ARGUMENT

### A. Plaintiffs Are Bound by the Take-Two Terms

A user is bound to terms of an online contract "if (1) a reasonably prudent' person would be on *inquiry* notice of the terms and (2) the user unambiguously manifests assent through . . . conduct that a reasonable person would understand to constitute assent." *Edmundson v. Klarna, Inc.*, 85 F.4th 695, 703 (2d Cir. 2023) (internal citations omitted); *see also Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022) ("Thus, if a website offers contractual terms to those who use the site, and a user engages in conduct that manifests her acceptance of those terms, an enforceable agreement can be formed."). By downloading or accessing either Game via the apps on their mobile phones, Plaintiffs were on notice of and assented to the Terms of Service.

#### 1. Plaintiffs Were on Notice of the Take-Two Terms

For a reasonably prudent person to be on notice of an app's terms of use, the terms must be reasonably conspicuous. *Berman*, 30 F.4th at 856; *Edmundson*, 85 F.4th at 704 ("A reasonably prudent internet or smartphone user is on inquiry notice of contractual terms where the terms are presented in a clear and conspicuous way."). The court also considers the full context of the transaction at issue in determining whether notice is sufficient. *Keebaugh v. Warner Bros. Ent., Inc.*, 100 F.4th 1005, 1016-1017 (9th Cir. 2024). All three Plaintiffs were on notice of the applicable Take-Two Terms when they each played the Games and accepted those Terms.

Notices of the 2024 and 2025 Take-Two Terms were reasonably conspicuous to Plaintiffs. Notice is reasonably conspicuous where it is displayed in a reasonable font size and format and the hyperlink to the full terms is readily apparent. *Berman*, 30 F.4th at 856. Here, the notices of the 2024 and 2025 Take-Two Terms appeared on a white background in front of the more colorful game screen. (Ungberg Decl. ¶¶ 29, 40.) The font is in black, contrasting with the white background, with hyperlinks in blue, underlined font. (*Id.*) The notice language and hyperlinks are also close to the "Accept" button. (*Id.*)

Courts have found similar notices to be sufficiently conspicuous to put a website or app user on notice. *See Keebaugh*, 100 F.4th at 1020-21 (concluding notice that informed players of app-based game that selecting "Play" would bind them to terms of use was sufficiently conspicuous);

*Sarhadi v. Pear Health Labs, Inc.*, No. 24-cv-07921-TLT, 2025 WL 1350033, at *6-7 (N.D. Cal. Apr. 18, 2025) (finding notice was conspicuous where text appeared on white background and hyperlinks were blue, underlined text); *Hastings v. Nifty Gateway, LLC*, 724 F. Supp. 3d 241, 249 (S.D.N.Y. 2024) (notice was conspicuous where "'Terms and Conditions' is directly above the 'sign up' button, in blue, underlined, and links to [defendant's] terms of use"); *Peter v. DoorDash, Inc.*, 445 F. Supp. 3d 580, 586-87 (N.D. Cal. 2020) (finding sufficient notice where the text next to sign-up button contrasted with background, was plainly readable, and linked to the user agreement in blue text); *Ajzenman v. Office of the Comm'r of Baseball*, CV 20-3643 DSF (JEMx), 2020 WL 6037140, at *5-6 (C.D. Cal. Oct. 6, 2020) (concluding hyperlinks in blue in close proximity to applicable button provided sufficient notice).

McDermott Will & Schulte LLP
Attorneys At Law
Los Angeles

Beyond visual considerations, the context of Plaintiffs' transactions also supports a finding that notice was sufficiently conspicuous. The Ninth Circuit's decision in *Keebaugh* is instructive. There, the court overturned the district court's finding that plaintiffs were not on notice of the terms of use for an app-based game. 100 F.4th at 1020. The district court had concluded based on context of the transaction alone that the plaintiffs were not on notice. *Id.* at 1018-19. The Ninth Circuit disagreed, concluding that where a user has to download an app to play a game and is "made aware via the download screen on the various app marketplaces that [the game] contains in-app purchases, and the users would understand that their use of an app that allows for in-app purchases would be governed by some terms of use." *Id.* at 1020. The court added that "smartphone users need not establish an account with each individual app for the context to reflect an ongoing relationship." *Id.* Context, as well as the visual placement of the notice, confirmed the plaintiffs were on notice of the terms and were therefore bound to them. *Id.*

Similarly, here, Plaintiffs were not required to sign-up for accounts to play the Games, but they still were on notice of the Games' applicable Terms of Service. The context of the transactions at issue demonstrates a continuing relationship with Zynga, which would be governed by an agreement, much like the transactions in *Keebaugh*. Plaintiffs downloaded the app to play the Games and repeatedly played them. (Ungberg Decl. ¶¶ 58, 62, 66.) Plaintiffs themselves allege they made multiple in-app purchases. (FAC ¶¶ 14-15.) Thus, Plaintiffs were on notice of the Take-Two Terms.

2. Plaintiffs Assented to the Take-Two Terms

An unambiguous manifestation of assent is required to conclude that app users, like Plaintiffs, assented to the Take-Two Terms. *Edmundson*, 85 F.4th at 703; *Berman*, 30 F.4th at 856. Plaintiffs unambiguously assented to the 2024 Take-Two Terms by selecting the "Accept" button upon opening the Games after the Terms were updated. (Ungberg Decl. ¶¶ 15-18.) All three Plaintiffs likewise assented to the 2025 Take-Two Terms.[4] (*Id.* ¶¶ 58, 62, 66.) Because of the notice that selecting "Accept" would constitute acceptance of the Take-Two Terms, this manifestation was unambiguous.[5] (*Id.* ¶ 40.)

Courts find unambiguous assent where a user, like Plaintiffs, was on notice that their actions if they proceeded would result in an enforceable agreement. *See, e.g.*, *Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 477 (9th Cir. 2024) ("Arcilla manifested assent to the Terms by clicking the 'Place Order' button to complete his purchase"); *Sarhadi*, 2025 WL 1350033, at *7-8 (finding assent where plaintiff had to click button on app below notice that said "by joining" he agreed to the terms); *Ghazizadeh v. Coursera, Inc.*, 737 F. Supp. 3d 911, 930 (N.D. Cal. 2024) (finding assent to terms of use where users clicked "Sign Up" to continue with account); *Kelly-Starkebaum v. Papaya Gaming Ltd.*, No. 24-cv-2310 (DLC), 2024 WL 5135799, at *7 (S.D.N.Y. Dec. 17, 2024) (holding that a reasonable consumer is "clearly warned" of assent where notice says "By continuing" he is assenting

---

[4] Plaintiffs allege that Take Two "entrap[ped]" previous arbitration claimants, including Garcia, "by forcing notice and assent to" the 2025 Take-Two Terms by updating the terms during the pendency of the arbitration. (FAC ¶¶ 163-64.) But, as evidenced by Plaintiffs' own allegations, Plaintiffs were able to opt out of the 2025 Take-Two Terms by following their opt-out requirements. (*Id.* ¶ 165.) This fact negates any alleged "entrapment." Plaintiffs also contend that the 2025 Take-Two Terms were created "solely in reaction to the contemplated arbitrations and specifically to prevent the Arbitration Claimants from seeking redress in arbitration." (*Id.*) This assertion ignores that the 2025 Take-Two Terms contain significant changes to sections other than the Arbitration Agreement therein, including substantial updates to Take-Two's content moderation policies. (Ungberg Decl. ¶ 42.) The notion that Take-Two would make material changes to its terms of service across its entire universe of products and services solely in response to this lawsuit defies common sense. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (noting that a court should "draw on its judicial experience and common sense" when determining whether a plaintiff alleges a plausible claim for relief).

[5] Plaintiffs allege that "in the spring of 2025," the hyperlink to the Terms of Service that appeared in the pop-up on Toy Blast only "was broken." (FAC ¶ 144 n.28.) This allegation is irrelevant because no Plaintiff alleges they played Toy Blast in 2025, and Plaintiffs allege no issues with the link to the Terms of Service in any Toon Blast pop-ups in 2024 or 2025. (*Id.* ¶¶ 12-14.)

to the terms); *Laatz v. Zazzle, Inc.*, No. 22-cv-04844-BLF, 2024 WL 377970, at *7 (N.D. Cal. Jan. 9, 2024) (clicking "Create Account" in the process of registering to use a platform bound Defendants to the Terms of Service); *Feld v. Postmates, Inc.*, 442 F. Supp. 3d 825, 830-32 (S.D.N.Y. 2020) (holding that plaintiff manifested assent to Terms of Service by clicking "Sign Up" where the platform indicated by clicking sign up users are agreeing to such terms); *Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 912 (N.D. Cal. 2011) (finding plaintiff had opportunity to review terms of service in a hyperlink immediately under the "I accept" button, which she clicked, so she had notice and is subject to the arbitration agreement). Plaintiffs' affirmative conduct of pressing the "Accept" button when presented with a valid notice of the Take-Two Terms or updates to the Take-Two Terms constitutes a valid acceptance.

3. <u>Camargo and Garcia Are Still Bound to the 2024 Take-Two Terms' Arbitration Agreement</u>

Camargo and Garcia opted out of the arbitration agreement in the 2025 Take-Two Terms by sending opt out notices on April 25, 2025. (Ungberg Decl. ¶¶ 60, 64.) Based on the circumstances of the opt-out notices and the language in the 2025 Take-Two Terms, both Camargo and Garcia are still bound to the arbitration agreement in the 2024 Take-Two Terms. The opt-out provision in the 2025 Take-Two Terms requires a player to submit their opt-out notice within 30 days of accepting the terms. (*Id.* ¶ 59.) Both Camargo's and Garcia's opt-out notice appear to have been submitted timely within 30 days of each of their acceptances of the 2025 Terms on April 18, 2025, and April 17, 2025, respectively. (*Id.* ¶¶ 60, 64.)

As discussed above, the 2025 Take-Two terms state that if a player validly opts out of the of the arbitration agreement, "You and Take-Two, will still arbitrate any Dispute under the terms of the Arbitration Agreement as of the date you first agreed to it or the effective date of the last version of the Arbitration Agreement." (Ungberg Decl. ¶ 47.) Thus, the arbitration agreement in the 2024 Take-Two Terms applies to Camargo's and Garcia's claims given their valid assent to these terms. (*Id.* ¶¶ 63, 67.)

4. Dougherty's Opt Out of the 2025 Take-Two Terms' Arbitration Agreement Was Invalid

Plaintiff Dougherty sent an opt-out notice to Zynga, dated June 17, 2025 – more than 30 days after she validly accepted the 2025 Take-Two Terms on April 21, 2025. (Ungberg Decl. ¶ 59.) An opt-out notice is invalid if it is untimely under the agreement. *See Cal. Crane Sch., Inc. v. Google LLC*, 722 F. Supp. 3d 1026, 1035 (N.D. Cal. 2024) (finding plaintiffs were bound to an arbitration agreement where they failed to opt-out within the prescribed 30-day period set forth in the agreement); *Posephny v. AMN Healthcare Inc.*, No. 18-cv-06284-KAW, 2019 WL 452036, at *7 (N.D. Cal. Feb. 5, 2019) (concluding plaintiffs were bound to an arbitration agreement where they voluntarily failed to submit their opt-out notice until after the opt-out period had expired, even if the opt-out email address was potentially incorrect); *Rangel v. Lowe's Home Centers, LLC.*, No. 5:21-cv-00422-JWH-SPx, 2021 WL 4839575, at *2 (C.D. Cal. June 24, 2021) (concluding if an employee did not timely opt-out, then the employee continues to be bound to the arbitration terms); *Marino v. CVS Health*, 698 F. Supp. 3d, 689, 695 (S.D.N.Y. 2023) (finding plaintiff was bound to arbitration agreement where she signed the agreement and subsequently failed to opt-out within the required 30-day period).

Dougherty did not timely opt out of the arbitration agreement in the 2025 Take-Two Terms and is therefore bound by tit. Even if Dougherty's opt-out notice was valid – which it was not – Dougherty (like Camargo and Garcia) would be bound by the arbitration agreement in the 2024 Take-Two Terms to which she previously agreed. (Ungberg Decl. ¶ 59.)

**B. Plaintiffs Should Be Compelled to Arbitrate**

All Plaintiffs agreed to the arbitration agreements in the 2024 Take-Two Terms and Dougherty agreed to the 2025 Take-Two Terms by not opting out on time. Pursuant to those arbitration agreements, Plaintiffs must arbitrate their claims against Zynga. The Court need only conclude that a valid arbitration agreement exists here because the Take-Two Terms contain a valid delegation clause, requiring the arbitrator to decide any issues of scope or arbitrability. Even so, Plaintiffs' claims are well within the broad scope of the arbitration agreements.

1. The Take-Two Terms Contain a Valid Arbitration Agreement

Both the 2024 and 2025 Take-Two Terms include a valid arbitration agreement that requires Plaintiffs to arbitrate their claims against Zynga. Courts regularly compel internet user plaintiffs to arbitration where the website or app terms they agreed to include a valid arbitration provision. *See, e.g.*, *Lee v. Ticketmaster L.L.C.*, 817 F. App'x 393 (9th Cir. 2020), *Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005 (9th Cir. 2024), *Marselian v. Wells Fargo & Co.*, 514 F. Supp. 3d 1166 (N.D. Cal. 2021).

Here, the Take-Two Terms apply to Zynga as a wholly-owned subsidiary of Take-Two, which is plainly stated in both versions of the Take-Two Terms. (Ungberg Decl. ¶¶ 21-22, 25, 27, 38.) The arbitration provisions in the 2024 and 2025 Take-Two Terms are substantially similar. (*Id.*) In addition, a notice regarding the inclusion of an arbitration provision in the Terms appeared prominently at the beginning of both versions of the Take-Two Terms. (*Id.* Ex. B at 1, Ex. C at 1.) The arbitration provision in both the 2024 and 2025 Take-Two Terms requires Plaintiffs to arbitrate individually before JAMS under the JAMS Streamlined Arbitration Rules. (*Id.* Ex. B §§ 15.5(1)-15.5(2), Ex. C §§ 17.5(1)-17.5(2).) Because Plaintiffs validly assented to either the 2024 or 2025 Take-Two Terms, they are bound by the arbitration clauses therein and should be compelled to individual arbitrations before JAMS.

2. The Take-Two Terms Contain a Valid Delegation Clause

Both the 2024 and 2025 Take-Two Terms contain a valid delegation clause that grants the arbitrator "exclusive authority to resolve any Disputes, including those related to the interpretation, applicability, enforceability, or formation of this Arbitration Agreement." (Ungberg Decl. Ex. B § 15.5(1).) "Delegation provisions further limit federal court review by assigning these gateway questions to an arbitrator." *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1009 (9th Cir. 2023). Such delegation clauses are regularly found to be valid and enforceable. *Id.* at 1013-15 (finding delegation provision in User Agreement was not unconscionable and reversing denial of motion to compel arbitration on that basis); *Holley-Gallegly v. TA Operating, LLC*, 74 F.4th 997 (9th Cir. 2023) (vacating denial of motion to compel arbitration based on unconscionability of delegation clause); *Tanner v. Tax Servs. of Am., Inc.*, No. 25-cv-01940-DMR, 2025 WL 1580737,

McDermott Will & Schulte LLP
Attorneys At Law
Los Angeles

McDermott Will & Schulte LLP
Attorneys At Law
Los Angeles

at *4-6 (N.D. Cal. June 4, 2025) (finding delegation clause valid because it was "clear and unmistakable" and was not unconscionable). Because the Take-Two Terms contain a delegation clause, the Court must defer questions of arbitrability to the arbitrator. *See Happy Puppy L.A., Inc. v. Bank of Am., N.A.*, No. 2:23-cv-01354-JLS-PD, 2023 WL 6787778 (C.D. Cal. Sept. 27, 2023).

Without waiver of Zynga's rights to have the arbitrator determine the scope of the arbitration clause, all of Plaintiffs' causes of action are plainly within the scope of the arbitration agreement. The Take-Two Terms define a "Dispute" that must be arbitrated as "any dispute, claim, or controversy arising from or related to the Services, including those related to the formation, breach, termination, enforcement, scope, validity, or applicability of the Agreement or the Arbitration Agreement, or your rights under those agreements." (Ungberg Decl. Ex. B § 15.5(1), Ex. C § 17.5(1).) This broad language encompasses Plaintiffs' claims of violations of California's consumer protection laws, as well as their common law and federal statutory claims. The language is likewise broad enough to encompass all claims that accrued before Plaintiffs agreed to the terms. *See Sanfilippo v. Match Grp. LLC*, No. 20-55819, 2021 WL 4440337, at *1-3 (9th Cir. Sept. 28, 2021) (holding that arbitration agreement applying to "all claims or controversies arising out of or in connection with" appellant's employment with appellee included "claims that had accrued prior to the effective date of the arbitration agreement"). All these claims arise from Plaintiffs' use of the Games and the purported in-app purchases and videos they allegedly saw. Thus, all these claims must be arbitrated.

3. <u>Plaintiffs Must Arbitrate Their Claims on an Individual Basis</u>

The arbitration agreements in the 2024 and 2025 Take-Two Terms include a class action waiver that prohibits Plaintiffs from arbitrating their claims on a class-wide basis. The Supreme Court has held that "a party may not be compelled . . . to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so." *Stolt-Nielson S.A. v. AnimalFeeds Int'l Corp.,* 559 U.S. 662, 684 (2010); *see also Epic Sys. Corp. v. Lewis,* 584 U.S. 497, 509 (2018) (enforcing class action waiver because "courts may not allow a contract defense to reshape traditional individualized arbitration by mandating class wide arbitration procedures without the parties' consent"); *Eshagh v. Terminix Int'l Co.,* 588 Fed. Appx. 703, 704

(9th Cir. 2014). Because Plaintiffs agreed to and are bound by either the 2024 or 2025 Take-Two Terms and did not opt out of at least one of the arbitration agreements contained therein, the class action waiver applies and prohibits them from litigating their claims as a class action in any forum. Thus, each Plaintiff is required to arbitrate their claims on an individual basis before JAMS, under both the 2024 and 2025 Take-Two Terms. (Ungberg Decl. ¶¶ 33, 41, 48.)

This Court also need not decide how a hypothetical mass arbitration would proceed. Rather, this Court need only determine whether an arbitration agreement exists, which Zynga has plainly established as to all three Plaintiffs. If a mass arbitration[6] were to be brought after Plaintiffs are compelled to arbitrate, Plaintiffs would be required under either the 2024 or 2025 Take-Two Terms to abide by the agreed-upon mass arbitration procedures.[7] Indeed, when Plaintiffs' counsel previously filed hundreds of arbitration claims, JAMS applied the JAMS MAP. (Kratenstein Decl. ¶¶ 11-12, 18.) Plaintiffs' counsel then declined to abide by JAMS' decision, abandoned arbitration, and filed this lawsuit. (*Id.* ¶ 20.)

Plaintiffs also preemptively allege that the New Era Mass Arbitration Procedure is "unconscionable" under the Ninth Circuit's ruling in *Heckman v. Live Nation Entertainment, Inc.*, 120 F.4th 670 (9th Cir. 2024). (FAC ¶ 147.) Plaintiffs misinterpret both the Ninth Circuit decision in *Heckman* and the parties' arbitration agreement.

In *Heckman*, the Ninth Circuit concluded that Ticketmaster's arbitration agreement, which required both individual and mass arbitration administered by New Era, and the delegation contained in it were unconscionable. Ticketmaster's arbitration agreement itself contained numerous terms that

---

[6] Under the 2024 Take-Two Terms, a "mass arbitration" is defined as "5 or more Disputes relating to the same or similar subject matter, which share common issues of law or fact, or in which the counsel or other organization representing the parties in such Disputes are the same, cooperating, or working in coordination." (Ungberg Decl. Ex. B § 15.5(9).) The 2025 Take-Two Terms defines "mass arbitration" as 25 or more Disputes relating to the same or similar subject matter that share common issues of law or fact and in which the non-Take-Two parties or their legal representative are the same or acting in coordination." (*Id.* Ex. C § 17.5(6).)

[7] For Camargo and Garcia, who are bound by the 2024 Take-Two Terms, a mass arbitration must be filed with New Era and conducted under their Mass Arbitration Procedures in effect at the time of filing. (Ungberg Decl. ¶¶ 62, 63, 66, 67.) For Dougherty, given that her opt out of the 2025 Take-Two Terms was invalid, she would have to participate in any mass arbitration before JAMS under the JAMS MAP. (*Id.* ¶ 59.)

made them procedurally unconscionable, such as subjecting mere visitors to the Ticketmaster website to its terms of service. *Heckman*, 120 F.4th at 682. Ticketmaster's terms also stated that it may make changes to them at any time without notice, and that the new terms would become effective as soon as they are posted online. *Id.* The terms were also found to be affirmatively misleading in that they contradicted New Era's rules in effect at the time. *Id.* at 683. The court also found that elements of New Era's rules in effect when plaintiffs filed their mass arbitration contributed to finding substantive unconscionability, such as the application of bellwether precedent to all individuals in a mass arbitration, the lack of discovery, limited right of appeal, and arbitrator selection. *Id.* at 683-87.

Plaintiffs make no allegations that the Take-Two Terms share any of the same procedural infirmities with Ticketmaster's terms at issue in *Heckman*. Moreover, since the *Heckman* decision, New Era has significantly amended its mass arbitration procedures to remove any unconscionable rules. *See* New Era ADR Procedures (Mar. 19, 2025). Changes include: (1) clarifying that parties always have the right to discovery; (2) clarifying a party's ability to opt out of mass arbitration procedures; (3) requiring written decisions and no additional charges for detailed "reasoned" opinions in mass arbitration; (4) removing binding effect of bellwether decisions and making them accessible to all mass arbitration claimants; and (5) updating the fee schedule, including so that a business must make up the difference between a consumer's share of the filing fee and the cost of filing a similar claim in court. *Id.*

These changes are important because the 2024 Take-Two Terms do not invoke the same New Era Mass Arbitration Procedure that was analyzed in *Heckman*. Rather, any mass arbitration subject to the 2024 Take-Two Terms must be "administered by New Era and governed by the New Era Rules in effect *when the Mass Arbitration Disputes are filed* . . . ," *i.e.*, the most recent, updated version of those rules. (Ungberg Decl. Ex. B § 15.5(9)) (emphasis added). No such hypothetical mass arbitration has been filed, making it impossible to determine the precise version of the New Era Mass Arbitration Procedures that will apply. But what is certain is that any mass arbitration will not be governed by the New Era Mass Arbitration Procedures analyzed in *Heckman*. Accordingly, *Heckman* is effectively limited to the specific facts of that case, which subsequent events have superseded.

McDermott Will & Schulte LLP
Attorneys At Law
Los Angeles

Pursuant to the Plaintiffs' valid agreements with Zynga, all three Plaintiffs should be compelled to arbitrate their disputes on an individual basis before JAMS.

### C. Alternatively, This Case Should Be Transferred to the Southern District of New York

Plaintiffs' causes of action belong in arbitration. Alternatively, this case should be transferred to the Southern District of New York under the valid forum selection clause in the Take-Two Terms.

Under 28 U.S.C. § 1406(a), this Court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." *See also* 28 U.S.C. § 1404(a) ("For the convenience of parties and witnesses, . . . a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."). On a motion to transfer venue pursuant to a forum selection clause, "plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 63 (2013). A forum selection clause should control, unless unusual circumstances exist. *Id.* at 64; *see also Fireman's Fund Ins. Co. v. M.V. DSR Atl.*, 131 F.3d 1336, 1338 (9th Cir. 1997), *as amended* (Mar. 10, 1998) ("A forum selection clause is prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances.") (internal citations omitted). Further, by agreeing to the forum selection clause, the parties "waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses." *Atl. Marine Const. Co.*, 571 U.S. at 64. Rather, forum selection clauses may only be challenged based on matters of public interest. *Id.*

The forum selection clause in the Take-Two Terms is valid and enforceable. All three Plaintiffs agreed to the Take-Two Terms. *Supra* at Sec. IV.A. The forum selection clause is clear that all disputes must be brought in state or federal court in New York County. (Ungberg Decl. Ex. B § 15.1, Ex. C § 17.1.) "If the parties state their intention in an express choice-of-law clause, California courts ordinarily will enforce the parties' stated intention . . . ." *Hatfield v. Halifax PLC*, 564 F.3d 1177, 1182 (9th Cir. 2009). No public interest concerns exist concerning transfer. If the

Court does not compel Plaintiffs to arbitrate their claims, they should be transferred to the Southern District of New York.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs should be compelled to arbitrate their claims individually before JAMS. Alternatively, if the Court disagrees, this case should be transferred to the Southern District of New York.

Dated: September 26, 2025

**MCDERMOTT WILL & SCHULTE LLP**

By: */s/ William P. Donovan, Jr.*
William P. Donovan, Jr.

2049 Century Park East, Suite 3200
Los Angeles, CA 90067-3206
Telephone: +1 310 277 4110
Fax: +1 310 277 4730
wdonovan@mwe.com

Andrew Kratenstein
Chris Combs
One Vanderbilt Avenue
New York, NY 10017-3852
Telephone: +1 212 547 5400
Fax: +1 212 547 5444
akratenstein@mwe.com
ccombs@mwe.com

Emilie E. O’Toole
444 West Lake Street, Suite 4000
Chicago, IL 60606-0029
Telephone: +1 312 372 2000
Fax: +1 312 984 7700
eotoole@mwe.com

*Attorneys for Defendant Zynga Inc.*