William P. Donovan, Jr. (155881)
wdonovan@mwe.com
**MCDERMOTT WILL & SCHULTE LLP**
2049 Century Park East, Suite 3200
Los Angeles, CA 90067-3206
Telephone: +1 310 277 4110
Facsimile: +1 310 277 4730

Attorneys for Defendant Zynga Inc.

(*Additional Signatures Below*)

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO**

| | |
|---|---|
| CHERYLL DOUGHERTY, DELIA CAMARGO, and LAWRENCE GARCIA, individually, as private attorneys general, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ZYNGA, INC.<br><br>Defendant. | Case No. 3:25-cv-04051-SI<br><br>**DEFENDANT ZYNGA, INC.'S NOTICE OF MOTION AND MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**<br><br>[Filed concurrently with Zynga's Motion to Compel Arbitration, Motion to Stay, and related Notices, Memoranda of Points and Authorities in Support Thereof and [Proposed] Orders]<br><br>Judge: Hon. Susan Illston<br>Date: December 19, 2025<br>Time: 10:00 a.m.<br>Courtroom: 1 |

McDermott Will & Schulte LLP
Attorneys At Law
Los Angeles

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on December 19, 2025 or as soon thereafter as the matter may be heard, before the Honorable Susan Illston of the United States District Court for the Northern District of California, in Courtroom 1, of the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, California, Defendant Zynga, Inc. ("Zynga") will and hereby does move this Court for an order dismissing Plaintiffs' causes of action (the "Motion to Dismiss") asserted against Zynga in the First-Amended Class Action Complaint filed on August 19, 2025 (the "FAC" or the "Complaint") for relief asserted against Zynga by Plaintiffs without leave to amend. This Motion is filed pursuant to Federal Rules of Civil Procedure 9(b), 12(b)(1), and 12(b)(6) as alternative relief if this Honorable Court does not grant Zynga's Motion to Compel Arbitration or Alternatively to Transfer Venue filed contemporaneously, which seeks to compel Plaintiffs to arbitrate their disputes with Zynga or transfer this case to the United States District Court for the Southern District of New York.

Should the Court deny Zynga's other motion, its Motion to Dismiss should be granted for several reasons, as set forth in Zynga's memorandum filed herewith. *First*, Plaintiffs have not established constitutional standing nor stated a viable claim because they fail to allege any details about their supposed in-game purchases, reliance on Zynga's conduct, or alleged injury. *Second*, Plaintiffs' claim under the Consumer Legal Remedies Act also fails because this statute does not cover virtual currency. *Third*, Plaintiffs lack standing to seek injunctive relief. *Fourth*, Plaintiffs' unjust enrichment claim is duplicative of Plaintiffs' other defective claims. *Fifth*, Plaintiffs' claim that Defendants' products are addictive has no statutory basis and is barred by the First Amendment. *Sixth*, under the Terms of Service to which Plaintiffs agreed, New York law applies to Plaintiffs' claims and those claims fail under New York law too. *Seventh*, Plaintiffs Lawrence Garcia's and Cherryl Dougherty's claim under the federal Video Privacy Protection Act fails because the statute does not apply and the claim is inadequately pled.

Zynga bases its Motion to Dismiss on this Notice, the accompanying Memorandum of Points and Authorities, all pleadings and papers filed in this action, the argument of counsel, and any other matters that may come before the Court.

Dated: September 26, 2025

Respectfully submitted,

*/s/ William P. Donovan, Jr.*

William P. Donovan, Jr. (SBN 155881)
McDERMOTT WILL & SCHULTE LLP
2049 Century Park East, Suite 3200
Los Angeles, CA 90067-3206
Tel: (310) 277-4111
Fax: (310) 277-4730
wdonovan@mwe.com

Andrew B. Kratenstein (*pro hac vice*)
Chris Combs (*pro hac vice*)
McDERMOTT WILL & SCHULTE LLP
1 Vanderbilt Avenue
New York, NY 10017
Telephone: (212) 547-5400
Fax: (212) 547-5444
akratenstein@mwe.com
ccombs@mwe.com

Emilie E. O'Toole (*pro hac vice*)
McDERMOTT WILL & SCHULTE LLP
444 West Lake Street
Suite 4000
Chicago, IL 60606
Telephone: (312) 372-2000
Fax: (312) 984-7700
eotoole@mwe.com

*Counsel for Defendant Zynga, Inc.*

McDermott Will & Schulte LLP
Attorneys At Law
Los Angeles

# TABLE OF CONTENTS


I. INTRODUCTION ....................................................1

II. BACKGROUND ....................................................2

III. LEGAL STANDARD....................................................3

IV. ARGUMENT....................................................4

- A. Plaintiffs Lack Standing and Have Not Pled a Cognizable Claim....................................................4
  - 1. The Complaint Fails to Connect Plaintiffs' Alleged Purchases to the Allegedly Misleading Sales Practices....................................................5
  - 2. Plaintiffs Have Not Properly Pled an Injury-in-Fact ....................................................7
- B. Virtual Currency Is Not a "Good" Or "Service" Under the CLRA....................................................8
- C. Plaintiffs Cannot Bring a Claim for Injunctive Relief....................................................8
- D. Plaintiffs' Unjust Enrichment Claim Fails....................................................10
- E. Plaintiffs' Addiction Allegations Fail for Additional Reasons....................................................10
  - 1. Plaintiffs Do Not Adequately Plead That the Games are Addictive....................................................11
  - 2. The UCL, CLRA, and FAL Do Not Apply ....................................................11
  - 3. Plaintiffs' Addictiveness Allegations are Barred by the First Amendment.....12
- F. New York Law Applies ....................................................13
  - 1. Plaintiffs Accepted the Terms of Service ....................................................13
  - 2. Plaintiffs' False Discount Claims Fail Under New York Law ....................................................14
- G. Plaintiffs' VPPA Claims Fail....................................................16
  - 1. Plaintiffs Fail to Plead that their Personally Identifiable Information was Impermissibly Disclosed....................................................17
    - a. No Personally Identifiable Information was Disclosed by Zynga .......17
    - b. Any Disclosure Was Permitted under the VPPA....................................................19
  - 2. Plaintiffs are not "Consumers" ....................................................20
  - 3. Zynga is Not a "Video Tape Service Provider"....................................................21
  - 4. Plaintiffs Lack Standing to Assert a VPPA Claim as to Other Zynga Games ....................................................22

V. CONCLUSION....................................................23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*1-800-Got Junk? LLC v. Super. Ct.*,
189 Cal.App.4th 500 (Cal. Ct. App. 2010) ............ 14

*Afriyie v. NBCUniversal Media, LLC*,
775 F. Supp. 3d 791 (S.D.N.Y. 2025) ............ 22, 23

*Am. Amusement Mach. Ass'n v. Kendrick*,
244 F.3d 572 (7th Cir. 2001) ............ 12

*Anderson v. City of Hermosa Beach*,
621 F.3d 1051 (9th Cir. 2010) ............ 12

*Angelilli v. Activision Blizzard, Inc.*,
781 F. Supp. 3d 691 (N.D. Ill. Apr. 23, 2025) ............ 13

*In re Apple and AT&T iPad Unlimited Data Plan Litig.*,
802 F. Supp. 2d 1070 (N.D. Cal. 2011) ............ 4, 10

*In re Apple Inc. Device Performance Litig.*,
386 F. Supp. 3d 1155 (N.D. Cal. 2019) ............ 6

*In re Arris Cable Mod. Consumer Litig.*,
No. 17-cv-01834-LHK, 2018 WL 288085 (N.D. Cal. Jan. 4, 2018) ............ 4

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............ 4, 11, 19

*Balzer v. Wal-Mart Stores, Inc.*,
No. CV 14-9779-JFW, 2015 WL 13828418 (C.D. Cal. Feb. 25, 2015) ............ 10

*Belcastro v. Burberry Ltd.*,
No. 16-cv-1080 (VEC), 2017 WL 5991782 (S.D.N.Y. Dec. 1, 2017) ............ 15

*Belcastro v. Burberry Ltd.*,
No. 16-cv-1080 (VEC), 2017 WL 744596 (S.D.N.Y. Feb. 13, 2017) ............ 15

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ............ 4

*Binder v. Premium Brands Opco LLC*,
23 Civ. 3939 (NRB), 2024 WL 2978506 (S.D.N.Y. June 11, 2024) ............ 15

*Brown v. Entm't. Merchs. Ass'n.*,
564 U.S. 786 (2011) ............ 12

McDermott Will & Schulte LLP
Attorneys At Law
Los Angeles

*Cantu v. Tapestry, Inc.*,
697 F. Supp. 3d 989 (S.D. Cal. 2023) .......... 21, 22

*Caroll v. Chick-Fil-A, Inc.*,
No. 23-cv-00314-RFL, 2024 WL 1091193 (N.D. Cal. Feb. 13, 2024) .......... 20

*Carroll v. Gen. Mills Inc.*,
No. cv-23-1746 DSF, 2023 WL 4361093 (C.D. Cal. June 26, 2023) .......... 21

*Cetacean Cmty. v. Bush*,
386 F.3d 1169 (9th Cir. 2004) .......... 3, 11

*In re CNET Networks, Inc.*,
483 F. Supp. 2d 947 (N.D. Cal. 2007) .......... 17

*Coffee v. Google, LLC*,
No. 20-cv-03901-BLF, 2022 WL 94986 (N.D. Cal. Jan. 10, 2022) .......... 12

*Cooper v. Pickett*,
137 F.3d 616 (9th Cir. 1997) .......... 4

*DaCorta v. AM Retail Grp., Inc.*,
No. 16-cv-01748 (NSR), 2018 WL 557909 (S.D.N.Y. Jan. 23, 2018) .......... 15

*Davidson v. Kimberly-Clark Corp.*,
889 F.3d 956, 961 (9th Cir. 2018) .......... 9

*De Rocha Express, Inc. v. Combined Res., Inc.*,
No. 24-cv-02037-JST, 2024 WL 4504536 (N.D. Cal. Oct. 15, 2024) .......... 17

*Doe v. Epic Games, Inc.*,
435 F. Supp. 3d 1024 (N.D. Cal. 2020) .......... 8

*Drew v. Equifax Info. Servs.*,
No. C 07-00726 SI, 2007 WL 2028745 (N.D. Cal. July 11, 2007) (Illston, J.) .......... 17

*Ebin v. Kangadis Food Inc.*,
No. 13 Civ. 2311 (JSR), 2013 WL 6504547 (S.D.N.Y. Dec. 11, 2013) .......... 15

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017) .......... 17, 19

*Ellis v. Cartoon Network*
803 F.3d 1251 (11th Cir. 2015) .......... 20, 21

*I.B. ex rel. Fife v. Facebook, Inc.*,
905 F. Supp. 2d 989 (N.D. Cal. 2012) .......... 8

*Fraley v. Facebook, Inc.*,
830 F. Supp. 2d 785 (N.D. Cal. 2011) ....................3

*Golden v. NBCUniversal Media, LLC*,
22 Civ. 9858 (PAE), 2025 WL 2530689 (S.D.N.Y. Sept. 3, 2025)....................18

*Haley v. Macy's Inc.*,
263 F. Supp. 3d 819 (N.D. Cal. 2017) ....................6, 7

*Hernandez v. Chewy, Inc.*,
No. 2:23-cv-05620 HDV RAO, 2023 WL 9319236 (C.D. Cal. Dec. 13, 2023)....................21

*Hernandez v. Jostens, Inc.*,
No. 23-cv-05227-HDV-RAO, 2024 WL 1135165 (C.D. Cal. Feb. 7, 2024) ....................16, 20, 21

*Hodges v. Comcast Cable Commc'ns, Inc.*,
21 F.4th 535 (9th Cir. 2021) ....................9

*Hurley v. Irish-American Gay, Lesbian, and Bisexual Grp. of Boston*,
515 U.S. 557 (1995)....................13

*In re iPhone App. Litig.*,
6 F.Supp.3d 1004 (N.D. Cal. 2013) ....................4

*Irvine v. Kate Spade & Co.*,
No. 16-cv-7300 (JMF), 2017 WL 4326538 (S.D.N.Y. Sept. 28, 2017) ....................15

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) ....................4, 5

*Kulp v. Munchkin, Inc.*,
678 F. Supp. 3d 1158 (C.D. Cal. 2023) ....................10

*Loomis v. Slendertone Distrib. Inc.*,
420 F. Supp. 3d 1046 (S.D. Cal. 2019)....................9

*Mai v. Supercell Oy*,
648 F. Supp. 3d 1130 (N.D. Cal. 2023) ....................8, 11, 12

*Mai v. Supercell Oy*,
No. 23-15144, 2024 WL 2077500 (9th Cir. May 9, 2024)....................7, 8

*Missaghi v. Coca-Cola Co.*,
No. CV 12-07472 SJO (Ex), 2013 WL 12114765 (C.D. Cal. Jan. 2, 2013)....................14

*Nedlloyd Lines B.V. v. Sup. Ct.*,
3 Cal.4th 459 (Cal. 1992)....................13, 14

*In re Nickelodeon Consumer Privacy Litig.*,
827 F.3d 262 (3d Cir. 2015)....................17, 18

*Pileggi v. Wash. Newspaper Publ'g Co., LLC*,
146 F.4th 1219 (D.C. Cir. 2025)....................20, 21

*Rodriguez v. Delta T LLC*,
No. 2:23-3717-HDV-AGR, 2023 WL 9419152 (C.D. Cal. Dec. 12, 2023)....................21

*Rodriguez v. Hershey*,
23-cv-398-L-DEB, 2023 WL 6798506 (S.D. Cal. Oct. 12, 2023)....................22

*Rodriguez v. Sony Comput. Entm't Am., LLC*,
801 F.3d 1045 (9th Cir. 2015)....................20

*Rothman v. Equinox Holdings, Inc.*,
No. 2:20-cv-09760-CAS-MRWx, 2021 WL 124682 (C.D. Cal. Jan. 13, 2021)....................5

*Sinatro v. Barilla Am., Inc.*,
635 F. Supp. 3d 858 (N.D. Cal. 2022)....................10

*Smith v. Keurig Green Mountain, Inc.*,
393 F. Supp. 3d 837 (N.D. Cal. 2019)....................4

*Snyder v. Phelps*,
562 U.S. 443 (2011)....................12

*Solomon v. Flipps Media, Inc.*,
136 F.4th 41 (2d Cir. 2025)....................18

*Sterk v. Redbox Automated Retail*,
770 F.3d 618 (7th Cir. 2014)....................20

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
551 U.S. 308 (2007)....................17

*Tryan v. Ulthera, Inc.*,
No. 17-cv-02036-MCE-CMK, 2018 WL 3955980 (E.D. Cal. Aug. 17, 2018)....................9

*In re Vizio, Inc.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017)....................21, 22

*Warren v. Fox Fam.* Worldwide,
328 F.3d 1136 (9th Cir. 2003)....................3

*Warth v. Seldin*,
422 U.S. 490 (1975)....................22

*Wash. Mut. Bank, F.A. v. Sup. Ct.*,
24 Cal.4th 906 (Cal. 2001) ... 14

*In re Zoom Video Commc'ns Priv. Litig.*,
525 F. Supp. 3d 1017 (N.D. Cal. 2021) ... 6

**Statutes**

18 U.S.C. § 2701(a)(4) ... 21

18 U.S.C. § 2710 ... *passim*

Cal. Bus. & Prof. Code § 1750 *et seq.*. ... 1

Cal. Bus. & Prof. Code § 17200 *et seq.* ... 1, 11

Cal. Bus. & Prof. Code § 17500 *et seq.* ... 1, 11

Cal. Civ. Code § 1750 *et seq* ... 11

Cal. Civ. Code § 1761(a) ... 8

Cal. Civ. Code § 1761(b) ... 8

Cal. Civ. Code § 1770(a) ... 8

N.Y. Gen. Bus. Law § 349 ... 16

**Other Authorities**

Fed. R. Civ. P. 8(a)(2) ... 4

Fed. R. Civ. P. 9(b) ... 4, 5, 6

Fed. R. Civ. P. 12(b)(1) ... 3

Fed. R. Civ. P. 12(b)(6) ... 4

## I. INTRODUCTION

As discussed in the accompanying Notice of Motion and Motion to Compel Arbitration or Alternatively to Transfer Venue and Memorandum of Points and Authorities in Support Thereof [ECF No. 37] (the "Motion to Compel"), Plaintiffs should be compelled to arbitrate their disputes with Zynga, Inc. ("Zynga") or, alternatively, this case should be transferred to the United States District Court for the Southern District of New York. Should the Court deny those motions, then this Court should dismiss the Complaint as it fails to state a claim for several reasons.

*First*, Plaintiffs lack standing and fail to state a claim under the Unfair Competition Law (Cal. Bus. & Prof. Code § 17200 *et seq.*) (the "UCL"), the False Advertising Law (Cal. Bus. & Prof. Code § 17500 *et seq.*) (the "FAL"), the Consumer Legal Remedies Act (Cal. Civ. Code § 1750 *et seq.*) (the "CLRA"), and for fraud because the Complaint contains no specific allegations regarding Plaintiffs' in-game activity or purchases. Indeed, the Complaint does not connect its general factual allegations about the Games to any in-Game purchases supposedly made by Plaintiffs Cheryll Dougherty ("Dougherty"), Delia Camargo ("Camargo"), and Lawrence Garcia ("Garcia"), nor does it provide the level of detail required to establish standing or state a plausible claim let alone to meet the heightened pleading standard of Federal Rule of Civil Procedure ("FRCP") 9(b).

*Second*, Plaintiffs' claim under the CLRA also fails because the statute by its terms does not apply to the virtual currency at issue here.

*Third*, Plaintiffs cannot seek injunctive relief because Plaintiffs have not alleged that they plan to make future in-Game purchases in *Toon Blast* and *Toy Blast* (the "Games"). They also do not seek relief on behalf of the public, but only for Game players.

*Fourth*, California law does not even apply. New York law applies under the Terms of Service to which Plaintiffs agreed, and Plaintiffs' claims fail under New York law.

*Fifth*, Plaintiffs' unjust enrichment claim is duplicative of its other defective claims and cannot stand on its own.

*Sixth*, Plaintiffs' allegations that the games are addictive have no statutory basis. They are also barred by the First Amendment as video games are protected speech.



McDermott Will & Schulte LLP
Attorneys At Law
Los Angeles

*Seventh*, the Video Privacy Protection Act, 18 U.S.C. § 2710 (the "VPPA"), does not apply because Zynga is not a "video tape service provider," Garcia and Dougherty are not "consumers", and the Complaint fails to allege that any personally identifiable information was impermissibly disclosed. Plaintiffs also lack standing to sue under the VPPA because they have not established that they watched videos in Games other than Toon Blast.

Thus, if Plaintiffs are not compelled to arbitrate or this case is not transferred to the Southern District of New York, the Complaint should be dismissed with prejudice.

## II. BACKGROUND

Zynga is a wholly-owned subsidiary of Take-Two Interactive Software, Inc. ("Take-Two"). (FAC ¶ 2.) Zynga publishes the Games. (*Id.*) Primarily played on mobile devices, the Games are functionally identical tile-matching puzzle games, in which players advance through each level by selecting groups of matching tiles in a certain number of turns to clear the board. (*Id.* ¶¶ 30-33.)

To aid with more challenging levels, players can purchase "Coins," which they can then spend on additional lives, extra moves, or special items known as "Boosters" such as cartoon bombs and rockets players can use to blast through obstacles. (*Id.* ¶¶ 34-37.) In addition to Coins, players can also purchase "Bundles" that include various combinations of Coins, Boosters, and other bonus items, such as unlimited lives for a set time period. (*Id.* ¶ 38.) Players are regularly presented with time-limited offers of discounts or special sales. (*Id.* ¶ 40.)

Plaintiffs allege that the Games use "false and deceptive advertising tricks to artificially inflate the perceived worth of the bundle of items players purchase." (*Id.* ¶ 39.) Specifically, Plaintiffs allege that the time-limited discounts are offered perpetually, or that – because there are no competitors selling similar products for the Games – the discounted prices are not actually discounted or on sale from any original price. (*Id.* ¶¶ 40-55.) Plaintiffs allege that these practices violate the UCL, the FAL, the CLRA, and constitute common-law fraud and unjust enrichment. (*Id.* ¶¶ 179-245.) Plaintiffs seek compensatory and actual damages; statutory damages, punitive damages, civil penalties, injunctive, declaratory, and equitable relief, costs, attorneys' fees, and interest. (*Id.* at 50-51.) Dougherty and Garcia also bring a separate claim under the VPPA. (*Id.* ¶¶ 235-45.)

McDermott Will & Schulte LLP
Attorneys At Law
Los Angeles

Plaintiffs Dougherty and Camargo are California residents and Plaintiff Garcia was a California resident until 2024. (*Id.* ¶¶ 12-14.) The Complaint alleges that Plaintiffs have each downloaded at least one of the Games and have made in-Game purchases. (*Id.*) Dougherty claims that she previously made in-Game purchases in Toy Blast, a game which she says she no longer plays, and provides a general list of some of the purchases she alleges to have made. (*Id.* ¶ 12, App'x A.) Camargo and Garcia "estimate[]" making some amount of in-Game purchases in Toon Blast in the past. (*Id.* ¶¶ 13-14.) The Complaint further alleges that Plaintiff's in-Game purchases Plaintiffs "included purchases of the various types of packs and sale items described" in the Complaint. (*Id.*).

The Complaint contains no other allegations about Plaintiffs' supposed Game playing or in-Game purchases. The Complaint's "Factual Allegations" section does not even mention Camargo and mentions Dougherty and Garcia only briefly to allege that they watched pre-recorded video content in the Games. (*Id.* ¶¶ 106, 122.). The Complaint otherwise makes no attempt to tie any of the three Plaintiffs' alleged Game playing to the otherwise generalized allegations contained therein (*Id.* ¶¶ 30-122.)

## III. LEGAL STANDARD

Plaintiffs must allege and establish standing under Article III of the United States Constitution and show they suffered injury-in-fact and loss of money or property because of Zynga's alleged conduct. *See Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004) ("To establish standing, Plaintiffs "must show that (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."). Pursuant to FRCP 12(b)(1), a defendant may challenge standing either on the face of the pleadings or by presenting extrinsic evidence. *Warren v. Fox Fam.* Worldwide, 328 F.3d 1136, 1139 (9th Cir. 2003); *Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785, 793 (N.D. Cal. 2011) ("In resolving a factual dispute as to the existence of subject matter jurisdiction, a court may review extrinsic evidence beyond the complaint without converting a motion to dismiss into one for summary judgment.").

Plaintiffs must also provide a "short and plain statement of the claim showing that [she] is entitled to relief[.]" FRCP 8(a)(2). A complaint that fails to do so should be dismissed under FRCP 12(b)(6). When ruling on a motion to dismiss, "a judge must accept as true all of the factual allegations contained in the complaint." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). But the Court is not bound to accept legal conclusions couched as facts, or naked assertions "devoid of factual enhancement." *Id.* A complaint that offers "labels and conclusions" or "formulaic recitation of the elements of a cause of action will not do." *Id.* Instead, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." *Id.* The complaint allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Finally, claims that "sound in fraud" – including under the UCL, CLRA, and FAL – must satisfy the heightened pleading standard of particularity in FRCP 9(b). *See In re Apple and AT&T iPad Unlimited Data Plan Litig.*, 802 F. Supp. 2d 1070, 1075 (N.D. Cal. 2011). To satisfy FRCP 9(b)'s particularity requirement, "a fraud claim must state the 'who, what, when, where, and how' of the alleged conduct" and why the conduct complained of was "false or misleading." *Smith v. Keurig Green Mountain, Inc.*, 393 F. Supp. 3d 837, 843 (N.D. Cal. 2019) (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)).

## IV. ARGUMENT

### A. Plaintiffs Lack Standing and Have Not Pled a Cognizable Claim

Plaintiffs must establish both constitutional standing and statutory standing to state a claim under the UCL, CLRA, and FAL. *In re iPhone App. Litig.*, 6 F.Supp.3d 1004, 1012-13 (N.D. Cal. 2013). Further, "[w]hen UCL, CLRA, and FAL claims are premised on misleading advertising or labeling, Rule 9(b) requires the plaintiff to allege the particularly circumstances surrounding the representations at issue." *In re Arris Cable Mod. Consumer Litig.*, No. 17-cv-01834-LHK, 2018 WL 288085, at *8 (N.D. Cal. Jan. 4, 2018) (citing *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009)). Thus, the plaintiff must identify the specific alleged misrepresentation made to the plaintiff and how that plaintiff reasonably relied on it to their detriment. *See*

*Kearns*, 567 F.3d at 1126 ("Kearns [] failed to specify which sales material he relied upon in making his decision to buy"). Plaintiffs come nowhere close to meeting these standards.

1. The Complaint Fails to Connect Plaintiffs' Alleged Purchases to the Allegedly Misleading Sales Practices

Despite containing 51 pages and 245 numbered paragraphs, the Complaint makes little effort to tie its factual allegations about the supposedly "false and deceptive sales tactics" in the Games (FAC ¶¶ 30-122) to Plaintiffs' alleged in-Game purchases. Nor does the Complaint state what materials or statements Plaintiffs relied on in making those alleged purchases.

As to Camargo and Garcia, the Complaint alleges only that each of them "estimates" previously making in-app purchases "which included purchases of the various types of packs and sales items described" in the rest of the Complaint. (FAC ¶¶ 13-14.) The Complaint's only other mention of Camargo is to note that she was not previously an arbitration claimant. (*Id.* ¶ 177.) As to Garcia, the Complaint's only additional allegation is that he watched video advertisements in Toon Blast. (*Id.* ¶¶ 15, 101, 106.) The Complaint does not allege Garcia is still playing the Games or even still lives in California. These allegations do not contain the particularity required to establish constitutional standing, statutory standing, or meet the requirements of Rule 9(b).

In *Rothman v. Equinox Holdings, Inc.*, the court dismissed UCL, CLRA, and FAL claims because the plaintiff failed to plead actual reliance on Equinox's refund policy. *See* No. 2:20-cv-09760-CAS-MRWx, 2021 WL 124682, at *6 (C.D. Cal. Jan. 13, 2021). The complaint's only allegation of reliance baldly stated that "Consumers, including plaintiff and members of the Class, necessarily and reasonably relied on Defendant's statements . . . ." *Id.* at *5. The court noted, "[i]t is not enough to 'receive' a misrepresentation in a document; a plaintiff must see, read, or hear the alleged misrepresentation and rely on it." *Id.* Because plaintiff's allegations did not specify "when – if at all – plaintiff viewed the alleged misrepresentation nor what actions he took as a result," reliance was insufficiently pled. *Id.*

Similarly, here, the Complaint generally alleges that the Games use false and deceptive sales tactics (FAC ¶¶ 39-55) but contains conclusory allegations of reliance on these sales tactics and resulting injury. (*Id.* ¶ 198) ("Plaintiffs and the Classes relied on these misleading and deceptive



McDermott Will & Schulte LLP
Attorneys At Law
Los Angeles

McDermott Will & Schulte LLP
Attorneys At Law
Los Angeles

representations regarding the limited-time bonuses they could expect to receive in the packs"); (*Id.* ¶ 227) ("Plaintiffs reasonably relied upon the claims made in the advertisements in deciding to purchase the aforementioned packs"). Absent are specific allegations about Plaintiffs' in-Game activity purchases, including – as to Camargo and Garcia – what purchases they allegedly made and when they made them, and – as to all three Plaintiffs – how their specific purchases were elicited by Defendant's allegedly false or deceptive sales tactics or how Plaintiffs were damaged by those purchases or otherwise did not receive what they paid for. *See In re Zoom Video Commc'ns Priv. Litig.*, 525 F. Supp. 3d 1017, 1046 (N.D. Cal. 2021) (dismissing fraud-based UCL and CLRA claims under Rule 9(b)).

The allegations about Dougherty likewise fall short of the requisite particularity. The Complaint alleges that Dougherty purchased various types of "Special Offer" bundles and provides a selected purchase history with the type of alleged purchase (e.g., "Toy Bundle"). (FAC ¶ 12, App'x A.) But listing Dougherty's alleged in-Game purchases, along with the date and price, fails to demonstrate that Dougherty's individual purchases themselves were based on false, misleading, or otherwise supposedly deceptive sales practices. Such generality is insufficient to establish standing or state a claim. *See, e.g.*, *In re Apple Inc. Device Performance Litig.*, 386 F. Supp. 3d 1155, 1171-73 (N.D. Cal. 2019) (dismissing plaintiffs' claim regarding a defective battery because, even though they had alleged (1) the device used, (2) the date of purchase, (3) and the software versions used, they had not pled that the individual plaintiffs personally experienced a defective battery).

Relatedly, although the Complaint makes general allegations about the kinds of allegedly false and deceptive sales tactics present in the Games (FAC ¶¶ 39-55), it does not allege that *all* available in-Game purchases use false and deceptive sales tactics, only that the price of *some* "bundles" or "packs" are "artificially inflate[d]." (*Id.* ¶ 39.) That too is not enough.

In *Haley v. Macy's Inc.*, 263 F. Supp. 3d 819 (N.D. Cal. 2017), the court dismissed a class action complaint alleging violations of the UCL, CLRA, and FAL arising from an alleged pricing scheme to mislabel department store merchandise with false or inflated original and regular prices, which did not reflect the prices defendants routinely if ever sold their products. As the court

McDermott Will & Schulte LLP
Attorneys At Law
Los Angeles

observed, "The complaint does not provide more detail about these specific purchases, but neither does it categorically allege that *all* of Defendants' products are misleadingly priced. In fact, Plaintiffs concede some prices are not false or deceptive. But without more, Defendants cannot identify the transactions involving purportedly misleading prices in order to defend against plaintiffs' allegations." *Haley*, 263 F. Supp. 3d at 823.

The same logic applies here. Plaintiffs merely list "various types of packs and sale items." (FAC ¶¶ 12-14.) They do not identify which allegedly fictious sales or discounts each individual Plaintiff allegedly relied on in making their purchases, the actions they took as a result, and the injury they suffered. Because Plaintiffs do not plead these necessary factual allegations, they lack statutory standing and fail to state a claim.

2. Plaintiffs Have Not Properly Pled an Injury-in-Fact

Finally, even if Plaintiffs *had* appropriately identified the allegedly fictitious sales or discounts on which each individual Plaintiff relied in making their purchases – which they did not – Plaintiffs would lack standing because they have not shown an injury-in-fact. *See Mai v. Supercell Oy*, No. 23-15144, 2024 WL 2077500, at *1 (9th Cir. May 9, 2024). In *Mai*, Plaintiffs purchased in-game "loot boxes," which contained "mystery items," which purchasers knew could be a variety of different items. *Id.* Because each "loot box" contained exactly what they expected it to, the Court found that they had not shown a sufficient injury-in-fact and could satisfy neither constitutional nor statutory standing under the UCL and CLRA. *Id.*

The Complaint provides a variety of examples of Bundles that players can purchase in the Games. (FAC ¶¶ 44-45, 48, 51, 53.) Even if the Complaint alleged with the requisite specificity which of these Bundles each Plaintiff purchased and when, the Complaint makes no allegations that any Bundle did not contain the coins or special items that players believed they were purchasing, for the price at which they believed they were making the purchase. In fact, the Complaint includes pictures of the advertised bundles that feature the allegedly "false discounts" and "false countdown timers." Each bundle lists *exactly* the number of coins and items in each bundle, and at what price it is available. Plaintiffs do not – because they cannot – allege that the Games' Bundles do not contain what they say they do or are otherwise deficient. Such allegations are insufficient to show injury-in-

fact. *Mai*, 2024 WL 2077500, at *1 ("They concede that for each loot box they purchased, they received exactly what they had expected: at least one mystery virtual item. Thus, they have not shown a sufficient economic injury-in-fact.").

**B. Virtual Currency Is Not a "Good" Or "Service" Under the CLRA**

Plaintiffs' claim under the CLRA fails for the independent reason that intangible items fall outside the CLRA's scope. The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a). The CLRA defines goods as tangible chattels and defines services as "work, labor, and services for other than a commercial or business use, including services furnished in connection with the sale or repair of goods." *Id.* § 1761(a)-(b).

Plaintiffs' CLRA claim is based on Zynga's representations regarding the sale of virtual "Bundles." (FAC ¶¶ 39-55.) Bundles are virtual items unrelated to any tangible chattel or service. California courts have routinely found that plaintiffs fail to state claims under the CLRA because virtual in-game currency is not a good or service as defined in the statute. *See Mai v. Supercell Oy*, 648 F. Supp. 1130, 1136 (N.D. Cal. 2023) (dismissing CLRA claim brought based on Defendants' alleged "sale of virtual currency, loot boxes, and services in providing the games and selling the loot boxes" because "virtual currency is not a good or service for purposes of the CLRA); *vacated and remanded*, No. 23-15144, 2024 WL 2077500, at *2 (9th Cir. May 9, 2024) (finding plaintiffs also lacked Article III standing); *Doe v. Epic Games, Inc.*, 435 F. Supp. 3d 1024, 1045-46 (N.D. Cal. 2020) ("[T]he virtual currency at issue is not a good or service" and virtual "supplies" and "ammunition" in a video game are "digital" rather than "tangible"); *I.B. ex rel. Fife v. Facebook, Inc.*, 905 F. Supp. 2d 989, 1007-08 (N.D. Cal. 2012) (holding that digital currency is not a good or a service under the CLRA). Thus, the CLRA claim fails for this additional reason.

**C. Plaintiffs Cannot Bring a Claim for Injunctive Relief**

The Complaint also purports to seek injunctive relief under the UCL, CLRA, and FAL. (FAC ¶¶ 202-03, 209, 222.) Plaintiffs lack standing for injunctive relief because the Complaint

McDermott Will & Schulte LLP
Attorneys At Law
Los Angeles

McDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

contains no allegations that any Plaintiff still makes in-Game purchases or plans to do so, and any relief would not benefit the public.

In *Davidson v. Kimberly-Clark Corp.*, the Ninth Circuit recognized "that misled consumers may properly allege a threat of imminent or actual harm sufficient to confer standing to seek injunctive relief." 889 F.3d 956, 961 (9th Cir. 2018). The court found that the plaintiff had "properly alleged that she faces a threat of imminent or actual harm by not being able to rely on Kimberly-Clark's labels in the future." *Id.* at 969.

Unlike *Davidson*, where the court's decision hinged on the plaintiff's inability to rely on the defendant's labels again, Plaintiffs have not alleged that they plan to play and make purchases in the Games again. They allege only that they "play and/or *may* still play the Games and be deceived and pressured into making in-app purchases." (FAC ¶ 203) (emphasis added). But the vague notion that a Plaintiff "may" "be deceived and pressured into making in-app purchases" does not allege a threat of imminent or actual harm. *See, e.g.*, *Loomis v. Slendertone Distrib. Inc.*, 420 F. Supp. 3d 1046, 1077 (S.D. Cal. 2019) (finding plaintiff lacked standing to seek injunctive relief under the UCL where she alleged only that she "would consider" buying another device from defendant without specifying the particular product); *Tryan v. Ulthera, Inc.*, No. 17-cv-02036-MCE-CMK, 2018 WL 3955980, at *9-10 (E.D. Cal. Aug. 17, 2018) (holding that plaintiff did not have standing to seek injunctive relief where plaintiffs did not allege they would use defendant's product in the future).

Further, the injunctive relief Plaintiffs seek would not benefit the public, just a subset of individuals who play the Games. Plaintiffs' allegations concern allegedly "false and deceptive advertising tricks" *in the Games*. (FAC ¶¶ 34, 39.) Plaintiffs make no allegations – because they cannot – that Zynga's alleged actions are directed at the public. Accordingly, the relief they seek would not benefit the public, but a discrete subset of people that play the Games. Any claim for injunctive relief thus fails because "the injunctive relief being sought is for the benefit of a discrete class of persons . . . ." *Hodges v. Comcast Cable Commc'ns, Inc.*, 21 F.4th 535, 543 (9th Cir. 2021) (rejecting claim for injunctive relief in class action challenging a cable provider's data collection practices).

Finally, even if the Games' in-store prices were misleading or deceptive – they are not – Plaintiffs are by now obviously aware of the practices they allege to be misleading or deceptive and can no longer pursue injunctive relief as a result. *See, e.g.*, *Kulp v. Munchkin, Inc.*, 678 F. Supp. 3d 1158, 1166 (C.D. Cal. 2023) (holding that plaintiffs lacked standing to pursue injunctive relief because they did not plead they were in the market for a future purchase, and if they were they were now aware of the undisclosed safety risks associated with the product in question); *Sinatro v. Barilla Am., Inc.*, 635 F. Supp. 3d 858, 879 (N.D. Cal. 2022) (finding that, because plaintiffs were now aware of the locations where the products were manufactured, plaintiffs could not allege they would be misled by the representation in the future).

For all these reasons, Plaintiffs cannot seek injunctive relief.

**D. Plaintiffs' Unjust Enrichment Claim Fails**

Plaintiffs' unjust enrichment claim is duplicative of Plaintiffs' other defective claims. *See Balzer v. Wal-Mart Stores, Inc.*, No. CV 14-9779-JFW (PJWx), 2015 WL 13828418, at *4 (C.D. Cal. Feb. 25, 2015) ("[C]ourts generally dismiss quasi-contract claims that are merely duplicative of UCL, FAL, and CLRA claims, which already provide for restitution as a remedy.") (collecting cases); *In re Apple & AT&T iPad Unlimited Data Plan Litig.*, 802 F. Supp. 2d. at 1077 ("[P]laintiffs cannot assert unjust enrichment claims that are merely duplicative of statutory or tort claims."). Plaintiffs allege only that Defendants mispresented the value of the bundled items, that Plaintiffs spent significant amounts of money on falsely discounted packs as well as other items they were pressured or manipulated into, and that it would be unfair for Zynga to keep that money. (FAC ¶¶ 233-34.) Such allegations are the same as those contained in Plaintiffs' other causes of actions. Plaintiffs' unjust enrichment claim cannot stand on its own and should be dismissed.

**E. Plaintiffs' Addiction Allegations Fail for Additional Reasons**

In addition to alleging purportedly false discounts, the Complaint alleges that Zynga "deliberately fosters addictive behaviors and lures consumers into dangerous spending habits," and that the supposedly unknown frequency or occurrence of sales and discounts further fosters such addiction. (FAC ¶¶ 72-73.) Specifically, the Complaint alleges that the Games violate the "unfair"

McDermott Will & Schulte LLP
Attorneys At Law
Los Angeles

prong of the UCL (*id.* ¶ 194) and the "unlawful" prong of the CLRA (*id.* ¶ 222) by intentionally designing the Games to foster addiction.

These allegations fail for at least three reasons. *First*, the claims are not pled with specificity. *Second*, even if they were, the UCL, CLRA, and FAL do not recognize causes of action for "addictive" content. *Third*, the Games are protected under the First Amendment.

1. <u>Plaintiffs Do Not Adequately Plead That the Games are Addictive</u>

As discussed above, to establish Article III standing, a plaintiff "must show that (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Cetacean*, 386 F.3d at 1174. The Complaint must also include specific factual content that allows the Court to reasonably infer that the defendant is liable, and the facts must show that the claims are plausible and not merely conceivable. *Iqbal*, 556 U.S. at 678.

Here, the Complaint's handful of allegations that Plaintiffs "felt addicted and compelled to play" the Games, played several hours each day, or lost sleep playing the Games (FAC ¶¶ 12-14) are general and bear no relation to the Complaint's other allegations about how the Games use false and deceptive sales tactics related to in-Game purchases. For example, the Complaint alleges that, due to the supposedly addictive nature of the Games, players paid higher prices and made purchases more frequently than they otherwise would have. (*Id.* ¶¶ 16, 75.) But the Complaint does not – because it cannot – connect the Games' allegedly addictive properties with any increase in Plaintiffs' spending on allegedly "deceptive" in-Game purchases. The addiction allegations fail for that reason alone.

2. <u>The UCL, CLRA, and FAL Do Not Apply</u>

Further, none of the statutes under which the Plaintiffs bring claims – the UCL, CLRA, and FAL – says anything about or allows for claims based on addictive content. *See* Cal. Bus. & Prof. Code § 17200 *et seq*; Cal. Bus. & Prof. Code § 17500 *et seq*; and Cal. Civ. Code § 1750 *et seq*. Indeed, while the Ninth Circuit in *Mai* held that the plaintiffs had not properly alleged Article III standing, the district court also granted defendant's motion to dismiss for lack of statutory standing under the UCL and CLRA, holding that the in-game features fell outside the bounds of unlawful

McDermott Will & Schulte LLP
Attorneys At Law
Los Angeles

gambling under California law, and, even accepting plaintiffs' allegations as true, the public interest lie in seeking legislative remedies. *Mai*, 648 F. Supp. 3d at 1137-39 ("the California legislature has enacted statutes outlining the bounds of unlawful gambling, and [Defendant's] conduct does not constitute unlawful gambling under the [California Penal Code] . . . it is not this Court's role to apply purely subjective notions of fairness under the UCL") (citing *Coffee v. Google, LLC*, No. 20-cv-03901-BLF, 2022 WL 94986, at *14 (N.D. Cal. Jan. 10, 2022)).

The same is true here. None of the statutes under which Plaintiffs sue regulates the purported "addictive" content of video games or any other media, such as books, films, or music. And even if they did, as explained below, they would be unconstitutional as applied under the First Amendment.

3. <u>Plaintiffs' Addictiveness Allegations are Barred by the First Amendment</u>

The First Amendment prohibits imposing civil liability on the creation and dissemination of constitutionally protected speech. *See Snyder v. Phelps*, 562 U.S. 443 (2011). The First Amendment's protection extends to modern forms of expression, including video games, despite often lacking a singular, defined message. *See Brown v. Entm't. Merchs. Ass'n*, 564 U.S. 786, 790 (2011).

In *Brown v. Entertainment Merchants Association*, the Supreme Court struck down a California law restricting the sale of violent video games to minors, affirming that video games – like books, films, and music – communicate ideas and social messages through characters, dialogue, and plot, even when those messages are complex, interactive, or ambiguous. 564 U.S. at 794. Video games are no less worthy of First Amendment protection because they engage players through interactive features and devices. *See id.* at 798 ("All literature is interactive. The better it is, the more interactive.") (quoting *Am. Amusement Mach. Ass'n v. Kendrick*, 244 F.3d 572, 577 (7th Cir. 2001).)

Plaintiffs also cannot reasonably contend that their addictiveness claim is based on Take-Two's conduct, not its content or expression. *See Anderson v. City of Hermosa Beach*, 621 F.3d 1051, 1062 (9th Cir. 2010) ("the process of expression through a medium has never been thought so distinct from the expression itself" that one but not the other is protected by the First Amendment). Nor can Plaintiffs sidestep the First Amendment by arguing that the Games do not

McDermott Will & Schulte LLP
Attorneys At Law
Los Angeles

advance any particular idea, as the First Amendment has long protected acts of expression not obviously linkable to any particular concept. *See Hurley v. Irish-American Gay, Lesbian, and Bisexual Grp. of Boston*, 515 U.S. 557, 569 (1995).

Any contention that Zynga could alter the "addictive game design" (FAC ¶ 71) without changing its in-game content also fails. Even if Plaintiffs played the Games for hours each day and lost sleep playing them (FAC ¶¶ 12-14), they did so precisely because they found the Games engaging and made purchases that helped them more easily advance through the Games' levels and episodic structure. Removing the engaging elements that some players supposedly find "addictive" would fundamentally alter the in-game experience, which is protected by the First Amendment. "This is about as persuasive as saying the First Amendment would not be implicated by a mandate that authors not end chapters on cliffhangers because moving a chapter heading does not affect a book's content." *Angelilli v. Activision Blizzard, Inc.*, 781 F. Supp. 3d 691, 702 (N.D. Ill. Apr. 23, 2025) (rejecting argument that the First Amendment is not implicated by the video game Roblox because allegedly addictive features could be modified without changing the content of the game itself).

For all these reasons, Plaintiffs' addictiveness claim fails.

**F. New York Law Applies**

Even if Plaintiffs could bring a viable claim under California law – which they cannot for the above reasons – California law does not even apply. Rather, New York law applies under the Terms of Service to which each Plaintiff agreed, that choice of law should be enforced. Just as Plaintiffs' claims fail under California law, they also fail under New York law.

1. <u>Plaintiffs Accepted the Terms of Service</u>

California has a strong public policy favoring enforcement of choice of law provisions. *Nedlloyd Lines B.V. v. Sup. Ct.*, 3 Cal.4th 459, 468-70 (Cal. 1992). In determining the scope of a choice-of-law provision, California law implies broad coverage of all claims related to a contract. *Id.* at 470 (holding that a choice of law provision "encompasses all causes of action arising from or related to that agreement").

As discussed in the Motion to Compel, Plaintiffs accepted the 2025 Take-Two Terms of Service (the "2025 Take-Two Terms"), which states that this "Agreement is entered into in the



MCDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

State of New York and shall be governed by, and construed under, the laws of the State of New York, without regard to conflict of law rules." (Ungberg Decl. Ex. B § 17.1.) Although Plaintiffs each purported to opt out of the 2025 Take-Two Terms, the 2024 Take-Two Terms of Service (the "2024 Take-Two Terms") – which all three Plaintiffs also accepted and can no longer validly opt out of – contain the same choice-of-law clause. (*Id.* Ex. C § 15.1).

Both the 2024 Take-Two Terms and the 2025 Take-Two Terms also apply broadly to "the terms and conditions by which we offer you access to use our games, apps, products, websites, and other services (the 'Services') as well as Virtual Items [] and your Account . . . ." Plaintiffs' claims thus fall well within the scope of the Terms of Service and California's broad view of what falls within a choice-of-law provision.

2. Plaintiffs' False Discount Claims Fail Under New York Law

In analyzing the enforceability of choice-of-law provisions, "the court must first determine: (1) whether the chosen state has a substantial relationship to the parties or their transaction, or (2) whether there is any other reasonable basis for the parties' choice of law." *Wash. Mut. Bank, F.A. v. Sup. Ct.*, 24 Cal.4th 906, 916-17 (Cal. 2001) (citing *Nedlloyd Lines B.V.*, 3 Cal.4th at 468-70) (*en banc*) (internal citations omitted.)

California courts have found its interest in having disputes governed by a uniform body of law and a geographic relevance of the forum state to be enough of a "reasonable basis" for a choice-of-law provision. *See 1-800-Got Junk? LLC v. Super. Ct.*, 189 Cal.App.4th 500, 505 (Cal. Ct. App. 2010) (finding a reasonable basis for the designation of the laws of Washington state given the state's proximity to Got Junk's headquarters in Vancouver, Canada); *cf. Missaghi v. Coca-Cola Co.*, No. CV 12-07472 SJO (Ex), 2013 WL 12114765, at *3 (C.D. Cal. Jan. 2, 2013) (finding no reasonable basis when neither the agreement nor the parties' briefs indicated why the laws of Michigan were chosen to apply to the agreement at issue). Here, Zynga and Take-Two have a reasonable basis to choose the laws of the state where Take-Two is headquartered to apply.[1]

[1] If this test is met, the choice of law provision will be denied only if "the other side can establish *both* that the chosen law is contrary to a fundamental policy of California *and* that California has materially greater interest in the determination of the particular issue." *Wash. Mut. Bank, F.A.*, 24 Cal.4th at 917. Plaintiffs make no attempt to establish how New York law is contrary to California

McDermott Will & Schulte LLP
Attorneys At Law
Los Angeles

McDermott Will & Schulte LLP
Attorneys At Law
Los Angeles

Plaintiffs' alleged false discount claims fail under New York law. "New York law does not recognize an injury based on the subjective value assigned to a missing bargain because it impermissibly combines the deception (the appearance of a bargain) with injury (there was no actual bargain)." *Belcastro v. Burberry Ltd.*, No. 16-cv-1080 (VEC), 2017 WL 5991782, at *3-4 (S.D.N.Y. Dec. 1, 2017). "To plead actual injury . . . a plaintiff must allege that, on account of a materially misleading practice, she purchased a product and did not receive the full value of her purchase." *Binder v. Premium Brands Opco LLC*, 23 Civ. 3939 (NRB), 2024 WL 2978506, at *6 (S.D.N.Y. June 11, 2024). Courts applying New York law "have repeatedly rejected the very theory of injury alleged [where] a plaintiff believed she was getting a bargain based on a fictitious 'original price' and seeks compensation for her subjective disappointment upon discovery that there was never any bargain at all." *Id.*; *see also DaCorta v. AM Retail Grp., Inc.*, No. 16-cv-01748 (NSR), 2018 WL 557909, at *8 (S.D.N.Y. Jan. 23, 2018) ("It is clear that Plaintiff believes she was deceived into purchasing the product and spending what she did, but that fails to demonstrate an actual injury required under the law."); *Irvine v. Kate Spade & Co.*, No. 16-cv-7300 (JMF), 2017 WL 4326538, at *4 (S.D.N.Y. Sept. 28, 2017) (holding that a claim that "but for the mistaken belief that they were getting a bargain, Plaintiffs would not have made their purchases at all" is foreclosed by New York law); *Belcastro v. Burberry Ltd.*, No. 16-cv-1080 (VEC), 2017 WL 744596, at *3 (S.D.N.Y. Feb. 13, 2017) (rejecting plaintiff's theory of injury based on his belief that "he was getting a terrific bargain on his purchases . . . [when] [i]n reality, he was not getting a bargain at all.").

Even if, as Plaintiffs contend, the Bundles "never end," Plaintiffs would still not be injured because they cannot show that they overpaid for the product. *Binder*, 2024 WL 2978506, at *6 ("One way to demonstrate [actual injury] is to allege a 'price premium' injury: that the misrepresentation caused plaintiff to overpay for a product."). Plaintiffs do not claim, for example, that the Bundles players purchase in the Games do not actually contain the items they paid for, or that the bundles are of an inferior quality than what was advertised. *See, e.g.*, *Ebin v. Kangadis Food Inc.*, No. 13 Civ. 2311 (JSR), 2013 WL 6504547, at *4-5 (S.D.N.Y. Dec. 11, 2013) (holding that

policy or why California has a greater interest in determining the issue. In any event, the Complaint should be dismissed no matter whether California or New York law applies.

plaintiffs allege a cognizable injury under New York General Business Law § 349 where plaintiffs claimed they had paid a premium for a product "100% Pure Olive Oil" that instead contained "olive pomace oil"). Thus, Plaintiffs do not assert a cognizable legal theory under New York law, and their false discount claims should be dismissed for this additional reason.

**G. Plaintiffs' VPPA Claims Fail**

Finally, Plaintiffs Dougherty and Garcia – on behalf of themselves and a putative class of every Zynga app user – assert a claim for the violation of the VPPA. To plead such a claim, a plaintiff must "plausibly allege that: (1) the defendant is a 'video tape service provider'; (2) the defendant disclosed 'personally identifiable information concerning any consumer' to 'any person'; (3) the disclosure was made knowingly; and (4) the disclosure was not authorized by Section 2710(b)(2)." *Hernandez v. Jostens, Inc.*, No. 23-cv-05227-HDV-RAO, 2024 WL 1135165, at *1 (C.D. Cal. Feb. 7, 2024). Both Dougherty and Garcia lack standing to pursue their VPPA claims on behalf of the putative class they identify, and in any event, the statute does not apply.

To understand why Plaintiffs' VPPA claims fail one must understand how third-party advertisements work in Toon Blast. (FAC ¶ 101.) Toon Blast is a free-to-play game. (*Id.* ¶ 77.) App users can install and play Toon Blast without *ever* watching an advertisement. But players can choose to watch ads. (*Id.* ¶ 105) ("players are in complete control over the ad experience – they can choose if and when they see an ad").

If a player chooses to watch an ad, those ads are served by *third parties*, not Zynga. (*Id.* ¶ 94) (advertising services allow "marketers and advertisers" to reach players); (¶ 103) (ads are provided by "advertising partners"); (¶ 108) ("Zynga's advertising partners . . . deliver 'personalized advertising.'") Zynga does not select the in-app advertisements; third parties do. Ads are served through Zynga apps by third parties upon request of the player. Zynga's role is to facilitate the deployment of that player-requested, third-party-selected advertising. *See* https://zyngaads.com/ad-

McDermott Will & Schulte LLP
Attorneys At Law
Los Angeles

solutions.[2] Thus, the Complaint does not allege – nor could it – that Zynga selects which advertisements to show players or when to show them.

1. Plaintiffs Fail to Plead that their Personally Identifiable Information was Impermissibly Disclosed

A VPPA claim requires that the defendant disclosed "information which identifies a person as having requested or obtained *specific* video materials or services." 18 U.S.C. § 2710(a)(3) (emphasis added). Plaintiffs do not specify what information associated with them or their video watching history was allegedly disclosed by Zynga or to whom. The best they can muster are the vague and conclusory allegations of a disclosure of unspecified information to unspecified third parties. (*See, e.g.,* FAC ¶ 90) ("Zynga collected and shared Plaintiffs' PII without obtaining the requisite consent") ¶ 243 ("Defendant also knew that Plaintiff's and class members' personal viewing content was disclosed to third parties").[3] Plaintiffs' failure to allege adequately the elements of their claims is alone grounds for dismissal. *See De Rocha Express, Inc. v. Combined Res., Inc.*, No. 24-cv-02037-JST, 2024 WL 4504536, at *2 (N.D. Cal. Oct. 15, 2024) (dismissing claim for failure to plead necessary elements); *Drew v. Equifax Info. Servs.*, No. C 07-00726 SI, 2007 WL 2028745, at *5 (N.D. Cal. July 11, 2007) (Illston, J.) (same).

a. No Personally Identifiable Information was Disclosed by Zynga

Even if there was an actionable disclosure – there was not – in the Ninth Circuit, "personally identifiable information" ("PII") under the VPPA is "information that would 'readily permit an ordinary person to identify a specific individual's watching behavior.'" *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017) (holding that static identifiers are not personally identifiable information under VPPA) (quoting *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262 (3d Cir. 2015)). To allege that PII was disclosed, a plaintiff must allege facts showing that (1)

[2] The Court may consider materials in the public domain and those that are incorporated in the Complaint. *See* FAC ¶ 100; *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322-23 (2007).

[3] Plaintiffs also fail to specify what advertisements they allegedly watched, only that they watched "pre-recorded video content." (FAC ¶¶ 12, 15.) But many of the ads shown by Zynga do not fit that definition, including static ads with no "pre-recorded video content." *See* https://zyngaads.com/ad-solutions; *see also In re CNET Networks, Inc.*, 483 F. Supp. 2d 947, 953 (N.D. Cal. 2007) ("On considering a motion to dismiss, judicial notice of all the full text of documents referenced in a complaint is proper under the doctrine of incorporation by reference").



MCDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

MCDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

his or her identity was disclosed, and (2) the disclosed included the specific video materials that he or she watched. *Id.*; *see also Solomon v. Flipps Media, Inc.*, 136 F.4th 41, 54-55 (2d Cir. 2025) (holding that the "unique string of computer code" used to collect information about an individual's website interactions via the Facebook Pixel did not constitute PII because an ordinary person could not use it to identify the viewer's interactions); *Golden v. NBCUniversal Media, LLC*, 22 Civ. 9858 (PAE), 2025 WL 2530689, at *7 (S.D.N.Y. Sept. 3, 2025) (noting the "emergent line of authority" dismissing VPPA claims based on the above reasoning).

Here, Plaintiffs do not and cannot allege that Zynga shared PII with *any* third party. First, Zynga cannot share a user information such as a user's name, postal address, phone number, email, or any other information that "readily permits an ordinary person to identify a specific individual's watching behavior" because Toon Blast[4] does not ask for or collect that information. Thus, that information cannot be shared by Zynga. Second, there is no allegation (nor can there be) that Zynga shared the specific video materials (by advertisement title or otherwise) with any third party. *See Solomon*, 136 F.4th at 54 (affirming dismissal where plaintiff did not plausibly allege that third party could identify plaintiff's specific "'video-watching habits'" (quoting *In re Nickelodeon*, 827 F.3d at 284)); *Golden*, 2025 WL 2530689, at *7 (plaintiff failed to allege that disclosures included "the titles of videos that she had watched"). Plaintiffs attempt to distract the Court from these pleading failures by mischaracterizing excerpts from the Take-Two Privacy Policy. (FAC ¶¶ 111-17.) But Plaintiff fails to allege *any* nexus between those disclosures and Toon Blast itself. As the Privacy Policy explains, it may apply to many products, with the purpose of attempting to capture all use cases, but without each part of the privacy notice applying to each use case. *See* Take-Two Interactive Software Privacy Policy, www.take2games.com/privacy, (last updated February 2025) ("The Services are also subject to any other terms and policies included in our Services.").

Plaintiffs point to the disclosures in the Privacy Policy without tying the disclosures to what actually happens in Toon Blast. For example, Plaintiffs appear to suggest – but do not explicitly

[4] While Dougherty alleges to have previously played Toy Blast, she only alleges to have watched ads while playing Toon Blast. (FAC ¶ 12.) Similarly, Garcia only alleges that he watched ads while playing Toon Blast. (*Id.* ¶ 15.)

McDermott Will & Schulte LLP
Attorneys At Law
Los Angeles

allege – that Zynga shares all "identifiers" listed in paragraph 112 of the Complaint with advertisers in Toon Blast, including a user's name, postal address, phone number, and email. But again, Toon Blast does not ask for or collect this information, and there are no allegations to the contrary. Although Plaintiffs are entitled to some benefit at the pleading stage, they still must allege a plausible claim, which they cannot under these circumstances. *See Eichenberger*, 876 F.3d at 982 ("To survive a motion to dismiss, the claim must be plausible on its face.") (citing *Ashcroft*, 56 U.S. at 678). Because Toon Blast does not collect the type of information that would be PII under the VPPA, Zynga could not have disclosed that information in violation of the VPPA. The VPPA claim should be dismissed for this additional reason.

b. Any Disclosure Was Permitted under the VPPA

As described above, there was no disclosure of information that even falls within the ambit of the VPPA. However, even if there was some VPPA-regulated disclosure, any such disclosure was permitted under the express terms of the VPPA. Third parties, not Zynga, deliver the ads *at the request of a player*. Zynga does not control what specific ad is served or whether the player watches it. Zynga may not even know what ad was served to any player.[5] As a result, at best, Zynga's provision of information to advertisers is to facilitate the fulfillment of a request by the player for an ad; a use expressly *permitted* by the VPPA.

A disclosure of information to a third party does not violate the VPPA when that disclosure is made "incident to the ordinary course of the business of a video tape service provider." 18 U.S.C. § 2710(b)(2)(E). Under the VPPA, "ordinary course of business" is expressly defined to include "order fulfillment" and "request processing." 18 U.S.C. § 2710(a)(2); *see also* S. Rep. 100-599 at 4342-12 (1988) ("[T]his subsection also allows disclosure to permit video tape service providers to use mailing houses, warehouses, computer services, and similar companies for marketing to their customers. These practices are called 'order fulfillment' and 'request processing.'"). Thus, the disclosure of information for "order fulfillment" and "request processing" cannot form the basis for

[5] For this same reason, Plaintiffs' VPPA claim fails because they cannot allege that Zynga knowingly disclosed their PII.

a VPPA claim. *Rodriguez v. Sony Comput. Entm't Am., LLC*, 801 F.3d 1045, 1054 (9th Cir. 2015); *Sterk v. Redbox Automated Retail*, 770 F.3d 618, 625 (7th Cir. 2014).

Indeed, the only reason that Zynga would have to communicate with third party ad partners about the delivery or watching of ads in Toon Blast is because a player *requested* an ad. And because any disclosure of PII by Zynga (if any) in connection with the serving of ads in Toon Blast was to process the player's request for an ad or to fulfil their order for an ad, it is a permitted disclosure under the VPPA as "order fulfillment" or "request processing." 18 U.S.C. § 2710(a)(2). This is fatal to Plaintiffs' VPPA claim.

2. <u>Plaintiffs are not "Consumers"</u>

Plaintiffs also are not "consumers" under the VPPA. To be a "consumer" under the VPPA, an individual must be a "renter, purchaser, or subscriber of goods or services from a video tape service provider." 18 U.S.C. § 2710(a)(1). Players do not have to pay to play Toon Blast or to watch ads. Thus, Toon Blast players are not renters or purchasers of pre-recorded video content. To be a consumer under the VPPA, each Plaintiff would have to be a "subscriber" of Toon Blast. "To plausibly allege [a plaintiff] is a subscriber under the VPPA, a plaintiff must allege an association with the defendant that is 'sufficiently substantial and ongoing.'" *See Jostens, Inc.*, 2024 WL 1135165, at *3.

Plaintiffs fail this test for at least two reasons. First, "downloading an app for free and using it to view content at no cost is not enough to make a user of the app a 'subscriber' under the VPPA, as there is no ongoing commitment or relationship between the user and the entity which owns and operates the app." *Ellis v. Cartoon Network* 803 F.3d 1251, 1257 (11th Cir. 2015); *see also Pileggi v. Wash. Newspaper Publ'g Co., LLC*, 146 F.4th 1219, 1237 (D.C. Cir. 2025) ("[s]ubscribing to an e-newsletter that includes videos and video links by itself, is not enough to make someone a 'consumer' under the Video Privacy Act"); *Caroll v. Chick-Fil-A, Inc.*, No. 23-cv-00314-RFL, 2024 WL 1091193, at *2 (N.D. Cal. Feb. 13, 2024) (dismissing VPPA claim where plaintiff did not allege an exchange of information in order to watch video content).

Because Plaintiffs could delete Toon Blast at any point without consequence, "there is no ongoing commitment or relationship between" Zynga and Plaintiffs, and so they are not "subscribers"

under the VPPA. *Ellis*, 803 F.3d at 1257; *Hernandez v. Chewy, Inc.*, No. 2:23-cv-05620 HDV RAO, 2023 WL 9319236, at *4 (C.D. Cal. Dec. 13, 2023) (plaintiff was not a "subscriber" under the VPPA because they downloaded a free app); *Pileggi*, 146 F.4th at 1237 ("the videos for which viewing history is disclosed must be the same video materials or services that the individual purchased, rented, or subscribed to").

Second, it is not clear that Garcia *currently* plays Toon Blast; all his allegations as to watching video advertisements are in the past tense. (FAC ¶¶ 15, 101.) Thus, there is an additional reason for the Court to conclude that at least Garcia does not have a "substantial and ongoing" relationship necessary to justify being "subscribers" for purposes of the VPPA. *Jostens, Inc.*, 2024 WL 1135165, at *3.

3. <u>Zynga is Not a "Video Tape Service Provider"</u>

Not only are Plaintiffs not "consumers" under the VPPA, but Zynga is not a "video tape service provider" under the VPPA. A "video tape service provider" is "any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale or delivery of *prerecorded* video cassette tapes or similar audio visual materials." 18 U.S.C. § 2701(a)(4) (emphasis added). To meet this definition, the "delivering [of] video content must be central to the defendants' business." *Rodriguez v. Delta T LLC*, No. 2:23-3717-HDV-AGR, 2023 WL 9419152, at *4 (C.D. Cal. Dec. 12, 2023). Put differently, the defendant must be "substantially involved in the conveyance of video content" and the product must be "significantly tailored to serve that purpose." *In re Vizio, Inc.*, 238 F. Supp. 3d 1204, 1221 (C.D. Cal. 2017).

California federal courts routinely dismiss VPPA claims where the allegations are limited to the display of ads or limited video content, particularly when delivering audiovisual content is "not Defendant's particular field of endeavor." *See Carroll v. Gen. Mills Inc.*, No. cv-23-1746 DSF (MRWx), 2023 WL 4361093, at *4 (C.D. Cal. June 26, 2023) ("Nothing suggests that Defendant's business is centered, tailored, or focused around providing and delivering audiovisual content"); *see also Cantu v. Tapestry, Inc.*, 697 F. Supp. 3d 989, 995 (S.D. Cal. 2023) ("The allegations do not give rise to an inference that Defendant has tailored its business to the production of audio-visual materials"). Put differently, where the delivery of pre-recorded video is not part of the core product

offered by a defendant, courts have routinely refused to label the defendant a "video tape service provider." *See Vizio,* 238 F. Supp. 3d at 1222 (other products and services provided by defendant "are far too peripherally or passively involved in the delivery of video content to reasonably constitute 'the business' of delivering video content" under the VPPA); *Rodriguez v. Hershey*, 23-cv-398-L-DEB, 2023 WL 6798506, at *2 (S.D. Cal. Oct. 12, 2023) (same); *Cantu*, 2023 WL 6451109, at *5 (same).

Toon Blast is a mobile game that seeks to provide entertainment to its players, and the delivery of advertisements is not central to that purpose. (FAC ¶ 77.) Indeed, Plaintiffs admit that Toon Blast does not require players to watch any videos. (*Id.* ¶ 105.) ("players are in complete control over the ad experience – they can choose if and when they see an ad"). Players can download Toon Blast for free, play Toon Blast for free, and never interact with any prerecorded video. (*Id.* ¶ 77.) The Complaint is devoid of any allegation that Zynga selects which advertisements to show players or when to show them, or that Zynga does anything other than facilitate the delivery of advertisements *when requested by a player*. (*Id.* ¶¶ 94, 103, 108.) The Complaint attempts to obscure these critical omissions by alleging that advertising is a source of revenue for Zynga. (*Id.* ¶ 91.) But advertising revenue is immaterial to Plaintiffs' VPPA claims. That a user can play Toon Blast – for free – and never interact with an advertisement demonstrates that the delivery of prerecorded videos is not central to Toon Blast. Just as the display of video on a website does not transform a company into a "video tape service provider", the delivery of advertising, at the request of the user, does not transform Zynga into a "video tape service provider." Plaintiffs' VPPA claims fails for this additional reason.

4. <u>Plaintiffs Lack Standing to Assert a VPPA Claim as to Other Zynga Games</u>

Finally, Plaintiffs cannot represent a putative class of Zynga players other than those who played the same game that Plaintiffs did. *See Afriyie v. NBCUniversal Media, LLC*, 775 F. Supp. 3d 791, 799 (S.D.N.Y. 2025) (holding that a plaintiff cannot represent a putative class of users of an app that the plaintiff did not themselves use). As the court in *Afriyie* explained, "a plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interest of third parties." *Id.* (quoting *Warth v. Seldin,* 422 U.S. 490, 499 (1975)). Because the

*Afriyie* plaintiff did not use certain apps published by the defendant, he could not represent a putative class of those app users. *Id.* at 799-801.

Here, Dougherty and Garcia allege that they watched video advertisements only in Toon Blast. (FAC ¶ 101.) Thus, they only have standing (if at all) to represent a class of Toon Blast players; not players of other Zynga games.

## V. CONCLUSION

For the foregoing reasons, if Plaintiffs are not compelled to arbitrate or this case is not transferred to the United States District Court for the Southern District of New York, then the Court should dismiss the Complaint with prejudice.

Dated: September 26, 2025 Respectfully submitted,

*/s/ William P. Donovan, Jr.*

William P. Donovan, Jr. (SBN 155881)
McDERMOTT WILL & SCHULTE LLP
2049 Century Park East, Suite 3200
Los Angeles, CA 90067-3206
Tel: (310) 277-4111
Fax: (310) 277-4730
wdonovan@mwe.com

Andrew B. Kratenstein (*pro hac vice*)
Chris Combs (*pro hac vice*)
McDERMOTT WILL & SCHULTE LLP
1 Vanderbilt Avenue
New York, NY 10017
Telephone: (212) 547-5400
Fax: (212) 547-5444
akratenstein@mwe.com
ccombs@mwe.com

Emilie E. O'Toole (*pro hac vice*)
McDERMOTT WILL & SCHULTE LLP
444 West Lake Street
Suite 4000
Chicago, IL 60606
Telephone: (312) 372-2000
Fax: (312) 984-7700
eotoole@mwe.com

*Counsel for Defendant Zynga, Inc.*