UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CHERYLL DOUGHERTY, et al.,

          Plaintiffs,

     v.

ZYNGA INC.,

          Defendant.

Case No. 25-cv-04051-SI

**ORDER GRANTING MOTION TO TRANSFER VENUE**

Re: Dkt. Nos. 37, 38, 39

Now pending before the Court are multiple motions by defendant Zynga, Inc. in this proposed class action case alleging violations of California consumer law and the federal Video Privacy Protection Act. The Court has received briefing from both sides, including supplemental briefing that the Court ordered plaintiffs provide on the question of transfer of venue. Pursuant to Civil Local Rule 7-1(b), the Court finds this matter appropriate for resolution without oral argument. Because this Order grants defendant's motion to transfer venue to the Southern District of New York, the Court does not reach defendant's motions to dismiss or to stay discovery and does not reach plaintiffs' arguments regarding the enforceability of the arbitration agreement.

**BACKGROUND**

Plaintiffs Cheryl Dougherty, Delia Camargo, and Lawrence Garcia are current or former California residents who previously and/or currently play(ed) Toon Blast and/or Toy Blast ("the Games"), two nearly identical mobile games published by defendant Zynga, Inc. Dkt. No. 33 ("FAC") ¶¶ 2, 12-14. The Games are "tile matching" games where players progress through levels by selecting groups of similar tiles and clearing the board over a certain number of moves. *Id.* ¶¶ 30-31. The Games are marketed as free to play but plaintiffs allege that the Games "are structured to

pressure players into making in-game purchases to continue playing or advance through the Games' levels." *Id.* ¶ 3. Plaintiffs allege that "the Games bring Zynga revenue of more than $1 million per day and have brought in more than $1 billion since their launch." *Id.* ¶ 8.

Peak Games, based in Istanbul, Turkey, created Toy Blast in 2015 and Toon Blast in 2017. Dkt. No. 37-1 ("Ungberg Decl.") ¶ 5. Defendant Zynga acquired Peak in July 2020, and Take-Two Interactive Software, Inc. ("Take-Two") acquired Zynga in May 2022. *Id.* According to defendant, since 2018, the Games have published notices requiring all players to agree to the operative Terms of Service in order to play the Games and to make in-app purchases. *Id.* ¶ 15. After Zynga acquired Peak Games in July 2020, the Games continued using the Peak Games terms that were in effect in 2018.[1] *Id.* ¶ 21.

On or around January 25, 2024, a pop-up notice informed the Games' players that the terms of service would be changing. *Id.* ¶ 28. On February 28, 2024, the Take-Two Terms took effect. *Id.* ¶ 29. On or after February 28, 2024, a clickwrap pop-up notice required players to select "ACCEPT," accepting the 2024 Take-Two Terms before continuing into the Games. *Id.* Among other things, the 2024 Take-Two Terms provide for individual arbitration with JAMS under the JAMS Streamlined Arbitration Rules and Procedures and provide that "mass arbitration" will take place with New Era ADR under the New Era Mass Arbitration Rules. *Id.* ¶¶ 33-34 & Ex. B § 15.5(6), (9). The 2024 Take-Two Terms contain a class action/jury trial waiver. *Id.* § 15.5(2). The 2024 Take-Two Terms also contain a provision on "Governing Law and Jurisdiction" applicable to United States residents as follows:

> This Agreement is entered into in the State of New York and shall be governed by, and construed under, the laws of the State of New York without regard to conflict of law rules. Except as otherwise expressly set out in Section 15.5, the exclusive jurisdiction for all disputes between you and Take-Two are the state and federal courts located in New York County, New York, and you and Take-Two each accept personal jurisdiction and waive all objections to venue in such courts.

*Id.*, Ex. B § 15.1. The 2024 Take-Two Terms allow a user to opt out of the Arbitration Agreement,

---

[1] There is some dispute between the parties about the applicability of the Peak Games terms, stemming from prior arbitration discussions among Take-Two, plaintiff Garcia, and others represented by plaintiffs' counsel. The Court takes no position on this dispute, as no party here argues that the Peak Games terms apply to the claims of plaintiffs Dougherty, Camargo, and Garcia.

United States District Court
Northern District of California

upon notification to Take-Two in writing "within 30 days of the date that you first accept this Agreement . . . ." *Id.*, Ex. B § 15.5(3).

On or around February 28, 2025, Take-Two began implementing new terms of service. *Id.* ¶ 38. On March 28, 2025, the 2025 Take-Two Terms went into effect. *Id.* ¶ 39. The 2025 Take-Two Terms continue to provide for individual arbitration through JAMS but change the procedures for mass arbitration. The 2025 Take-Two Terms increase the threshold for how many similar cases must be filed before the mass arbitration procedures take effect and provide that any mass arbitration will be conducted by JAMS rather than New Era. *Id.*, Ex. C § 17.5(6). The 2025 Take-Two Terms allow the user to opt out of the Arbitration Agreement by notifying Take-Two "in writing within 30 days of the date that you first accept this Agreement . . . ." *Id.*, Ex. C § 17.5(3). The Terms provide, "For clarity, if you accepted a previous version of the Arbitration Agreement and did not Opt Out, your Opt-Out Notice will be limited to the materially updated terms of this version." *Id.* The 2025 Take-Two Terms contain a "Governing Law and Jurisdiction" provision nearly identical to the one contained in the 2024 Take-Two Terms. *See id.*, Ex. C § 17.1 (". . . the exclusive jurisdiction for all claims or causes of action between you and Take-Two are the state and federal courts located in New York County, New York, and you and Take-Two each accept personal jurisdiction and waive all objections to venue in such courts").

The plaintiffs in this case all accepted the 2024 Take-Two Terms and accepted but then opted out of (or attempted to opt out of) the 2025 Take-Two Terms. Plaintiffs accepted the 2024 Take-Two Terms via in-Game pop-ups. Ungberg Decl. ¶¶ 58 (Dougherty accepted terms via Toon Blast on June 20, 2024), 62 (Camargo accepted terms via Toy Blast on April 23, 2024), 66 (Garcia accepted terms via Toon Blast on November 21, 2024). Plaintiff Camargo accepted the 2025 Take-Two Terms on April 18, 2025, and opted out of the 2025 Take-Two Terms on April 25, 2025. *Id.* ¶¶ 62-63. Plaintiff Garcia accepted the 2025 Take-Two Terms on April 17, 2025, and provided two signed opt-outs dated April 15 and April 25, 2025. *Id.* ¶¶ 64, 66. On April 21, 2025, plaintiff Dougherty accepted the 2025 Take-Two Terms. *Id.* ¶ 58. The FAC states that Dougherty opted out of the 2025 Take-Two Terms on April 17, 2025, and that she sent the opt-out via USPS mail to Take-Two on April 22, 2025. FAC ¶ 176. Dougherty also sent an opt-out notice dated June 17,

2025. Ungberg Decl. ¶ 59. The parties dispute whether Dougherty validly opted out of the 2025 Take-Two Terms during the opt-out timeframe.

On May 9, 2025, plaintiffs filed this suit in federal court. Dkt. No. 1. On August 19, 2025, plaintiffs amended the complaint. Dkt. No. 33. In the first amended complaint, plaintiffs allege that Zynga engaged in deceptive business practices that manipulated players into spending large sums of money on in-app purchases in the Games. Plaintiffs also allege that Zynga violated the federal Video Privacy Protection Act ("VPPA") "by willfully sharing and disclosing to third parties the personal identifying information and video viewing histories of users of its many mobile games, without first obtaining consent in the manner the VPPA requires." *Id.* ¶ 10. Plaintiffs, as private attorneys general and on behalf of similarly situated individuals, bring claims for violations of: (1) California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq.; (2) California's False Advertising Law, Cal. Bus. & Prof. Code § 17500 et seq.; (3) the California Consumers Legal Remedies Act, Cal. Civ. Code § 1750 et seq.; (4) fraud; (5) unjust enrichment; and (6) the Video Privacy Protection Act, 18 U.S.C. § 2710.

Zynga has filed a motion to compel arbitration or alternatively to transfer venue, a motion to dismiss, and a motion to stay discovery. Dkt. Nos. 37, 38, 39. In the motion to compel, Zynga asks that the Court order plaintiffs to individual arbitration before JAMS or, alternatively, to transfer this case to the U.S. District Court for the Southern District of New York, under 28 U.S.C. § 1404(a) and § 1406(a). In opposing the motion to compel arbitration, plaintiffs argue that the arbitration agreement is both procedurally and substantively unconscionable under California law. Plaintiffs also oppose the request to transfer venue to New York, and the Court ordered and received supplemental briefing from plaintiffs on this question. *See* Dkt. Nos. 48, 50.

**LEGAL STANDARD**

Where a party seeks to enforce a contractual forum-selection clause, "the clause may be enforced through a motion to transfer under [28 U.S.C.] § 1404(a)." *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 59 (2013). That statute provides, "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil matter to

4

any other district or division where it might have been brought." 28 U.S.C. § 1404(a).

The Supreme Court has held that, when a defendant files a motion to transfer under § 1404(a) pursuant to a contractually valid forum-selection clause, "a district court should transfer the case unless extraordinary circumstances unrelated to the convenience of the parties clearly disfavor a transfer." *Atl. Marine*, 571 U.S. at 52, 62 n.5. However, "[a] contractual choice-of-forum clause should be held unenforceable if enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972); *see also Gemini Techs., Inc. v. Smith & Wesson Corp.*, 931 F.3d 911, 916 (9th Cir. 2019) (clarifying "that satisfaction of *Bremen*'s public policy factor continues to suffice to render a forum-selection clause unenforceable" after *Atlantic Marine*). Forum selection clauses are presumptively valid and "the party seeking to avoid a forum selection clause bears a 'heavy burden' to establish a ground upon which [the court] will conclude the clause is unenforceable." *Doe 1 v. AOL LLC,* 552 F.3d 1077, 1083 (9th Cir.2009) (*quoting Bremen,* 407 U.S. at 17); *see also Atl. Marine*, 571 U.S. at 63 ("the party defying the forum-selection clause . . . bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted").

**DISCUSSION**

**I.      Contract Formation**

To reach any of the substantive issues the parties raise—whether on the question of the Terms' venue or arbitration provisions—the Court first must be assured that a valid contract was formed. *See Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1030 (9th Cir. 2022) (before reaching arguments challenging enforceability of arbitration agreement, "a court must resolve any challenge that an agreement to arbitrate was never formed"); *see also Trans-Tec Asia v. M/V Harmony Container,* 518 F.3d 1120, 1124 (9th Cir. 2008) ("[W]e cannot rely on the choice of law provision until we have decided, as a matter of law, that such a provision was a valid contractual term and was legitimately incorporated into the parties' contract.")). This point does not appear to be much in dispute: plaintiffs' papers do not address whether a contract was formed in the first

instance.

Defendant cites both California and New York law in its motion. *See* Dkt. No. 37 ("Mot.") at 12-13. Plaintiffs' papers do not discuss the law applicable to contract formation but elsewhere argue that California law applies. The Court need not choose between New York or California law at this step because there is no meaningful difference between the two on the issue of contract formation. "New York and California apply 'substantially similar rules for determining whether the parties have mutually assented to a contract term.'" *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017) (quoting *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 119 (2d Cir. 2012)); *see also Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855 (9th Cir. 2022) (quoting same).

"To form a contract under New York or California law, the parties must manifest their mutual assent to the terms of the agreement." *Berman*, 30 F.4th at 855 (citations omitted). In both states, the "elemental principles of contract formation apply with equal force to contracts formed online. Thus, if a website offers contractual terms to those who use the site, and a user engages in conduct that manifests her acceptance of those terms, an enforceable agreement can be formed." *Id.* at 855-56. This includes what are commonly termed "'clickwrap' agreements, in which a website presents users with specified contractual terms on a pop-up screen and users must check a box explicitly stating 'I agree' in order to proceed." *Id.* at 856 (citing *Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171, 1175-76 (9th Cir. 2014)). "[C]ourts have routinely found clickwrap agreements enforceable." *Id.* (citing *Meyer*, 868 F.3d at 75).

Here, Zynga employed a clickwrap agreement when implementing the 2024 and 2025 Take-Two Terms. Ungberg Decl. ¶¶ 16-20, 28-29, 40; *see also* FAC ¶¶ 118-119. As noted above, plaintiffs do not specifically challenge whether the parties formed a contract. The debate is which terms of service apply to which plaintiffs. The party seeking to compel arbitration bears the burden of proving the existence of a valid agreement to arbitrate by a preponderance of the evidence. *See Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014)). Defendant has shown, and plaintiffs appear to be in agreement, that plaintiffs Camargo and Garcia accepted the 2024 Take-Two Terms and timely opted out of the 2025 Take-Two Terms. Mot. at 9, 15; Dkt. No. 41 ("Opp'n") at 8-9. The 2024 Take-Two Terms therefore apply to Camargo and Garcia's claims.

Plaintiff Dougherty accepted the 2025 Take-Two Terms on April 21, 2025. Ungberg Decl. ¶ 58. She signed two opt-outs, dated April 17 and June 17, 2025. *Id.* ¶ 59; Dkt. No. 43 ("Janove Decl.") ¶ 8 & Ex. E. Defendant argues that her opt-outs were both too early and too late, because neither was made "within 30 days of the date" that she accepted the 2025 Take-Two Terms. Dkt. No. 44 ("Reply") at 3. Dougherty contends that her opt-out was valid because she mailed the opt-out notice on April 22, 2025. Opp'n at 18. Plaintiffs' opposition brief contains a declaration from Dougherty's counsel stating that Dougherty's opt-out notice was signed on April 17, 2025, but was mailed to Take-Two Interactive Software, Inc. via USPS Certified Mail on April 22, 2025, i.e., one day after she agreed to the 2025 Take-Two Terms. Janove Decl. ¶ 8. Zynga does not address this point in its reply.

Given that this Order analyzes the validity of the forum selection clause, the Court need not resolve the parties' dispute as to whether plaintiff Dougherty validly opted out of the 2025 Take-Two Terms. As noted above, the forum selection clauses as contained in the 2024 and 2025 Take-Two Terms are nearly identical. Even assuming Dougherty validly opted out of the 2025 Take-Two terms, she does not dispute that she would still be bound by the 2024 Take-Two Terms, as are her co-plaintiffs Camargo and Garcia.

In sum, the Court finds that, under either New York or California law, the parties validly formed a contract. Both the 2024 Take-Two Terms and the 2025 Take-Two Terms contain clauses calling for venue in New York County, New York. *See* Ungberg Decl., Ex. B § 15.1 (2024 Terms), Ex. C. § 17.1 (2025 Terms).

## II. Forum Selection

The parties largely focus their arguments on the arbitration provisions contained in the 2024 and 2025 Take-Two Terms. Having reviewed the Terms, the parties' briefs, and the governing law, the Court concludes that the appropriate course is to grant defendant's motion to transfer this case to the venue provided for by the Terms' forum selection clause. Resolving the arbitration dispute may require reaching novel questions such as whether New York contract law would invalidate the New Era mass arbitration provisions that the Ninth Circuit recently held unconscionable in *Heckman*

7

*v. Live Nation Entertainment, Inc.*, 120 F.4th 670 (9th Cir. 2024). Such questions are best left to the transferee court.

In its motion, defendant argues that this case should be transferred to the Southern District of New York under the forum selection clause contained in the Take-Two Terms. Plaintiffs do not argue that the forum selection clause itself is invalid but instead argues that the clause is "inextricably bound up" with the clause calling for application of New York law and that, taken together, enforcement of these provisions would contravene California public policy. Opp'n at 25 (quoting *Lang v. Skytap, Inc.*, 347 F. Supp. 3d 420, 429 (N.D. Cal. 2018)). Plaintiffs argue that application of New York law would effect a waiver of statutory remedies provided for by the California Consumers Legal Remedies Act ("CLRA"), in violation of that statute's anti-waiver provisions. *Id.* (quoting *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1083-84 (9th Cir. 2009)); *see also* Cal. Civ. Code § 1751 ("Any waiver by a consumer of the provisions of this title [the CLRA] is contrary to public policy and shall be unenforceable and void.").

In arguing against transfer, plaintiffs make a number of suppositions. First, plaintiffs' entire argument is premised on the assumption that this Court must evaluate the forum selection and choice-of-law provisions together. As Judge Orrick of this district has observed, "[c]ourts in the Ninth Circuit have generally agreed that the choice-of-law analysis is irrelevant to determining if the enforcement of a forum selection clause contravenes a strong public policy." *Rowen v. Soundview Commc'ns*, No. 14-cv-5530-WHO, 2015 WL 899294, at *4 (N.D. Cal. Mar. 2, 2015). "Instead, absent a total foreclosure of remedy in the transferee forum, courts tether their policy analysis to the forum selection clause itself, finding the forum selection clause unreasonable only when it contravenes a policy specifically related to venue." *Id.* (citing *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 497-98 (9th Cir. 2000); *Monastiero v. appMobi, Inc.*, No. C 13-05711-SI, 2014 WL 1991564, at *6 (N.D. Cal. May 15, 2014)). In *Jones*, for instance, the Ninth Circuit held that enforcement of a forum selection clause in a franchise agreement violated California's public policy because the California Business and Professions Code explicitly provided that any provision in such an agreement restricting venue was void. Plaintiffs here forward no venue-specific argument, and thus their argument against a transfer of venue fails at the start, as other Judges within this district

have found. *See, e.g.*, *Rowen*, 2015 WL 899294, at \*3-4 ("Because none of the public policies identified are tethered to venue, plaintiffs' arguments [against transfer] are unconvincing"); *Wong v. MLB Advanced Media, L.P.*, No. 24-cv-00779-LB, 2025 WL 2180445, at \*3-4 (N.D. Cal. Jan. 22, 2025) (transferring venue of VPPA and CLRA claims to Southern District of New York where "plaintiffs do not show a contravention of a policy related specifically to venue"); *see also Franks v. Sideprize LLC*, No. 25-cv-4916-CRB, 2025 WL 3760381, at \* 3 (N.D. Cal. Dec. 29, 2025) ("courts in this District have effectuated forum selection clauses in CLRA cases despite the existence of choice-of-law provisions") (citations omitted).

Plaintiffs are correct that courts sometimes will consider the enforceability of a forum selection clause in conjunction with a choice-of-law clause. *See* Dkt. No. 50 ("Pls.' Suppl. Br.") at 3 (citing *Bayol v. Zipcar, Inc.*, No. 14-cv-2483-TEH, 2014 WL 4793935 (N.D. Cal. Sept. 25, 2014); *Sessions v. Prospect Funding Holdings LLC*, No. CV 16-02620 SJO (DTBx), 2017 WL 7156283 (C.D. Cal. July 13, 2017)). In determining that it was appropriate to analyze the impact of the forum selection and choice-of-law clauses together, both *Bayol* and *Sessions* cited to this Court's decision in *Perry v. AT&T Mobility LLC*, No. C 11-01488 SI, 2011 WL 4080625 (N.D. Cal. Sept. 12, 2011). *See Bayol*, 2014 WL 4793935, at \*2; *Sessions*, 2017 WL 7156283, at \*3. In *Perry*, this Court considered how the forum selection and choice-of-law clauses operated in tandem, where the plaintiff argued the "<u>entire contract</u> [was] for the purpose of evading California wage and hour laws[.]" *Perry*, 2011 WL 4080625, at \*4 n.4 (emphasis added); *see also Sessions*, 2017 WL 7156283, at \*4 n.4 (plaintiff alleged the contract as a whole was "nothing more than a scheme to avoid California's usury laws"). But the same cannot be said here, nor have plaintiffs argued as much.

Even considering the choice-of-law provision, it is not "inevitable" that there would be a total foreclosure of remedy in the Southern District of New York. *See Rowen*, 2015 WL 899294, at \*4 n.2. Plaintiffs cite *Doe 1 v. AOL LLC*, 552 F.3d 1077 (9th Cir. 2009) (per curiam), in which the Ninth Circuit found the district court improperly dismissed an action after misinterpreting a forum selection clause to permit actions in either federal or state court in Virginia, rather than just state court. *Doe 1* relied on a California Court of Appeal decision invalidating the very same forum

United States District Court
Northern District of California

selection clause at issue there, in part due to the lack of a consumer class action mechanism in Virginia state courts. *See id.* at 1083-84. But "[n]othing in the New York forum precludes a class action[,]" and plaintiffs here do not argue otherwise. *See Wong*, 2025 WL 2180445, at *4. Indeed, plaintiffs do not argue with any specificity that application of New York law would leave them without a remedy. "[S]o long as there is a remedy available in the transferee forum for the defendant's alleged conduct, the plaintiff cannot challenge a forum-selection clause based on a public policy unrelated to venue, even if the remedy available in the transferee forum is not the same as in the transferor forum." *Id.* at *3 (citing *Besag v. Custom Decorators, Inc.*, No. CV08-05463 JSW, 2009 WL 330934, at *3 (N.D. Cal. Feb. 10, 2009)).

Plaintiffs also argue that "[i]n the Southern District of New York, the choice of law analysis would begin and end with the contract's choice of law clause because 'a New York choice-of-law clause . . . obviates the application' of any conflicts of law analysis. Pls.' Suppl. Br. at 3 (quoting *Ministers & Missionaries Benefit Bd. v. Snow*, 26 N.Y. 3d 466, 468 (2015)). They quote a district court decision stating that, since the New York Court of Appeals decision in *Ministers & Missionaries*, "New York federal and state 'courts now refuse to consider the public policy of foreign states—including California—to overturn an otherwise valid contractual choice of law provision.'" *See id.* (quoting *Pilon v. Discovery Comm'ns, LLC*, 769 F. Supp. 3d 273, 294 (S.D.N.Y. 2025)). However, this is not entirely accurate. In 2020, the Second Circuit applied the pre-*Ministers & Missionaries* choice-of-law standard, accounting for public policy considerations and whether the selected forum State "has sufficient contacts with the transaction." *See United States v. Moseley*, 980 F.3d 9, 20 (2d Cir. 2020) (citing *Int'l Minerals & Res., S.A. v. Pappas*, 96 F.3d 586, 592 (2d Cir. 1996)). While courts have wondered whether *Moseley* applied the wrong standard, district courts within New York have followed *Moseley* nonetheless, conducting a choice-of-law analysis by examining whether New York had sufficient contacts with the transaction and whether New York's law violates a fundamental principle of justice. *See, e.g., Henry v. Major League Baseball Advanced Media, L.P.*, Nos. 24 Civ. 0144 (GHW) (GWG), 24 Civ. 06270 (GHW) (GWG), 25 Civ. 00777 (GHW) (GWG), 2025 WL 3717068, at *8 (S.D.N.Y. Dec. 23, 2025), *report & recommendation adopted*, 2026 WL 45345 (S.D.N.Y. Jan. 7, 2026); *Stevens & Co. LLC v. Espat*,

10

No. 24-cv-5223-LJL, 2025 WL 950989, at *5-8 (S.D.N.Y. Mar. 28, 2025) (concluding that "there is reason to believe that the analysis in *Moseley* is reconcilable with *Ministers & Missionaries* and related New York cases"); *Willis Re Inc. v. Herriott*, 550 F. Supp. 3d 68, 94 (S.D.N.Y. 2021) ("If applying the analysis in *Moseley* called for choosing California law in this case . . ., the Court would be compelled to do so – even if *Moseley* was an incorrect interpretation of current New York law.").

Plaintiffs leap to the conclusion that a federal court in New York would not apply California substantive law to their claims. But "federal judges routinely apply the law of a State other than the State in which they sit." *See Atl. Marine*, 571 U.S. at 67. Plaintiffs rely on *Doe 1 v. AOL, LLC*. *See* Opp'n at 25. There, the Ninth Circuit refused to enforce a forum selection clause because proceeding in the selected forum – Virginia state court – would force plaintiffs to waive both their right to proceed as a class action and to receive enhanced remedies under the CLRA. 552 F.3d at 1084-85. As one Judge of this district recently explained when granting a motion to transfer the claims of California plaintiffs suing under the CLRA, "such reasoning is inapplicable to federal court to federal court transfers." *See Franks*, 2025 WL 3760381, at *4. Similarly, another Judge of this district transferred venue to the District of Nevada, finding not "well-founded" the plaintiffs' argument that "presuppose[d] a dismissal by the Nevada court" of their CLRA claims. *See Reza v. Zuffa, LLC*, No. 22-cv-9068-MMC, 2023 WL 2620899, at *2-3 (N.D. Cal. Mar. 22, 2023).

For all the reasons set forth above, the Court finds the forum selection clause contained in the 2024 and 2025 Take-Two Terms is valid.

Where "the forum selection clause is valid, the Court's analysis of the Section 1404(a) motion is limited to considering public interest factors." *Franks*, 2025 WL 3760381, at *4; *Atl.* or for their pursuit of the litigation."). The public interest factors which the Court may consider include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Atl. Marine*, 571 U.S. at 62 n.6 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)). Here, plaintiffs make no argument regarding the public interest factors separate from their argument regarding California public policy. The Court does not find the public policy factors weigh against transfer of venue.

11

Finally, to the extent that plaintiffs' supplemental brief contends that "the Court should decline to enforce *any* of the Terms' dispute resolution procedures—including the forum selection and choice of law clauses[,]" the Court rejects this argument. *See Franks*, 2025 WL 3760381, at *2 ("it is inappropriate to analyze the validity of the contract as a whole when determining the applicability of a forum selection clause") (quoting *Fleming v. Matco Tools Corp.*, 384 F. Supp. 3d 1124, 1131 (N.D. Cal. 2019)).

Defendant's motion to transfer venue to the Southern District of New York is GRANTED.

## CONCLUSION

For the foregoing reasons, the Court GRANTS defendant's motion to transfer but declines to rule on the motion to compel arbitration. *See* Dkt. No. 37. The Clerk shall transfer this case to the United States District Court for the Southern District of New York.

The Court declines to rule on the motion to dismiss and motion to stay discovery. *See* Dkt. Nos. 38, 39. The Clerk shall terminate these motions as denied as moot, without prejudice, in light of the transfer of this action to New York.

The initial case management conference is hereby VACATED.

**IT IS SO ORDERED**.

Dated: March 31, 2026

_____
SUSAN ILLSTON
United States District Judge

United States District Court
Northern District of California

12